## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### 09-5428

**ANTHONY C. ROTH, on behalf of Lester L. Bower, Jr,** *Appellant,*

v.

**UNITED STATES DEPARTMENT OF JUSTICE,** *Appellee,*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### APPENDIX

Peter Buscemi
Grace E. Speights
Anthony C. Roth
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
(202) 739-5190

*Attorneys for Appellant Anthony C. Roth, on*
*behalf of Lester L. Bower, Jr.*

# TABLE OF CONTENTS

**Tab**

Docket Sheet, U.S. District Court for District of Columbia
Case No. 1:08-cv-00822-ESH ....................................................................................................A1

Complaint for Injunctive Relief Under the Freedom of Information Act dated
May 12, 2008 ...........................................................................................................................A9

Answer dated June 13, 2008 ..................................................................................................A22

Exhibits A-H to Plaintiff's Memorandum in Opposition to Defendant's Motion for
Summary Judgment and in Support of Cross Motion for a More Particularized
*Vaughn* Index or *In Camera* Review of Withheld and Redacted Documents dated
April 3, 2009 ..........................................................................................................................A27

Declaration of Anthony C. Roth (with Exhibits 1-6) submitted in support of
Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary
Judgment and in Support of Cross Motion for a More Particularized *Vaughn* Index
or *In Camera* Review of Withheld and Redacted Documents dated April 3, 2009.....................A73

Memorandum Opinion from U.S. District Court dated September 23, 2009 ..............................A149

Order from U.S. District Court dated September 23, 2009 .........................................................A168

Minute Order from U.S. District Court dated October 6, 2009 ...................................................A169

APPEAL, CLOSED, TYPE-I

## U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:08-cv-00822-ESH

ROTH v. UNITED STATES DEPARTMENT OF JUSTICE
Assigned to: Judge Ellen S. Huvelle
Case in other court: U. S. Court of Appeals - DC Circuit, 09-05428
Cause: 05:552 Freedom of Information Act

Date Filed: 05/12/2008
Date Terminated: 09/24/2009
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

### Plaintiff

**ANTHONY C. ROTH**
*on behalf of Lester L. Bower, Jr.*

represented by **Anthony Craig Roth**
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5188
Fax: (202) 739-3001
Email: aroth@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradford Anthony Cangro**
MORGAN LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5646
Email: bcangro@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Corinne Anne Niosi**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Commercial Litigation
1100 L Street, NW
Room 12112
Washington, DC 20530
(202) 616-0391
Fax: (202) 514-8624
Email: corinne.a.niosi@usdoj.gov
*TERMINATED: 09/09/2009*
*LEAD ATTORNEY*

**Grace E. Speights**
MORGAN, LEWIS & BOCKIUS, LLP

**A1**

1111 Pennslyvania Ave, NW
Washington, DC 20004
(202) 739-5189
Fax: (202) 739-3001
Email: gspeights@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter Buscemi**
MORGAN, LEWIS & BOCKIUS, LLP

1111 Pennslavania Avenue, NW
Seventh Floor
Washington, DC 20004-2541
(202) 739-5190
Fax: (202) 739-3001
Email: pbuscemi@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES DEPARTMENT OF JUSTICE**

represented by **Rhonda C. Fields**
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, NW
10th Floor
Washington, DC 20530
(202) 514-6970
Fax: (202) 514-8780
Email: rhonda.fields@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/12/2008 | 1 | COMPLAINT against UNITED STATES DEPARTMENT OF JUSTICE ( Filing fee $ 350, receipt number 4616012297) filed by ANTHONY C. ROTH. (Attachments: # 1 Civil Cover Sheet)(jf, ) (Entered: 05/14/2008) |
| 05/12/2008 | | SUMMONS (3) Issued as to UNITED STATES DEPARTMENT OF JUSTICE, U.S. Attorney and U.S. Attorney General. (jf, ) (Entered: 05/14/2008) |
| 05/30/2008 | 2 | MOTION to Expedite *Schedule* by ANTHONY C. ROTH (Attachments: # 1 Text of Proposed Order)(Niosi, Corinne) (Entered: 05/30/2008) |
| 06/02/2008 | 3 | NOTICE of Appearance by Anthony Craig Roth on behalf of ANTHONY C. ROTH (Roth, Anthony) (Entered: 06/02/2008) |

**A2**

| 06/02/2008 | 4 | NOTICE of Appearance by Grace E. Speights on behalf of ANTHONY C. ROTH (Speights, Grace) (Entered: 06/02/2008) |
|---|---|---|
| 06/02/2008 | 5 | NOTICE of Appearance by Peter Buscemi on behalf of ANTHONY C. ROTH (Buscemi, Peter) (Entered: 06/02/2008) |
| 06/12/2008 | 6 | STATUS REPORT by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibits 101-112, # 2 Ex 113, # 3 Exhibits 1-3, # 4 DOJ declaration)(Fields, Rhonda) (Entered: 06/12/2008) |
| 06/12/2008 | 7 | Memorandum in opposition to re 2 MOTION to Expedite *Schedule* filed by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibits 101-112, # 2 Ex 113 party index query, # 3 Exhibits 1-3, # 4 DOJ declaration, # 5 Text of Proposed Order)(Fields, Rhonda) (Entered: 06/12/2008) |
| 06/13/2008 | 8 | ANSWER to 1 Complaint by UNITED STATES DEPARTMENT OF JUSTICE. Related document: 1 Complaint filed by ANTHONY C. ROTH. (Fields, Rhonda) (Entered: 06/13/2008) |
| 06/17/2008 | | MINUTE ORDER: Based on the Court's conference call of June 13, 2008 with counsel for the parties, plaintiff's Motion for Expedited Schedule 2 is denied as moot. Signed by Judge Ellen S. Huvelle on 6/17/2008. (VT) (Entered: 06/17/2008) |
| 06/17/2008 | 9 | NOTICE of Appearance by Rhonda C. Fields on behalf of UNITED STATES DEPARTMENT OF JUSTICE (Fields, Rhonda) (Entered: 06/17/2008) |
| 07/07/2008 | 10 | NOTICE *of Recent Development* by ANTHONY C. ROTH (Attachments: # 1 Exhibit A)(Niosi, Corinne) (Entered: 07/07/2008) |
| 08/22/2008 | 11 | STATUS REPORT by ANTHONY C. ROTH. (Niosi, Corinne) (Entered: 08/22/2008) |
| 11/19/2008 | | MINUTE ORDER. Based on a conference call on November 19, 2008, the following briefing schedule has been established: defendant's motion for summary judgment is due by January 30, 2008; plaintiff's opposition is due by March 2, 2008; defendant's reply is due by March 17, 2008. Signed by Judge Ellen S. Huvelle on November 19, 2008. (lcesh1) (Entered: 11/19/2008) |
| 11/20/2008 | | Set/Reset Deadlines: Summary Judgment motions due by 1/30/2009. Response to Motion for Summary Judgment due by 3/2/2009. Reply to Motion for Summary Judgment due by 3/17/2009. (gdf) (Entered: 11/20/2008) |
| 11/20/2008 | | MINUTE ORDER. The briefing schedule is amended as follows: defendant's motion for summary judgment is due by January 30, 2009; plaintiff's opposition is due by March 2, 2009; defendant's reply is due by March 17, 2009. Signed by Judge Ellen S. Huvelle on November 20, 2008. (lcesh1) (Entered: 11/20/2008) |
| 11/24/2008 | | Set/Reset Deadlines: Summary Judgment motions due by 1/30/2009. Response to Motion for Summary Judgment due by 3/2/2009. Reply to Motion for Summary Judgment due by 3/17/2009. (gdf) (Entered: 11/24/2008) |
| 01/29/2009 | 12 | MOTION for Extension of Time to *file dispositive motion, opposition and* |

A3

| | | |
|---|---|---|
| | | *reply* by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Fields, Rhonda) (Entered: 01/29/2009) |
| 01/30/2009 | | MINUTE ORDER granting 12 defendant's Consent Motion for Extension of Time. Defendant shall file its dispositive motion on or before February 4, 2009; plaintiff shall file his opposition on or before March 9, 2009; and defendant shall file its reply on or before March 24, 2009. Signed by Judge Ellen S. Huvelle on 1/30/2009. (VT) (Entered: 01/30/2009) |
| 02/03/2009 | | Set/Reset Deadlines: Dispositive Motions due by 2/4/2009. Response to Dispositive Motions due by 3/9/2009. Reply to Dispositive Motions due by 3/24/2009. (gdf) (Entered: 02/03/2009) |
| 02/04/2009 | 13 | Consent MOTION for Extension of Time to *file dispositive motion*, MOTION for Extension of Time to File Response/Reply by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order) (Fields, Rhonda) (Entered: 02/04/2009) |
| 02/05/2009 | | MINUTE ORDER granting 13 defendant's Consent Motion for Extension of Time. Defendant shall file its dispositive motion on or before February 6, 2009. Plaintiff shall file his opposition on or before March 11, 2009. Defendant shall file its reply on or before March 26, 2009. Signed by Judge Ellen S. Huvelle on 2/5/2009. (VT) (Entered: 02/05/2009) |
| 02/06/2009 | | Set/Reset Deadlines: Dispositive Motions due by 2/6/2009. Response to Dispositive Motions due by 3/11/2009. Reply to Dispositive Motions due by 3/26/2009. (gdf) (Entered: 02/06/2009) |
| 02/06/2009 | 14 | NOTICE *OF BULKY FILING re 15 MOTION for Summary Judgment by UNITED STATES DEPARTMENT OF JUSTICE (Fields, Rhonda) Modified on 2/9/2009 (jf, ). (Entered: 02/06/2009)* |
| 02/06/2009 | 15 | MOTION for Summary Judgment by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Hardy Dec, # 2 Text of Proposed Order)(Fields, Rhonda) (Entered: 02/06/2009) |
| 03/06/2009 | 16 | Joint MOTION for Order *Modifying Briefing Schedule* by ANTHONY C. ROTH, UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Niosi, Corinne) (Entered: 03/06/2009) |
| 03/06/2009 | | MINUTE ORDER granting 16 the parties' Joint Motion for Order Modifying Briefing Schedule. Plaintiff shall file his opposition to defendant's motion for summary judgment on or before April 3, 2009, and defendant shall file its reply on or before April 20, 2009. Signed by Judge Ellen S. Huvelle on 3/6/2009. (VT) (Entered: 03/06/2009) |
| 03/06/2009 | | Set/Reset Deadlines: Response to Motion for Summary Judgment due by 4/3/2009. Reply to Motion for Summary Judgment due by 4/20/2009. (tr) (Entered: 03/06/2009) |
| 04/03/2009 | 17 | Memorandum in opposition to re 15 MOTION for Summary Judgment *and in Support of Cross Motion for a More Particularlized Vaughn Index or In Camera Review, and Response to Defendant's Statement of Material Facts Not in Dispute* filed by ANTHONY C. ROTH. (Attachments: # 1 Exhibit A-H, # 2 |

| | | |
|---|---|---|
| | | Declaration Anthony C. Roth, # 3 Declaration Linda Sikes)(Niosi, Corinne) (Entered: 04/03/2009) |
| 04/03/2009 | 18 | Cross MOTION for Order *For More Particularized Vaugh Index or In Camera Review of Withheld and Redacted Documents* by ANTHONY C. ROTH (Attachments: # 1 Text of Proposed Order)(Niosi, Corinne) (Entered: 04/03/2009) |
| 04/17/2009 | 19 | Consent MOTION for Extension of Time to File Response/Reply as to 18 Cross MOTION for Order *For More Particularized Vaugh Index or In Camera Review of Withheld and Redacted Documents*, 15 MOTION for Summary Judgment by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Fields, Rhonda) (Entered: 04/17/2009) |
| 04/17/2009 | | MINUTE ORDER granting 19 Defendant's Consent Motion for Extension of Time. Defendant shall file its reply in support of its motion for summary judgment and opposition to plaintiff's cross-motion on or before June 4, 2009. Signed by Judge Ellen S. Huvelle on 4/17/2009. (VT) (Entered: 04/17/2009) |
| 04/21/2009 | | Set/Reset Deadlines: Response to Cross Motions due by 6/4/2009. Reply to Motion for Summary Judgment due by 6/4/2009. (gdf) (Entered: 04/21/2009) |
| 06/04/2009 | 20 | Consent MOTION for Extension of Time to File Response/Reply as to 18 Cross MOTION for Order *For More Particularized Vaugh Index or In Camera Review of Withheld and Redacted Documents*, 15 MOTION for Summary Judgment by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Fields, Rhonda) (Entered: 06/04/2009) |
| 06/04/2009 | | MINUTE ORDER granting 20 defendant's Consent Motion for Extension of Time. Defendant shall file its reply in support of its motion for summary judgment and opposition to plaintiff's cross motion on or before June 8, 2009. Plaintiff shall file his reply on or before June 22, 2009. Signed by Judge Ellen S. Huvelle on 6/4/2009. (VT) (Entered: 06/04/2009) |
| 06/08/2009 | 21 | REPLY to opposition to motion re 18 Cross MOTION for Order *For More Particularized Vaugh Index or In Camera Review of Withheld and Redacted Documents*, 15 MOTION for Summary Judgment *Reply to Plaintiff's Opposition to defendant's motion for summary judgment and Opposition to plaintiff's cross motion* filed by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Statement of Facts, # 2 Hardy Dec 2, # 3 Hardy Dec 2 Exhibits part 1, # 4 Hardy Dec 2 exhibits part 2, # 5 Hardy Dec 2 Exhibits part 3, # 6 OIP Guidance, # 7 Text of Proposed Order)(Fields, Rhonda) (Entered: 06/08/2009) |
| 06/09/2009 | | Reset Deadlines: Replies due by 6/22/2009. (tj ) (Entered: 06/09/2009) |
| 06/22/2009 | 22 | Consent MOTION for Extension of Time to File Response/Reply as to 18 Cross MOTION for Order *For More Particularized Vaugh Index or In Camera Review of Withheld and Redacted Documents* by ANTHONY C. ROTH (Attachments: # 1 Text of Proposed Order)(Niosi, Corinne) (Entered: 06/22/2009) |
| 06/22/2009 | | MINUTE ORDER granting 22 plaintiff's Consent Motion for Extension of |

| | | |
|---|---|---|
| | | Time to File Reply Brief. Plaintiff shall file his reply in support of his cross motion on or before July 1, 2009. Signed by Judge Ellen S. Huvelle on 6/22/2009. (VT) (Entered: 06/22/2009) |
| 06/22/2009 | | Reset Deadlines: Replies due by 7/1/2009. (tj ) (Entered: 06/22/2009) |
| 07/01/2009 | 23 | REPLY to opposition to motion re 18 Cross MOTION for Order *For More Particularized Vaugh Index or In Camera Review of Withheld and Redacted Documents* filed by ANTHONY C. ROTH. (Niosi, Corinne) (Entered: 07/01/2009) |
| 07/07/2009 | | MINUTE ORDER: The Court held a conference call with the parties this date to discuss the pending motions. The parties are ordered to review the documents at issue in an effort to reduce the contested documents. They are to report back to the Court on their efforts by conference call on July 29, 2009, at 12:00 p.m. Signed by Judge Ellen S. Huvelle on 7/7/2009. (VT) (Entered: 07/07/2009) |
| 07/10/2009 | | Set/Reset Deadlines/Hearings: Telephone Conference set for 7/29/2009 at 12:00 PM in Chambers before Judge Ellen S. Huvelle. (gdf) (Entered: 07/10/2009) |
| 07/29/2009 | | MINUTE ORDER: Based on a conference call this date, defendant shall produce additional documents on or before August 10, 2009, and defendant has agreed that it will only redact Privacy Act information (i.e., name, address, date of birth, social security number, medical information) from these documents. Second, the parties shall file a joint status report on or before August 14, 2009, that specifies what documents or categories of documents are still in dispute with respect to the three categories that were discussed on the phone call, the number of documents at issue in the first two categories, and the exemptions that are being invoked. A conference call is hereby scheduled for August 18, 2009, at 11:00 a.m. Signed by Judge Ellen S. Huvelle on 7/29/2009. (VT) (Entered: 07/29/2009) |
| 08/03/2009 | | Set/Reset Deadlines/Hearings: Joint Status Report due by 8/14/2009. Telephone Conference set for 8/18/2009 a 11:00 AM in Chambers before Judge Ellen S. Huvelle. (gdf) (Entered: 08/03/2009) |
| 08/14/2009 | 24 | STATUS REPORT *Joint Status Report* by ANTHONY C. ROTH, UNITED STATES DEPARTMENT OF JUSTICE. (Niosi, Corinne) (Entered: 08/14/2009) |
| 08/19/2009 | | MINUTE ORDER. For the reasons stated during the August 18, 2009 conference call, the Court grants in part 18 plaintiff's cross motion. On or before August 21, 2009, defendant shall produce for in camera review the documents referenced in the 24 August 14, 2009 status report. On or before August 21, 2009, by letter or email, both parties shall identify the portions of their briefs that address the documents in question. Signed by Judge Ellen S. Huvelle on 08/19/2009. (lcesh1) (Entered: 08/19/2009) |
| 08/21/2009 | 25 | NOTICE *OF EX PARTE IN CAMERA SUBMISSION* by UNITED STATES DEPARTMENT OF JUSTICE (Fields, Rhonda) (Entered: 08/21/2009) |
| | | |

A6

| 09/09/2009 | 26 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ANTHONY C. ROTH. Attorney Corinne Anne Niosi terminated. (Niosi, Corinne) (Entered: 09/09/2009) |
|---|---|---|
| 09/23/2009 | 27 | MEMORANDUM AND OPINION. Signed by Judge Ellen S. Huvelle on 09/23/09. (lcesh1) (Entered: 09/23/2009) |
| 09/23/2009 | 28 | ORDER granting in part and denying in part 15 Defendant's Motion for Summary Judgment for reasons stated in the accompanying Memorandum Opinion 27 . Signed by Judge Ellen S. Huvelle on 09/23/09. (lcesh1) (Entered: 09/23/2009) |
| 10/02/2009 | 29 | MOTION for Leave to File *surveillance photographs exparte in camera* by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Fields, Rhonda) (Entered: 10/02/2009) |
| 10/02/2009 | 30 | MOTION for Reconsideration re 28 Order on Motion for Summary Judgment, 27 Memorandum & Opinion by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Fields, Rhonda) (Entered: 10/02/2009) |
| 10/02/2009 | | MINUTE ORDER granting 29 defendant's Motion for Leave to File Surveillance Photographs Ex Parte In Camera. Defendant shall file the fifteen photographs listed in its motion on or before Friday, October 9, 2009, for in camera review by the Court. The photographs will remain under seal until further notice of the Court. Signed by Judge Ellen S. Huvelle on 10/02/09. (lcesh1) (Entered: 10/02/2009) |
| 10/02/2009 | | Set/Reset Deadlines: Defendant's Fifteen Surveillance Photographs Ex Parte In Camera due by 10/9/2009. (tr) (Entered: 10/02/2009) |
| 10/06/2009 | | MINUTE ORDER finding as moot 30 defendant's Motion for Reconsideration. Upon in camera review of the surveillance photographs submitted by defendant, the Court finds that the photographs contain identifying information and thus are appropriately withheld by defendant for the reasons discussed in the Court's September 23, 2009, memorandum opinion. Signed by Judge Ellen S. Huvelle on 10/06/09. (lcesh1) (Entered: 10/06/2009) |
| 10/13/2009 | 31 | Consent MOTION to Stay re 28 Order on Motion for Summary Judgment *(partially consented)* by UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Text of Proposed Order)(Fields, Rhonda) (Entered: 10/13/2009) |
| 10/14/2009 | | MINUTE ORDER granting in part and denying in part 31 defendant's Motion to Stay: it is hereby ORDERED that the judgment entered in this action on September 23, 2009, as modified by the Minute Order of October 6, 2009, is STAYED until December 6, 2009. Signed by Judge Ellen S. Huvelle on October 14, 2009. (AG) (Entered: 10/14/2009) |
| 10/16/2009 | 32 | NOTICE by UNITED STATES DEPARTMENT OF JUSTICE (Fields, Rhonda) (Entered: 10/16/2009) |
| 12/04/2009 | 33 | NOTICE of Appearance by Bradford Anthony Cangro on behalf of ANTHONY C. ROTH (Cangro, Bradford) (Entered: 12/04/2009) |

| 12/04/2009 | 34 | NOTICE OF APPEAL as to 28 Order on Motion for Summary Judgment, Order on Motion for Reconsideration, 27 Memorandum & Opinion by ANTHONY C. ROTH. Filing fee $ 455, receipt number 0090-2036920. Fee Status: Fee Paid. Parties have been notified. (Cangro, Bradford) (Entered: 12/04/2009) |
| 12/07/2009 | 35 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 34 Notice of Appeal,. (znmw, ) (Entered: 12/07/2009) |
| 12/07/2009 | | USCA Case Number 09-5428 for 34 Notice of Appeal, filed by ANTHONY C. ROTH. (znmw, ) (Entered: 12/07/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/14/2010 16:20:05 | | |
| PACER Login: ml0900 | Client Code: | |
| Description: | Docket Report | Search Criteria: 1:08-cv-00822-ESH |
| Billable Pages: 5 | Cost: | 0.40 |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANTHONY C. ROTH,** | ) | |
| on behalf of Lester L. Bower, Jr., | ) | |
| 1111 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20004, | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No.** \_\_\_\_\_ |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE,** | ) | |
| 950 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20530, | ) | |
| Defendant. | ) | |

### COMPLAINT FOR INJUNCTIVE RELIEF UNDER
### THE FREEDOM OF INFORMATION ACT

1. Plaintiff Anthony C. Roth, on behalf of Lester Leroy Bower, Jr., brings this action

against Defendant United States Department of Justice under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, *as amended*, to enjoin Defendant from improperly withholding from

Plaintiff records of the United States Department of Justice.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B).

3. Venue in the District of Columbia is proper under 5 U.S.C. § 552(a)(4)(B).

### PARTIES

4. Plaintiff Anthony C. Roth is an attorney who, on behalf of his client, Lester Leroy

Bower, Jr., has requested and has been refused access to records of the United States Department

1

of Justice and its components, the Federal Bureau of Investigation ("FBI") and the Executive

Office of United States Attorneys ("EOUSA"). Mr. Bower is a death-row inmate in Livingston,

Texas. On April 22, 2008, a death warrant was signed by the Texas state court for Mr. Bower to

be executed on July 22, 2008.

5. Defendant United States Department of Justice, is an agency within the meaning of 5

U.S.C. § 552(f), is subject to the requirements of the FOIA, and controls the FBI and the

EOUSA, both of which are components of Defendant. Plaintiff sent his FOIA requests to these

components and these components have improperly withheld the records at issue here.

## FACTUAL ALLEGATIONS

6. Mr. Bower was convicted in April 1984 in *State v. Bower,* Nos. 33426-29, 15th

Judicial District Court, Grayson County, Texas, for four murders committed on October 8, 1983.

The investigation that culminated in Mr. Bower's arrest was conducted not only by the local

authorities but by the FBI as well because the local authorities originally believed that the

murders were gang and drug related. The case against Mr. Bower was prosecuted not only by

the local district attorney but also the U.S. Attorney's Office as a part of a coordinated program

of prosecution on both State and Federal levels.

7. After exhausting his direct appeals, in 1989, Mr. Bower filed a petition for writ of

habeas corpus in Texas state trial court and in the Texas Court of Criminal Appeals ("State

Petition"). Shortly after he filed this State Petition, a witness came forth and identified four men,

none of them having any connection to Mr. Bower, as the real perpetrators of the murders for

which Mr. Bower was convicted. (Due to safety concerns for this witness, the habeas courts

permitted the witness to be referred to as "Witness No. 1.") Witness No. 1 provided an affidavit

2

A10

about these four men and indicated that —contrary to the prosecution's theory—the murders were drug-related. Bower's habeas counsel investigated Witness No. 1's statements, including talking to the four men identified as the real perpetrators, and provided to the state courts additional affidavits of an investigator, which corroborated Witness No. 1's sworn statements. Despite the evidence of his actual innocence, both state courts refused to provide Mr. Bower with any discovery, refused to hold an evidentiary hearing, and then denied the petition.

8. In 1992, Mr. Bower filed a petition for writ of habeas corpus in U.S. District Court for the District of Texas ("Federal Petition"). He supported his Federal Petition with the affidavit of Witness No. 1 and investigator affidavits, as well as other affidavits. One of these additional affidavits was the sworn statement of a close friend of one of the murder victims. (The habeas courts permitted this witness to be referred to as "Witness No. 4" due to concerns for the safety of this witness.) In his affidavit, Witness No. 4 stated that he had met Witness No. 1 in 1984 in a recovery meeting of Narcotics Anonymous, and that at one of these meetings in 1984, Witness No. 1 had told him that her boyfriend was responsible for the four 1983 Grayson County murders and that the murders had been drug-related. Both Witness No. 1 and Witness No. 4 testified at an evidentiary hearing in 2000 before the court in the Eastern District of Texas. Other witnesses who testified at the evidentiary hearing provided additional support that the murders were drug-related and had nothing to do with Mr. Bower.

9. During the proceedings relating to the Federal Petition, Mr. Bower learned that although the state prosecutor claimed to have turned over his entire investigative file to Mr. Bower's trial counsel, those files did not include all of the information possessed by the FBI and the U.S. Attorney's Office. Through his habeas counsel's investigation, Mr. Bower learned that

3

the FBI and the U.S. Attorney's Office had additional, exculpatory materials relating to the
investigation of the October 8, 1983 murders that were never produced to trial counsel. The
evidence that Mr. Bower developed showed that in the months following the murders, the FBI
and the local authorities developed evidence that the murders had been related to gambling or
narcotics—contrary to the theory presented at trial—and developed evidence that undermined
claims made by the prosecutor relating to the ammunition used in the murders. This evidence
was never provided to Mr. Bower's trial counsel, in violation of *Brady v. Maryland*, 373 U.S. 83
(1963).

10. Despite the evidence of actual innocence and the *Brady* violation, the district court in
the Eastern District of Texas denied Mr. Bower discovery to support his Federal Petition, and
denied the petition. The Fifth Circuit affirmed the district court's decision to deny the Federal
Petition, and the Supreme Court denied certiorari.

11. In the meantime, Mr. Bower served FOIA requests to obtain information that would
further support his claim of innocence and *Brady* violation. The FBI and the EOUSA, however,
have not complied with the required deadlines under FOIA. Now Texas has set a July 22, 2008
execution date for Mr. Bower, despite there never having been an opportunity for Mr. Bower to
prove his innocence by taking discovery regarding the real murderers and without the
opportunity to learn the details of the exculpatory evidence that has been withheld by the FBI
and the United States Attorney's Office.

### FBI Files Relating to Jerry Buckner, Brett "Bear" Leckie, Chestley Galen Gordon, Lynn Langford, and Robert "Rocky" T. Ford

12. On January 3, 2008, Plaintiff requested by letter, on behalf of his client, Lester Leroy
Bower, Jr., pursuant to 5 U.S.C. § 552(a)(3), disclosure of any and all records in the files of the

4

A12

FBI, a component of Defendant United States Department of Justice, pertaining to Jerry Buckner ("Buckner"), Brett "Bear" Leckie ("Leckie"), Chestley Galen Gordon ("Gordon"), Lynn Langford ("Langford"), and Robert "Rocky" T. Ford ("Ford"). Mr. Buckner was trial counsel to Mr. Bower and Leckie, Gordon, Langford, and Ford are the four men who Witness No. 1 identified as the real killers.

13. On January 28, 2008, Plaintiff received a letter dated January 23, 2008 from David M. Hardy, Section Chief, Records Information and Dissemination Section of the Records Management Division denying disclosure of any information regarding Buckner, Leckie, Gordon, Langford, and Ford on the ground that without proof of death or a notarized authorization, disclosure of law enforcement records or information about another private citizen was exempted from disclosure pursuant to Exemptions (6) and (7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.

14. On March 21, 2008, Plaintiff appealed from the FBI's refusal to determine whether it possessed any records pertaining to Buckner, Leckie, Gordon, Langford, or Ford.

15. On March 26, 2008, the United States Department of Justice, Office of Information and Privacy ("OIP"), received Plaintiff's letter of appeal, and sent Plaintiff a letter dated March 28, 2008, advising him that due to a backlog of pending appeals, there would be an unspecified period of "delay" before the OIP would reach a decision regarding Plaintiff's appeal.

16. By the terms of 5 U.S.C. § 552(a)(6)(A)(ii), the agency response to Plaintiff's March 21, 2008 appeal was due on April 23, 2008, 20 days from the receipt of the appeal. Plaintiff has not yet received a ruling on this appeal.

5

A13

17. By the terms of 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies by reason of Defendant's failure to meet the time limits set out in 5 U.S.C. § 552(a)(6)(A)(ii).

## FBI Files HQ 163-18573, DL 179B-97 and DL 62D-5174

18. On January 3, 2008, Plaintiff requested by letter, on behalf of his client, Lester Leroy Bower, Jr., pursuant to 5 U.S.C. § 552(a)(3), disclosure of any and all records in the files of the FBI, a component of Defendant United States Department of Justice, pertaining to FBI File HQ 163-18573. This is a file relating specifically to the investigation of the October 8, 1983 murders.

19. On January 3, 2008, Plaintiff requested by letter, on behalf of his client, Lester Leroy Bower, Jr., pursuant to 5 U.S.C. § 552(a)(3), disclosure of any and all records in the files of the FBI, a component of Defendant United States Department of Justice, pertaining to FBI Files DL 179B-97 and DL 62D-5174. These too are files relating specifically to the investigation of the October 8, 1983 murders.

20. By letter date January 16, 2008, David M. Hardy, Section Chief, Records Information and Dissemination Section of the Records Management Division "acknowledge[d]" Plaintiff's January 3, 2008 request for FBI File HQ 163-18573 and indicated that "[w]e are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible."

21. By letters dated February 8, 2008, David M. Hardy, Section Chief, Records Information and Dissemination Section of the Records Management Division "acknowledge[d]" Plaintiff's January 3, 2008 request to the Dallas Field office for FBI File DL 179B-97 and FBI

6

File DL 62D-5174, and indicated that "[w]e are searching the indices to our central records system at the Dallas Field Office for the information you requested, and will inform you of the results as soon as possible."

22. Although Mr. Hardy's January 16, 2008 letter did not indicate when the FBI received Plaintiff's request for FBI File HQ 163-18573, the FBI had to have received the letter no later than January 16, 2008. Thus, by the terms of 5 U.S.C. § 552(a)(6)(A)(i), the FBI's determination whether to comply with this request was due at the absolute latest on February 14, 2008, 20 days from January 16, 2008. To date, Plaintiff has not received this determination.

23. Although Mr. Hardy's February 8, 2008 letters did not indicate when the FBI received Plaintiff's request for either FBI File DL 179B-97 or FBI File DL 62D-5174, the FBI had to receive these letters no later than February 8, 2008. Thus, by the terms of 5 U.S.C. § 552(a)(6)(A)(i), the FBI's determination whether to comply with this request was due at the absolute latest on March 10, 2008, 20 days from February 8, 2008. To date, Plaintiff has not received the determinations.

24. By the terms of 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies by reason of Defendant's failure to meet the time limits set out in 5 U.S.C. § 552(a)(6)(A)(i).

## EOUSA Files

25. On January 3, 2008, Plaintiff requested by letter, on behalf of his client, Lester Leroy Bower, Jr., pursuant to 5 U.S.C. § 552(a)(3), disclosure of any and all records in the files of the EOUSA, a component of Defendant United States Department of Justice, pertaining to (a) *State v. Bower,* Nos. 33426-29, 15th Judicial District Court, Grayson County, Texas (1984); (b) the

7

A15

investigation of the October 8, 1983 murders of Bobby Glen Tate, Philip Boyce, Ronald Howard Mayes, or Jerry Mac Brown; (c) FBI Field Office File DL 179B-97; FBI Headquarters File HQ 163-18573; FBI File DL 62D-5174; and FBI File 95-259626.

26. By letter dated February 5, 2008, Mr. William G. Stewart II, Acting Assistant Director, EOUSA, Freedom of Information/Privacy Act Staff, advised Plaintiff that Plaintiff's request for records pertaining to (a) *State v. Bower,* Nos. 33426-29, 15th Judicial District Court, Grayson County, Texas (1984) and (b) the investigation of the October 8, 1983 murders of Bobby Glen Tate, Philip Boyce, Ronald Howard Mayes, or Jerry Mac Brown had been assigned Request No. 08-135 and, further, that "the request pertains to state or local matters . . . and, therefore, are outside the scope of the Act." Yet, the FBI and the Office of the U.S. Attorney were an integral part of the investigation of the October 8, 1983 murders and the prosecution of Mr. Bower.

27. By letter dated February 5, 2008, Mr. William G. Stewart II, Acting Assistant Director, EOUSA, Freedom of Information/Privacy Act Staff, advised that FBI Field Office File DL 179B-97; FBI Headquarters File HQ 163-18573; FBI File DL 62D-5174; and FBI File 95-259626 were assigned Request No. 08-137 and that these files were "not information maintained by the EOUSA or by the individual United States Attorney's Offices." Again, however, the FBI and the Office of the U.S. Attorney were an integral part of the investigation of the October 8, 1983 murders and the prosecution of Mr. Bower.

28. On March 21, 2008, Plaintiff appealed from the response of the EOUSA to Request Nos. 08-135 and 08-137.

8

A16

29. On March 28, 2008, the OIP received Plaintiff's March 21, 2008 letter of appeal, and sent Plaintiff letters dated March 28, 2008, advising him that due to a backlog of pending appeals, there would be an unspecified period of "delay" before the OIP would reach a decision regarding Plaintiff's appeal.

30. By the terms of 5 U.S.C. § 552(a)(6)(A)(ii), the agency response to Plaintiff's appeal was due on April 23, 2008, 20 days from the receipt of the appeal. Plaintiff has not yet received a ruling on this appeal.

31. By the terms of 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies by reason of Defendant's failure to meet the time limits set out in 5 U.S.C. § 552(a)(6)(A)(ii).

## COUNT I

32. Plaintiff incorporates herein by this reference all of the allegations contained in paragraphs 1 through 31.

33. Defendant United States Department of Justice has wrongfully withheld the requested agency records pertaining to Buckner, Leckie, Gordon, Langford, and Ford by failing to comply with the statutory time limit for the processing of FOIA appeals.

34. Plaintiff has exhausted the applicable administrative remedies with respect to Defendant United States Department of Justice's wrongful withholding of the requested records.

35. On information and belief, the requested agency records have been improperly withheld in that the FOIA requires their disclosure and they do not fall within any of FOIA's exemptions from required disclosure.

## COUNT II

9

36. Plaintiff incorporates herein by this reference all of the allegations contained in paragraphs 1 through 31.

37. Defendant United States Department of Justice has wrongfully withheld the requested agency records pertaining to FBI Files HQ 163-18573, DL 179B-97 and DL 62D-5174 by failing to comply with the statutory time limit for the processing of FOIA requests.

38. Plaintiff has exhausted the applicable administrative remedies with respect to Defendant United States Department of Justice's wrongful withholding of the requested records.

39. On information and belief, the requested agency records have been improperly withheld in that the FOIA requires their disclosure and they do not fall within any of FOIA's exemptions from required disclosure.

## COUNT III

40. Plaintiff incorporates herein by this reference all of the allegations contained in paragraphs 1 through 31.

41. Defendant United States Department of Justice has wrongfully withheld the requested agency records pertaining to (a) *State v. Bower,* Nos. 33426-29, 15th Judicial District Court, Grayson County, Texas (1984); (b) the investigation of the October 8, 1983 murders of Bobby Glen Tate, Philip Boyce, Ronald Howard Mayes, or Jerry Mac Brown; (c) FBI Field Office File DL 179B-97; FBI Headquarters File HQ 163-18573; FBI File DL 62D-5174; and FBI File 95-259626 by failing to comply with the statutory time limit for the processing of FOIA appeals.

42. Plaintiff has exhausted the applicable administrative remedies with respect to Defendant United States Department of Justice's wrongful withholding of the requested records.

10

43. On information and belief, the requested agency records have been improperly

withheld in that the FOIA requires their disclosure and they do not fall within any of FOIA's

exemptions from required disclosure.

    WHEREFORE, Plaintiff requests that this Court:

(1) Order Defendant United States Department of Justice to process immediately the

requested records in their entirety;

(2) Order Defendant United States Department of Justice, upon completion of such

processing, to disclose the requested records in their entirety and make copies available to

Plaintiff;

(3) Provide for expeditious proceedings in this action;

(4) Grant Plaintiff his costs and attorneys fees on this action; and

(5) Grant such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

Corinne a Niosi

Corinne A. Niosi (#456123)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-5824

11

A19

Case 1:08-cv-00822-ESH    Document 1-1    Filed 05/12/08    Page 1 of 2
**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Anthony C. Roth, on behalf of Lester L. Bower, Jr. /100/ | United States Department of Justice |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) ~~88888~~ | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | |
|---|---|
| Corinne A. Niosi<br>Morgan, Lewis & Bockius LLP<br>1111 Pennsylvania Ave., NW<br>Washington, DC | Case: 1:08-cv-00822<br>Assigned To : Huvelle, Ellen S.<br>Assign. Date : 5/12/2008<br>Description: FOIA/Privacy Act |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff ● 3 Federal Question (U.S. Government Not a Party)

⊗ 2 U.S. Government Defendant ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ A. *Antitrust*

☐ 410 Antitrust

○ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ C. *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

*3*

A20

| O  G. *Habeas Corpus/* 2255 | O  H. *Employment Discrimination* | O  I. *FOIA/PRIVACY ACT* | O  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act) | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| | *(If pro se, select this deck)* | *(If pro se, select this deck)* | |

| O  K. *Labor/ERISA* (non-employment) | O  L. *Other Civil Rights* (non-employment) | O  M. *Contract* | O N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| ⊙ Original Proceeding | O 2 Removed from State Court | O 3 Remanded from Appellate Court | O 4 Reinstated or Reopened | O 5 Transferred from another district (specify) | O 6 Multi district Litigation | O 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 U.S.C. sec. 552; Request to enjoin improper withholding of records under the Freedom of Information Act.

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ _____<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instruction)    YES ☐    NO ☒ | If yes, please complete related case form. |
|---|---|---|

DATE  5/12/08    SIGNATURE OF ATTORNEY OF RECORD  *Corinne a. Niosi*

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

A21

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTHONY C. ROTH,
    on behalf of Lester L. Bower, Jr.

|  |  |  |
|---|---|---|
| Plaintiff | : | |
| | : | CA No. 08-822 (ESH) |
| v. | : | |
| | | |
| UNITED STATES DEPARTMENT | : | |
| OF JUSTICE, | : | |
| Defendant. | : | |

### ANSWER

#### FIRST DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

#### SECOND DEFENSE

Plaintiff has failed to exhaust administrative remedies.

#### THIRD DEFENSE

Plaintiff as named and described in the complaint has no standing to bring this complaint

#### FOURTH DEFENSE

In response to each numbered paragraph of the complaint, the defendants answer, using

the same numeration which appears in the complaint. Any allegation in the complaint which is

not specifically admitted herein is denied.

1. This paragraph contains plaintiff's characterization of his case, to which no response is

required. To the extent a response is deemed to be required, denied.

#### JURISDICTION AND VENUE

2 & 3. These paragraphs contain plaintiff's legal conclusion as to jurisdiction and venue

to which no response is required.

## PARTIES.

4. First sentence, deny that any of the requests dated January 3, 2008 stated that they were made on behalf of a client, Lester Leroy Bower, Jr. Deny that the defendant refused to give plaintiff access to any documents to which he was entitled under the FOIA. Second sentence, admit. Third sentence, defendant does not have sufficient information to admit or deny.

5. First sentence, admit that the FBI and EOUSA are components of the Department of Justice and subject to the requirement of FOIA. Second sentence, admit that Mr. Roth in his individual capacity sent requests to EOUSA and the FBI, otherwise denied.

## FACTUAL ALLEGATIONS

6. Admit that Mr. Bower was convicted of murder in the cited case. Admit that an Assistant United States Attorney was authorized to be appointed as a special prosecutor in the District Attorney's Office for a six-month period. Otherwise, defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

7-10. Defendant lacks sufficient knowledge to admit or deny the allegation in these paragraphs.

11. Sentence one, deny that Mr. Bower served any FOIA requests on defendant. Sentence two is a legal conclusion to which no response is required. Sentence three, deny that the FBI and United States Attorney's Office withheld any exculpatory evidence, otherwise defendant lacks sufficient knowledge to admit or deny the allegation in this sentence.

**FBI Files Relating to Jerry Buckner, Brett "Bear" Leckie, . . . .**

12. Sentence one, deny that Mr. Roth submitted a request which stated that it was on

2

**A23**

behalf of his client Lester Leroy Bower, Jr.; admit that Mr. Roth in his individual capacity made a request for the information reflected in the letter. Sentence two, defendant lacks sufficient knowledge to admit or deny the allegation in this sentence.

13. Admit that Mr. Roth in his individual capacity was sent a letter from David M. Hardy; this letter speaks for itself.

14. Admit that such an appeal was filed by Mr. Roth in his individual capacity.

15. Admit that such correspondence took place between OIP and Mr. Roth in his individual capacity.

16. The first sentence is a statement of law to which no answer is required; insofar as no response was made to the appeal by the agency on or before April 23, 2008, admit. Admit the remainder of the paragraph.

17. Paragraph 17 is a legal conclusion to which no response is required.

### FBI Files HQ 163-18573, DL 179B-97 and DL 62D-5174

18. Sentence one, deny that Mr. Roth submitted a request which stated that it was on behalf of his client Lester Leroy Bower, Jr.; admit that Mr. Roth in his individual capacity made a request for information; the letter speaks for itself as to what information was requested. Sentence two, defendant lacks sufficient information at this time to admit or deny.

19. Sentence one, deny that Mr. Roth submitted a request which stated that it was on behalf of his client Lester Leroy Bower, Jr.; admit that Mr. Roth in his individual capacity made a request for information; the letter speaks for itself as to what information was requested.. Sentence two, defendant lacks sufficient information at this time to admit or deny.

20. Admit that said response was made to Mr. Roth's request, in his individual capacity.

3

A24

21. Admit that said response was made to Mr. Roth's request, in his individual capacity.

22. Sentences one and two contain plaintiff's conclusions of fact and law to which no response is required. Sentence three admit.

23. Sentences one and two contain plaintiff's conclusions of fact and law to which no response is required. Sentence three, admit.

24. This paragraph contains plaintiff's conclusions of fact and law to which no response is required.

## EOUSA Files

25. Deny that plaintiff submitted a request which stated that it was on behalf of his client Lester Leroy Bower, Jr.; admit that Mr. Roth in his individual capacity made a request for information; the letter speaks for itself.

26. Sentence one, admit that the letter was sent to Mr. Roth in his individual capacity. Sentence two, defendant lacks sufficient information to admit or deny.

27. Sentence one, admit. Sentence two, defendant lacks sufficient information to admit or deny.

28. Admit that Mr. Roth in his individual capacity made such an appeal.

29. Admit that said letters from and sent to Mr. Roth in his individual capacity .

30 - 31. These paragraphs contain plaintiff's legal conclusions to which no response is required.

## COUNT I

32. Defendants' responses to paragraphs 1-31 are hereby incorporated by reference.

33-35. Deny

4

A25

## COUNT II

36. Defendants' responses to paragraphs 1-31 are hereby incorporated by reference.

37-39. Deny.

## COUNT III

40. Defendants' responses to paragraphs 1-31 are hereby incorporated by reference.

41-43. Deny.

Paragraph beginning "WHEREFORE" contains plaintiff's prayer for relief to which no

response is required; to the extent a response is deemed to be required, deny that plaintiff is

entitled to any relief and deny that plaintiff is entitled to costs and attorneys fees.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/ Rhonda C. Fields
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202/514/6970

5

A26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY C. ROTH, ) | |
| on behalf of Lester L. Bower, Jr., ) | |
| Plaintiff, ) | Civil Action No. 08-00822 (ESH) |
| v. ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, ) | |
| Defendant. ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
CROSS MOTION FOR A MORE PARTICULARIZED *VAUGHN* INDEX OR *IN
CAMERA* REVIEW OF WITHHELD AND REDACTED DOCUMENTS

## INDEX OF EXHIBITS

Exhibit A (Memorandum of January 21, 2009, 74 Fed. Reg. 4683 (Jan. 21. 2009))

Exhibit B (March 19, 2009 Memorandum for Heads of Executive Department from Attorney General Eric Holder)

Exhibit C (January 3, 2008 FOIA Request to EOUSA)

Exhibit D (EOUSA FOIA responses dated February 5, 2008, May 1, 2008, and June 9, 2008)

Exhibit E (Search Warrant in *State v. Bower*)

Exhibit F (Parker County, Texas Court Website for Judge Jerry Buckner)

Exhibit G (June 29, 2008 Dallas Star Telegram Article)

Exhibit H (*Norman v. State*)

# Exhibit A



Monday,
January 26, 2009

## Part IX

# The President

Memorandum of January 21, 2009—
Freedom of Information Act

Memorandum of January 21, 2009—
Transparency and Open Government

4683

Federal Register

Vol. 74, No. 15

Monday, January 26, 2009

# Presidential Documents

Title 3—

The President

Memorandum of January 21, 2009

## Freedom of Information Act

### Memorandum for the Heads of Executive Departments and Agencies

A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, "sunlight is said to be the best of disinfectants." In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike.

The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies (agencies) should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public.

All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.

The presumption of disclosure also means that agencies should take affirmative steps to make information public. They should not wait for specific requests from the public. All agencies should use modern technology to inform citizens about what is known and done by their Government. Disclosure should be timely.

I direct the Attorney General to issue new guidelines governing the FOIA to the heads of executive departments and agencies, reaffirming the commitment to accountability and transparency, and to publish such guidelines in the *Federal Register*. In doing so, the Attorney General should review FOIA reports produced by the agencies under Executive Order 13392 of December 14, 2005. I also direct the Director of the Office of Management and Budget to update guidance to the agencies to increase and improve information dissemination to the public, including through the use of new technologies, and to publish such guidance in the *Federal Register*.

This memorandum does not create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

**4684**    Federal Register / Vol. 74, No. 15 / Monday, January 26, 2009 / Presidential Documents

The Director of the Office of Management and Budget is hereby authorized and directed to publish this memorandum in the *Federal Register.*

THE WHITE HOUSE,
*Washington, January 21, 2009*

[FR Doc. E9-1773
Filed 1-23-09; 11:15 am]
Billing code 3110-01-P

# Exhibit B



# Office of the Attorney General

## Washington, D.C. 20530

March 19, 2009

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:    THE ATTORNEY GENERAL

SUBJECT:    The Freedom of Information Act (FOIA)

The Freedom of Information Act (FOIA), 5 U.S.C. § 552, reflects our nation's fundamental commitment to open government. This memorandum is meant to underscore that commitment and to ensure that it is realized in practice.

## A Presumption of Openness

As President Obama instructed in his January 21 FOIA Memorandum, "The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails." This presumption has two important implications.

First, an agency should not withhold information simply because it may do so legally. I strongly encourage agencies to make discretionary disclosures of information. An agency should not withhold records merely because it can demonstrate, as a technical matter, that the records fall within the scope of a FOIA exemption.

Second, whenever an agency determines that it cannot make full disclosure of a requested record, it must consider whether it can make partial disclosure. Agencies should always be mindful that the FOIA requires them to take reasonable steps to segregate and release nonexempt information. Even if some parts of a record must be withheld, other parts either may not be covered by a statutory exemption, or may be covered only in a technical sense unrelated to the actual impact of disclosure.

At the same time, the disclosure obligation under the FOIA is not absolute. The Act provides exemptions to protect, for example, national security, personal privacy, privileged records, and law enforcement interests. But as the President stated in his memorandum, "The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."

Pursuant to the President's directive that I issue new FOIA guidelines, I hereby rescind the Attorney General's FOIA Memorandum of October 12, 2001, which stated that the Department of Justice would defend decisions to withhold records "unless they lack a sound

legal basis or present an unwarranted risk of adverse impact on the ability of other agencies to protect other important records."

Instead, the Department of Justice will defend a denial of a FOIA request only if (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the statutory exemptions, or (2) disclosure is prohibited by law. With regard to litigation pending on the date of the issuance of this memorandum, this guidance should be taken into account and applied if practicable when, in the judgment of the Department of Justice lawyers handling the matter and the relevant agency defendants, there is a substantial likelihood that application of the guidance would result in a material disclosure of additional information.

#### FOIA Is Everyone's Responsibility

Application of the proper disclosure standard is only one part of ensuring transparency. Open government requires not just a presumption of disclosure but also an effective system for responding to FOIA requests. Each agency must be fully accountable for its administration of the FOIA.

I would like to emphasize that responsibility for effective FOIA administration belongs to all of us—it is not merely a task assigned to an agency's FOIA staff. We all must do our part to ensure open government. In recent reports to the Attorney General, agencies have noted that competing agency priorities and insufficient technological support have hindered their ability to implement fully the FOIA Improvement Plans that they prepared pursuant to Executive Order 13392 of December 14, 2005. To improve FOIA performance, agencies must address the key roles played by a broad spectrum of agency personnel who work with agency FOIA professionals in responding to requests.

Improving FOIA performance requires the active participation of agency Chief FOIA Officers. Each agency is required by law to designate a senior official at the Assistant Secretary level or its equivalent who has direct responsibility for ensuring that the agency efficiently and appropriately complies with the FOIA. That official must recommend adjustments to agency practices, personnel, and funding as may be necessary.

Equally important, of course, are the FOIA professionals in the agency who directly interact with FOIA requesters and are responsible for the day-to-day implementation of the Act. I ask that you transmit this memorandum to all such personnel. Those professionals deserve the full support of the agency's Chief FOIA Officer to ensure that they have the tools they need to respond promptly and efficiently to FOIA requests. FOIA professionals should be mindful of their obligation to work "in a spirit of cooperation" with FOIA requesters, as President Obama has directed. Unnecessary bureaucratic hurdles have no place in the "new era of open Government" that the President has proclaimed.

Memorandum for Heads of Executive Departments and Agencies                    Page 3
Subject: The Freedom of Information Act

#### Working Proactively and Promptly

Open government requires agencies to work proactively and respond to requests
promptly. The President's memorandum instructs agencies to "use modern technology to inform
citizens what is known and done by their Government." Accordingly, agencies should readily
and systematically post information online in advance of any public request. Providing more
information online reduces the need for individualized requests and may help reduce existing
backlogs. When information not previously disclosed is requested, agencies should make it a
priority to respond in a timely manner. Timely disclosure of information is an essential
component of transparency. Long delays should not be viewed as an inevitable and
insurmountable consequence of high demand.

In that regard, I would like to remind you of a new requirement that went into effect on
December 31, 2008, pursuant to Section 7 of the OPEN Government Act of 2007, Pub. L.
No. 110-175. For all requests filed on or after that date, agencies must assign an individualized
tracking number to requests that will take longer than ten days to process, and provide that
tracking number to the requester. In addition, agencies must establish a telephone line or Internet
service that requesters can use to inquire about the status of their requests using the request's
assigned tracking number, including the date on which the agency received the request and an
estimated date on which the agency will complete action on the request. Further information on
these requirements is available on the Department of Justice's website at
www.usdoj.gov/oip/foiapost/2008foiapost30.htm.

*****

Agency Chief FOIA Officers should review all aspects of their agencies' FOIA
administration, with particular focus on the concerns highlighted in this memorandum, and report
to the Department of Justice each year on the steps that have been taken to improve FOIA
operations and facilitate information disclosure at their agencies. The Department of Justice's
Office of Information Policy (OIP) will offer specific guidance on the content and timing of such
reports.

I encourage agencies to take advantage of Department of Justice FOIA resources. OIP
will provide training and additional guidance on implementing these guidelines. In addition,
agencies should feel free to consult with OIP when making difficult FOIA decisions. With
regard to specific FOIA litigation, agencies should consult with the relevant Civil Division, Tax
Division, or U.S. Attorney's Office lawyer assigned to the case.

This memorandum is not intended to, and does not, create any right or benefit,
substantive or procedural, enforceable at law or equity by any party against the United States, its
departments, agencies, instrumentalities or entities, its officers, employees, agents, or any other
person.

A35

# Exhibit C

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com

**Morgan Lewis**
COUNSELORS AT LAW

Anthony C. Roth
202.739.5188
aroth@morganlewis.com

January 3, 2008

**VIA U.S. MAIL**

FOIA/Privacy Staff
Executive Office for United States Attorneys
600 E Street, N.W. (BICN Room 7300)
Washington, DC 20530-0001

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I hereby request any and all records in your files pertaining to the following:

1. *State v. Bower,* Nos. 33426-29, 15th Judicial District Court, Grayson County, Texas (1984);

2. The investigation of the October 8, 1983 murders of Bobby Glen Tate, Philip Boyce, Ronald Howard Mayes, or Jerry Mac Brown;

3. Any tasks performed by Ronald J. Seivert, AUSA, Tyler, Texas, in connection with the investigation of the October 8, 1983 murders of Bobby Glen Tate, Philip Boyce, Ronald Howard Mayes, or Jerry Mac Brown;

4. Any tasks performed by Ronald J. Seivert, AUSA, Tyler, Texas, in connection with the prosecution and trial of *State v. Bower,* Nos. 33426-29, 15th Judicial District Court, Grayson County, Texas (1984);

5. Any tasks performed by Ronald J. Seivert, AUSA, Tyler, Texas, in connection with post-trial legal proceedings related to *State v. Bower,* Nos. 33426-29, 15th Judicial District Court, Grayson County, Texas (1984);

6. FBI Field Office File DL 179B-97, Volume Number I, Serials 1-40;

7. FBI Field Office File DL 179B-97, Volume Number II, Serials 41-111;

8. FBI Field Office File DL 179B-97, Volume Number III, Serials 112-199;

FOIA/Privacy Staff
January 3, 2008
Page 2

Morgan Lewis
COUNSELORS AT LAW

9.    FBI Field Office File DL 179B-97, Volume Number IV, Serials 200-305;

10.    FBI Field Office File DL 179B-97, Volume Number V, Serials 306 - ___;

11.    FBI Field Office File DL 179B-97, Volume Number 1A;

12.    FBI Field Office File DL 179B-97, Volume Number 1B;

13.    FBI Headquarters File HQ 163-18573;

14.    FBI File DL 62D-5174; and

15.    FBI File 95-259626.

I request that you provide me with exact copies or a complete and accurate account of the information requested. I agree to pay reasonable search and reproduction costs.

If you have any questions about this request or require further information, please contact me at 202-739-5188.

Sincerely,

Anthony C. Roth

# Exhibit D

Case 1:08-cv-00822-ESH  Document 17-1   Filed 04/03/09  Page 13 of 45



**RECEIVED**

FEB - 8 2008

MORGAN, LEWIS & BOCKIUS LLP

U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300          FEB - 5 2008
Washington, D.C.  20530
202-616-6757  Fax 202-616-6478

---

Request Number: __08-135_____    Date of Receipt: __January 16, 2008_____

Requester: __Anthony C. Roth_____    Subject: __State v. Bower (Items 1.2)_____

Dear Requester:

    In response to your Freedom of Information Act and/or Privacy Act request, the
paragraph(s) checked below apply:

1.   [  ]   Your request has been forwarded to _____ for a direct response to you.

2.   [  ]   The records responsive to your request have been destroyed pursuant to Department of
Justice guidelines.

3.   [ ]   Your request seeks public records which may be obtained from the clerk of the court.

4.   [✓]   Your request pertains to state or local matters, the records for which are maintained by state
or local agencies and, therefore, are outside the scope of the Act.  You should contact the
pertinent state or local agency for a response to your request.

5.   [ ]   The Freedom of Information Act only applies to records already in existence and does not
require an agency to conduct research, create new records, or answer questions presented as
FOIA requests.

6.   [  ]   Your request concerns material which is publicly available through the Government
Printing Office. You can obtain/purchase a copy of the requested material by writing to the
Superintendent of Documents, U.S. Government Printing Office, Washington, D.C.  20402.

7.   [  ]   Please note that your original letter was split into separate files ("requests"), for processing
purposes, depending on the nature of what you sought.  Each file was given a separate
Request Number (listed below), for which you will receive a separate response:

---

    This is our final action on this above-numbered Request. You may appeal my decision on
this request by writing to the **Office of Information and Privacy, Department of Justice, 1425
New York Avenue, Suite, 11050, Washington, D.C. 20530-0001**, within 60 days from the date of
this letter. Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied
with the results of any such administrative, appeal, judicial review may thereafter be available in
U.S. District Court. 28 C.F.R. §16.9.

Sincerely,

*William G. Stewart*

William G. Stewart II
Acting Assistant Director          Form No. 005A - 2/06

**U.S. Department of Justice**                    FEB - 5 2008

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: Anthony C. Roth                    Request Number:   08-137

Subject:   FBI Records (Items 6 – 15)

Dear Requester:

      The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act and/or Privacy Act request. The EOUSA is the official record keeper for all records located in this office and the various United States Attorney's offices.

      You requested information which is not information maintained by the EOUSA or by the individual United States Attorney's Offices, but is maintained by the Federal Bureau of Investigation (FBI). Please contact the bureau directly at the following address:

              Federal Bureau of Investigation
              Department of Justice
              935 Pennsylvania Avenue, N.W.
              Washington, D.C. 20535-0001

[  ]    Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought. Each file will have a separate Request Number (listed below), for which you will receive a separate response:
**NOT SPLIT**

      This is a final action on this above-numbered Request. You may appeal my decision on this request by writing within 60 days from the date of this letter, to **Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the envelope and letter of appeal should be marked "FOIA Appeal." If you are dissatisfied with the result s of any such administrative appeal, judicial review may thereafter be available in U.S. District Court. 28 C.F.R. §16.9.

              Sincerely,

              William G. Stewart II
              Assistant Director

Form No. 042 - 3/07



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: __Anthony C. Roth__          Request Number: 08-136

Subject of Request: AUSA Seivert (State v. Bower items 3-5) / Eastern District of Texas

Dear Requester:

Your request for records under the Freedom of Information Act/Privacy Act has been
processed. This letter constitutes a reply from the Executive Office for United States Attorneys,
the official record-keeper for all records located in this office and the various United States
Attorneys' Offices.

To provide you the greatest degree of access authorized by the Freedom of Information
Act and the Privacy Act, we have considered your request in light of the provisions of both
statutes.

The records you seek are located in a Privacy Act system of records that, in accordance
with regulations promulgated by the Attorney General, is exempt from the access provisions of
the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of
Information Act and are making all records required to be released, or considered appropriate for
release as a matter of discretion, available to you.

Enclosed please find:

5 page(s) are being released in full (RIF);
2 page(s) are being released in part (RIP);

*Please note that some information is non-responsive and has been redacted from the*
*documents we are releasing.*

[ X ]  Please note that your original letter was split into separate files ("requests"),
for processing purposes, based on the nature of what you sought. Each file was given a separate
Request Number (listed below), for which you will receive a separate response:

                    08-135
                    08-137

## RECEIVED

MAY − 1 2008

MORGAN, LEWIS & BOCKIUS LLP

This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

Karen W. Linnegan for

William G. Stewart II
Assistant Director

Enclosure(s)

## EXPLANATION OF EXEMPTIONS

### FOIA: TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)    (A) specifically authorized under criteria established by and Executive order to be kept secret in the in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### PRIVACY ACT: TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information complied in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to Executive Order 12356 in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material complied for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability eligibility, or qualification for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his identity would be held in confidence.

Note: Enclosed are documents that show that the District's criminal case file pertaining to the
Bower prosecution was destroyed pursuant to Department of Justice regulation and records
retention schedules. See 44 U.S.C. § 3301 *et seq*., 36 C.F.R. § 1228.

## CRIMINAL CASES

**EARLIEST CLOSING DATE:** 01/09/89
**LATEST CLOSING DATE:**   04/28/89

DOCKET NUMBER      $n.20-93$        NAME OF CASE                    CLOSED

$NR$

USAO# 8300769                BOWER,   Lester   Leroy   (One        04/24/89
                             Accordian Folder)

$NR$

DESTROYED

ACCESSION NUMBER__118-93-A0048__

LOCATION NUMBER__C1610432__

BOX NO.__2__ of __6__

| NOTICE    INTENT TO DESTROY RECORDS | DATE OF NOTICE 04 01 99 | DISPOSAL DATE 199907 | |
|---|---|---|---|
| records described in this notice appear eligible for disposal on the date shown. In ordance with 36 CFR 1228.164(c), they will be destroyed 90 days from the date of notice. You should annotate your SF 135 (all copies) to show that the records e been destroyed. No other action is required. If you do not concur in the scheduled struction of these records, you may request an extension of the retention period by viding written justification (including a proposed new disposal date) within the 90-day period to the director of the Federal records center indicated at the right. | RECORDS DESCRIPTION | | |
| | ACCESSION NUMBER 118-93A0048 | | SUBGROUP ATY |
| | DISPOSAL AUTHORITY USAM/3D/4 | | VOLUME (Cu. ft.) 3.000 |
| ¹ARKS | SERIES DESCRIPTION | | |
| LOCATION: C-16-104-3-2 C-16-104-3-4 | CRIM CASE FILES TYLER TX 6 89 | | |
| | ADDRESS OF FEDERAL RECORDS CENTER | | |
| U.S. ATTORNEY'S OFFICE ATTN: RECORDS OFFICER 110 NORTH COLLEGE, SUITE 700 TYLER,          TX 75702 | NARA SOUTHWEST REGION P.O. BOX 6216 FORT WORTH TX 76115 | | |
| ATIONAL ARCHIVES AND RECORDS ADMINISTRATION | | NA 13001 (7-88) | |

A47

Defendant                                              USAO # /SEQ
BOWER, LESTER LEROY                                    83R0769  001

File Name
US V BOWER, LESTER L

Lead Charge          Offense
18 :0241             CIVIL RIGHTS PROSECUTION

Branch   AUSA    Agency    #Defs   Court Number
  4       RS     JUFB

Matter Dt       Def Disp Dt       Def Disp Reason
 831114          890424              SPOA

A48

BOWER, Lester Leroy, Jr.                    No.:    CrGenInfo

C/A:                              Court No.:

         ITSMV

Opened:    10-4-84              Closed:

Attorney:    Ron Sievert

See Also:    Filed under CrGenInfo under "B"


8 USA 4                              MEMORANDUM COPY



U.S. Department of  ıtice    Saudi

Office of the Deputy Attorney General

*Attorney Personnel Management*

*Washington, D.C. 20530*    APR 0 5 1984

APR  2 1984

Mr. Robert J. Wortham
United States Attorney
Beaumont, Texas  77704

    Re:  Mr. Ronald J. Sievert
         Assistant United States Attorney

Dear Mr. Wortham:

    This is in response to your letter dated March 7, 1984,
requesting permission for Assistant United States Attorney
Ronald J. Sievert to be appointed for a six-month period, as a
Special Prosecutor in the Grayson County District Attorney's
office for the State of Texas.  Mr. Sievert will assist the State
Prosecutor in the capital murder prosecution of Lester Leroy
Bower, Jr.  It is understood that the Criminal District Attorney
has approved this request.

    Mr. Sievert will not receive any compensation other than his
regular salary as an Assistant United States Attorney, for his
service.  Under the circumstances as outlined in your letter, the
request appears to be justified and, therefore, permission is
granted.  This permission is conditioned on there being no
conflict of interest with his position as Assistant United States
Attorney and no interference with the performance of his duties.
Mr. Sievert will be deemed to be on official duty while he is
acting as a Special Prosecutor in the Grayson County District
Attorney's office for the State of Texas in this matter.  There-
fore, it will not be necessary for him to take administrative
leave for this purpose.

                              Sincerely,

                              *Harry L. Gastley*

                              Harry L. Gastley
                              Deputy Director
                              Office of Attorney Personnel Management

cc:  Mr. William J. Cornelius
     First Assistant United States Attorney
     Tyler, Texas  75710

A50



U.S. Department of Justice

**FILE**

*United States Attorney*
*Eastern District of Texas*

*Post Office Box 2034*              *221 W. Ferguson Street*
*Tyler, Texas 75710*                    *Tyler, Texas 75702*
*214/597-8146*
March 7, 1984                        *FTS/749-6054*


Mr. Lawrence S. McWhorter
Deputy Director
Executive Office United States Attorney
Department of Justice
Room 1617
10th & Constitution
Washington, D. C. 20530

Dear Sir:

    Permission is requested for assignment of Assistant United
States Attorney Ronald J. Sievert as special prosecutor in the
Grayson County District Attorney's Office of the State of
Texas.  Mr. Sievert has been asked to accept a six month
appointment by the Criminal District Attorney to the cross-
designation program.

    Mr. Sievert will assist the State prosecutor in the
capital murder prosecution of Lester Leroy Bower, Jr.  Bower
has been indicted by the State for the simultaneous murder of
four individuals at the time he stole an ultralight airplane
from a Grayson County airplane hanger.  Two of these
individuals were in the business of buying and selling such
planes in interstate commerce.  The eventual identification
and arrest of Bower was due in large part to the efforts of
Federal investigators working in conjunction with Mr. Sievert.
This cross-designation is part of a coordinated program of
prosecution on both the State and Federal level.

    I am at this time unaware of any possible conflicts of
interest with his position as Assistant United States
Attorney.

1

If his appointment is accepted Mr. Sievert will continue
to receive his salary as Assistant United States Attorney but
will not receive any additional compensation.   Due to the
immediacy of this pending trial in State Court it is requested
that the consideration of this appointment be expedited as
soon as possible.

Very truly yours,

BOB WORTHAM
Assistant U. S. Attorney

William Cornelius

WILLIAM J. CORNELIUS
First Assistant U. S. Attorney

WJC:lee

2

A52

**RECEIVED**

U.S. Department of Justice

JUN 2 3 2008

MORGAN, LEWIS & BOCKIUS LLP

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

**80CE 6 - NNM**

Requester:  Anthony Roth        Request Number: 08-136

JUN -9 2008

Subject of Request:  AUSA Seivert (State v. Bower items 3-5) / Eastern District of Texas

Dear Requester:

Your request for records under the Freedom of Information Act was processed and sent to you on April 29 2008.

This letter constitutes a **supplemental** reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorney's offices.

We are releasing (1) one page in full that was originally released in part.

This is the final action on this above-numbered request. You may **appeal** this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

| NOTICE | ~TENT TO DESTROY RECORDS | DATE OF NOTICE 04 01 99 | DISPOSAL DATE 199907 |
| --- | --- | --- | --- |

RECORDS DESCRIPTION

| ACCESSION NUMBER 118-93A0048 | SUBGROUP ATY |
| --- | --- |

l records described in this notice appear eligible for disposal on the date shown. In ordance with 36 CFR 1228.164(c), they will be destroyed 90 days from the date of notice. You should annotate your SF 135 (all copies) to show that the records 'e been destroyed. No other action is required. If you do not concur in the scheduled :truction of these records, you may request an extension of the retention period by viding written justification (including a proposed new disposal date) within the day period to the director of the Federal records center indicated at the right.

| DISPOSAL AUTHORITY USAM/3D/4 | VOLUME (Cu. ft.) 3.000 |
| --- | --- |

SERIES DESCRIPTION

CRIM CASE FILES TYLER TX
6 89

1ARKS
LOCATION: C-16-104-3-2 C-16-104-3-4

ADDRESS OF FEDERAL RECORDS CENTER

NARA SOUTHWEST REGION
P.O. BOX 6216
FORT WORTH TX 76115

U.S. ATTORNEY'S OFFICE
ATTN: RECORDS OFFICER
110 NORTH COLLEGE, SUITE 700
TYLER,                TX 75702

ATIONAL ARCHIVES AND RECORDS ADMINISTRATION

NA 13001 (7-86)

# Exhibit E

SEARCH WARRANT

THE STATE OF TEXAS          )
                           )
COUNTY OF TARRANT          )

THE STATE OF TEXAS to the Sheriff or any Peace Officer of Tarrant County, Texas, or any Peace Officer of the State of Texas.

GREETINGS:

WHEREAS WELDON LUCAS, a Texas Ranger, being a Peace Officer under the laws of the State of Texas, has this day before me sworn, subscribed and affixed his signature to an Affidavit, requesting a search warrant, and whereas I find that the verified facts stated by said Affiant in said Affidavit show that said Affiant has probable cause for the belief he expresses therein and establishes proper grounds for the issuance of this warrant.

Now, THEREFORE, you are commanded to enter the suspected place and premises described in said Affidavit, namely, a private residence located at 3008 Quail Lane, in the City of Arlington, Tarrant County, Texas, described as a single story brick veneer house, light beige in color with brown trim, a two car front entry garage, a black mailbox in front of the house at the curb with the numbers in white "3008", and other structures and outbuildings; and a Ford LTD four-door white in color bearing Texas registration 280DMB; a 1973 International vehicle, light blue in color with Texas registration 623CYU; and a Volkswagen Rabbit automobile with Colorado registration NS2930.

Stolen property, to-wit: an ultralight aircraft being an American Ultralights, Inc., Eagle Model 4904, Serial No. 102045, Engine No. 15949; and instrumentalities of the crime of murder, to-wit: a weapon which is a .22 caliber firearm and a quantity of .22 caliber ammunition and a firearm silencer; and evidence of the crime of theft and murder which are books, magazines, pamphlets or other written or printed material concerning the manufacture, building, constructing or altering of ultralight aircraft, firearms or firearm silencers, or other written or printed material concerning or evidencing the purchase or sale of ultralight aircraft or firearms or firearms silencers; hand and power operated metal cutting, drilling, shaping and forming tools; muddy clothing and boots, or clothing and boots bearing stains which could be blood.

and to seize the same and bring it before me.

HEREIN FAIL NOT but have you then and there this Warrant within three days, exclusive of the day of its execution, with your return thereon, showing how you have executed the same.

ISSUED AT _6:41_ o'clock _P_ m., on this the _20_ day of January, 1984, to certify which witness my hand this day.

DISTRICT JUDGE,
TARRANT COUNTY, TEXAS

FILED
THE 213th DISTRICT COURT
TARRANT COUNTY, TEXAS

FEB 13 1984

J. W. BOORMAN
DISTRICT CLERK
By: _____Deputy

A56                              125

# Exhibit F

# Welcome to Parker County, Texas

HOME | **COUNTY OFFICES** | OTHER COUNTY OFFICES | DISTRICT COURT | COUNTY INFORMATION | LOCAL AREA LINKS

- Home
- County Offices
  - County Judge
  - Commissioners Court
  - County Attorney
  - ■ **County Court at Law 1**
  - County Court at Law 2
  - County Clerk
  - Sheriff
  - Tax Assessor-Collector
  - Treasurer
  - Justice of the Peace
  - Constable
  - County Auditor
  - Platting Office
- Other County Offices
- District Court
- County Information
- Public Notices
- Jobs
- News
- Environmental Complaint Form
- County Gov't. Tips & Info: TexasCounties4U.org

**Local Area Links**

- Adopt A Country Road
- Weatherford Regional Medical Center
- North Central Texas Council of Governments
- The Senior Center

County Court at Law 1

**Judge Jerry Buckner**

1112 Santa Fe Dr.

Weatherford, TX 76086

Phone: 817-598-6179
Fax: 817-598-6119

The Parker County Courts at Law have concurrent civil jurisdiction with the Parker Cou District Courts.

All new civil filings for the Parker County Courts at Law are done at the Parker Count Clerk's office in the Courthouse Annex, located at 1112 Santa Fe Drive, Weatherford Texas 76086. Pleadings to be filed in existing civil cases should be filed with the court jurisdiction.

A58

- City of Weatherford
- Weatherford Chamber of Commerce
- Weatherford Economic Development
- Weatherford College
- Weatherford ISD
- City of Aledo
- City of Fort Worth
- City of Hudson Oaks
- City of Springtown
- City of Willow Park
- Aledo ISD
- Brock ISD
- Garner ISD
- Millsap ISD
- Peaster ISD
- Poolville ISD
- Springtown ISD
- Springtown Chamber of Commerce
- Trans-Texas Corridor
- Barnett Shale Study
- TCEQ Report Recommending Groundwater Conservation District
- East Parker County Chamber of Commerce
- Annetta North

A59

# Exhibit G



# Golf hits a rough patch

Rounds played are down and courses are closing; What's wrong with golf? Sports, 1C

# Star-Telegram

ARLINGTON

An Edition of the Fort Worth Star-Telegram

Sunday
June 29, 2008
When The West Begins
www.star-telegram.com          $1.50

Lester Bower, at the Polunsky Unit in East Texas, has been on Death Row since 1984. He acknowledges meeting two of the victims on the day they died but has denied involvement in their slayings.   SPECIAL

## 1983 SLAYINGS

# Days from execution, inmate pins hopes on woman's story

Since 1984, Lester Leroy Bower Jr. has sat on Texas Death Row, convicted for the 1983 massacre of four men in a Sherman airplane hangar.

The Arlington man now faces execution on July 22, and as time runs out, his lawyers are fighting to save his life by trying to prove he was not the killer after all.

One key witness, a woman who came forward years ago, says it was her then-boyfriend and three other drug dealers who were responsible for the slayings. Though a prosecutor says she

is certain that the right man has been convicted, Bower's lawyers say their investigation has verified key details of the woman's story.

But for Bower, will it be too late?

Staff writer Tim Madigan reports, 1B

**Online exclusive**
Listen to Lester Bower tell his story from Death Row at star-telegram.com/videos

**B** Star Telegram   Sunday, June 29, 2008                                        ARL   +   M

# REGION

Obituaries........6-9B
Live!...............10B

## CAPITAL PUNISHMENT

# Witness says condemned man isn't responsible for 1983 slayings

**The Arlington man is set to be executed July 22, after 24 years on Death Row.**

By TIM MADIGAN
tmadigan@star-telegram.com

**A62**

Just a few paragraphs into the *Star-Telegram* story, the woman knew something was terribly wrong. A man named Lester

Leroy Bower Jr. was on Death Row for the 1983 massacre of four men in a Sherman airplane hangar, she read that morning in 1919. But the woman, who asked to be identified by the pseudonym "Pearl," had reason to believe that Bower wasn't the killer at all — that it was her ex-boyfriend and three others who had

committed the crime.

The woman showed the story to her sister, the one person she had told of her suspicions about the old boyfriend.

"They're going to put that guy to death for that," she remembers her sister saying.

"Yeah, I know," Pearl replied.

More on **CONDEMNED on 4B**



STAR-TELEGRAM/M.L. GRAY

Lester Bower has been sentenced to die for the slayings of four men at a Sherman airplane hangar in 1983. He says a witness's testimony supports his claims of innocence.

**⌐⌐⌐ Online exclusive**
Watch a jailhouse interview with Lester Bower at star-telegram.com/videos

❝ If he would have gotten life in prison, I can't sit here and honestly say I would have done something different. Life is what, 30 years in the state of Texas? But he got the death penalty and there's no getting out of that.

**"Pearl,"** a woman who says her ex-boyfriend has admitted responsibility in the slayings. Her identity is concealed by court order.



Investigators comb through an airplane hangar at a ranch near Sherman in 1983. Four men had been found dead there, all shot in the head; Lester Bower was convicted in the slayings.

(SHERMAN) HERALD DEMOCRAT



investigators comb through an airplane hangar at a ranch near Sherman in 1983. Four men had been found dead there, all shot in the head; Lester Bower was convicted in the slayings.    SHERMAN HERALD DEMOCRAT

# Condemned:
## Prosecutors to vigorously contest man's innocence claim

**CONTINUED FROM 1B**

"But he didn't do it?"

"No," Pearl said.

"You've got to do something," the sister said.

After a day of struggling with fears for her own life. Pearl did. The next day, she contacted Bower's lawyers from Washington, D.C., told them her story and signed a legal affidavit attesting to it.

Now. 19 years later, information she related is at the heart of an increasingly urgent effort to save Bower's life. On July 22, after 24 years on Texas Death Row, Bower is scheduled to die by lethal injection.

Bower's lawyers say they have identified the four men whom Pearl alleges to be the killers, have documented their long criminal records and have confirmed other key parts of her story. In recent months, a defense investigator has also located another witness, the wife of one of alleged accomplices who said she heard the four men discussing the killings. The names of the new suspects, though known to defense lawyers, have remained sealed by court order.

"I don't want Mr. Bower to die for something that he didn't do," said Pearl, who broke up with her boyfriend shortly after the slayings and remains fearful of him today. Since she signed the affidavit in 1989, her identity has been concealed by court order. "I know in my heart that he didn't do it. I just could not in my conscience sit back and just go. 'Oh well, sorry'

"If he would have gotten life in prison, I can't sit here and honestly say I would have done something different. Life is what. 30 years in the state of Texas? But he got the death penalty, and there's no getting out of that."

This past week, Bower's lawyers filed a 65-page legal motion in Sherman's 15th state District Court detailing the scenario developed after Pearl came forward. The petition asks state Judge Jim Fallon to delay Bower's execution, vacate his conviction and death sentence, and conduct hearings on his innocence claim.

Because of the plodding appellate system in death penalty cases — Bower's appeal languished in federal court alone for 16 years — and the shifting nature of capital punishment law, this is the first opportunity for a Texas court to seriously consider the merits of Bower's innocence claim, his lawyers say. When Pearl first came forward, Texas law precluded state judges from considering

On Oct. 8, 1983, the bodies of Bob Tate, Philip Good and Jerry Brown were found wrapped in rolls of carpet inside the hangar. Ronald Mayes' body was found near the door, indicating that he was shot while trying to flee.    SHERMAN HERALD DEMOCRAT

evidence gathered more than 30 days after a conviction. The so-called 30-day rule is no longer in effect in Texas because federal judges have ruled that such post-conviction claims need to be adjudicated by the state.

"Whatever you think about the benefits of having capital punishment, no one could possibly argue that executing an innocent man is in the interests of the state, or our society," said Anthony Roth, one of Bower's lawyers. "Our interests as lawyers and as people should be that our government, when in doubt, should not go forward with an execution. There is ample evidence to give people reasonable doubt about whether Lester committed these murders. In my view, the evidence is compelling that he didn't."

A Grayson County prosecutor, Karla Hackett, said Wednesday that the state will vigorously contest Bower's innocence claim. Prosecutors also oppose a defense motion to have saliva, hair fibers and cigarette butts from the crime scene tested for DNA. Bower's lawyers hope that the analysis will link one of the men accused by Pearl to the crime.

"There's no way there is actual in- ering another diversion, purchasing evidence against Bower. "DNA is not

going to make all that go away. It's another delaying tactic. It's normal. We expect it. There's four dead men. And all the evidence points straight to Lester Leroy Bower Jr."

The wife of victim Philip Good says she is also convinced the right man was convicted. Marlene Bushard, who has since remarried and is living in Arizona, said her husband would have turned 30 the day after his death. He left an infant son, Curtis Good, who is now 25.

As for Bower, Bushard said, "They're just trying to draw this out." Bushard said she plans to attend Bower's execution.

### Bower's account

Several months before the slayings, Bower, his wife, Sharí, and their two young daughters moved from Colorado to North Texas, where he took a job as a chemical salesman. Lester Bower was a former college football player and devout Baptist with no criminal history. He was also an inveterate hobbyist whose pastimes included target shooting, hunting, backpacking and archery.

In the fall of 1983, he was considering another diversion, purchasing and flying an ultralight aircraft. His wife was opposed.

Shari Bower said in a recent inter-

The Sherman slayings dominated North Texas news in October 1983. In 1989, Star-Telegram coverage of Lester Bower's court proceedings caught the attention of a woman whose testimony is now central to his defense.    STAR-TELEGRAM ARCHIVES

## Timeline

**Oct. 8, 1983:** Bob Tate, Philip Good, Jerry Brown and Ronald Mayes are found fatally shot in a small airplane hangar about five miles east of Sherman.

**Jan. 20, 1984:** Lester Leroy Bower, 36, of Arlington is arrested and charged with four counts of capital murder. An investigation showed that Bower had contacted one of the dead men about purchasing an ultralight aircraft and lied several times to FBI agents investigating the case. Parts of an ultralight belonging to Tate were found in Bower's garage.

**April 27, 1984:** A Grayson County jury in 15th state District Court deliberates less than two hours before finding Bower guilty on all four counts. The next day, he is sentenced to die.

**Jan. 25, 1989:** The Texas Court of Criminal Appeals rejects Bower's first appeal. Six months later, the U.S. Supreme Court declines to review the case.

**October 1989:** Bower's first execution date is delayed by the courts. After reading a Star-Telegram article about the case, a woman contacts Bower's attorneys, saying that Bower is innocent and that she knows the identity of the Sherman killers. The information is included in new court filings.

**January 11, 1990:** A judge in 15th state District Court denies Bower's appeal, saying at the time that precluded consideration of evidence discovered more than 30 days after an original conviction.

**April 1990:** Bower files another appeal in federal court, claiming ineffective assistance of counsel during his trial.

**October 2000:** After an eight-year wait, federal District Judge Richard Schell conducts hearings in the case. Several new witnesses testify for the defense, outlining an alternative scenario for the crimes. Two years later, Schell rejects Bower's appeal, saying federal courts are not the venue for innocence claims. Schell also denies claims that Bower's legal representation was deficient.

**Sept. 18, 2007:** The U.S. Court of Appeals for the Fifth Circuit affirms Schell's decision.

**April 21, 2008:** The U.S. Supreme Court declines to review the case. Bower is scheduled to die on July 22.

**June 24, 2008:** Lawyers for Bower file a 65-page brief in 15th District Court, once again laying out Bower's innocence claim and asking the court to delay Bower's execution and set aside his conviction and death sentence.



**Brown**



**Mayes**



**Good**

view that she and her husband had watched a news program about crashes and injuries associated with ultralights. "I looked at him," she said, "and pretty much said, 'Over my dead body. You played football, weigh 240 pounds and you're talking about [an aircraft with] a lawnmower engine. I don't think so.'"

But Lester Bower secretly went ahead, calling Philip Good after contacting across his name in a magazine ad for the ultralights. Good, in turn, planned to introduce Bower to Bob Tate, who had an ultralight for sale.

On Saturday, Oct. 8, Bower told his wife he planned to spend the day bow hunting. Instead, he drove to Tate's B and B Ranch just outside

Sherman, arriving in mid-afternoon. Bower said he paid $3,000 in cash for the aircraft, then watched Tate and Good disassemble it and strap it to his vehicle.

Bower says he then made the two-hour drive back to Mansfield, where about (an aircraft with) a lawnmower he stashed the aircraft at a shooting range, and arrived at his Arlington home before dark.

At 8:30 p.m. that day, Tate's wife and son discovered the bodies of the four men. Tate, 50, was a self-employed building contractor; Good was a former Sherman police officer who had begun work as a Grayson County deputy sheriff only a few days before. The other victims were Ron-  **Continued on next page**



Karla Hackett, a prosecutor in Grayson County, is confident that Bower is guilty, pointing to his lies to investigators and his phone calls setting up the meeting with one of the victims. "The solid evidence that was there against him doesn't go away," she said.

STAR-TELEGRAM/MAL GRAY

the meeting with one of the victims. "The solid evidence that was there against him doesn't go away," she said.    STAB-TELEGRAM/ALL GRAY

**Continued from previous page**

aid Mayes, 37, a former Sherman police officer, and Jerry Brown, a 52-year-old interior designer.

Tate, Good and Brown were found wrapped in rolls of carpet inside the hangar. Mayes, who was found by the door, was apparently killed as he tried to flee. All of the victims had been shot in the head, killings described at the time as "execution-style."

The killings dominated the news for days to come, and even Shari Bower commented about the massacre to her husband a few days later. But Bower kept his secret from her and did not come forward.

Then in January, FBI agents traced Bower's telephone calls to Good. Bower admitted making the calls. But he lied to agents, denying that he had traveled to Sherman on the day of the murders.

After a subsequent search of Bower's home, where investigators found pieces of the ultralight with Tate's name on it, Bower was arrested. Prosecutors later contended that theft of the aircraft was Bower's motive for the slayings.

In a recent interview on Death Row near Livingston, Bower denied involvement in the killings, as he has from the time of his arrest. After learning of the murders, Bower said, "I realized that I had no idea about what I may have gotten myself into or what I may have literally just missed. If I came forward, what might happen about the safety of my family? Then, of course, I had not exactly been truthful with my wife, so there was a level of embarrassment there, family-wise.

"So then October rolls around, November, December and we get into January. Then all of a sudden they [FBI agents] show up. And once you kind of start a Be. It just kind of grows and it rolls along. It just consumed me. You ask, 'Why would an intelligent person do something like that?' I find that hard to explain."

Bower did not testify during his capital murder trial in April 1984, Grayson County jurors deliberated less that two hours before convicting him on four counts of capital murder, and the next day he was sentenced to die. Bower, now 60, says he can understand how the jury reached its verdict, how his own account could be considered suspect because of the lies he told to investigators.

But the new witness has no reason to lie, he says. .

"OK, don't believe me," Bower said recently in prison. "Don't believe anything I say. I'm not the one who has come forward and finally told exactly what happened out there."

**'A dope deal that went bad'**

Pearl is now 48 and raises two grandchildren because her own daughter was murdered several years ago. In the recent interview at her home, she recalled another time in her life, the summer day in 1983 at Lake Texoma when she met a friend met the men known as Lynn and Rocky. She said they were two handsome guys driving a black sports car.

In the whirlwind romance that followed, Pearl said, she quickly moved into Lynn's home in southern Oklahoma. On the weekend of the Sherman murders, she left to visit her mother in Hillsboro, and was surprised to find Lynn sitting outside sometime after midnight on Oct. 9.

Her first thought was "he missed me so much he had come all the way down here to see me," Pearl said. "That's how stupid I was."

Lynn was unusually agitated, insisting that Pearl immediately return with him to Oklahoma, she said. He drove until the couple passed through Dallas. As they neared Sherman, Lynn pulled off the road and told Pearl to drive, and when she took the wheel, he stretched out and hid in the back seat.

"He told me to drive straight through Sherman, don't stop, and don't do any-



Officers take Lester Bower, 36, to the Grayson County Jail on Jan. 20, 1984, after his arrest in Arlington. He was soon convicted on four counts of capital murder.    (STAR-TELEGRAM/ALL GRAY)

thing to get us stopped," Pearl recalled. "I was like, 'Why, what did you do?'

"He said they had a 'dope deal that went bad and they had to kill four people. I asked him, 'Who killed four people?' He said, 'Me and Ches and Rocky.' I assumed at the time that Bear was there, too, and of course he was."

Pearl's story, naming the four, is also recounted in the defense motion that was filed last week.

Still, Pearl said, she was skeptical until a few days later, when for the first time she met Ches, who was the head of a drug operation that involved Lynn and the others. Pearl said she overheard Ches and Lynn talking about murders.

"[Ches' girlfriend] and I were in the kitchen, and Ches and Lynn were in the living room and they were pretty drunk," Pearl recalled. "They had their guns out, talking about it, laughing about it. Ches thought everything was funny. He said something about, 'Did you see that guy's eyes when he opened the door?' or 'Did you see that guy's face when I shot him?'

"I kept asking [the girlfriend], 'Did you hear that?' She kept telling me, no, and that I needed to not hear it, either."

In the weeks to come, Ches also acknowledged the murders to Pearl, telling her that one of the victims "had been a cop and the killings had happened because things had gone wrong," according to the defense motion filed last week.

Pearl also said that in the weeks following the murders, Lynn was agitated and had trouble sleeping. After one nightmare he told her that he saw one of the victim's eyes staring at him, a big tin building and shots reverberating inside it. Yet Pearl said she still wasn't certain that any killings in Sherman had actually occurred, because she did not read newspapers or listen to radio or television news at the time.

"There was a big part of me who still wanted to believe it was all dopers talking, bragging," Pearl said last week. "But then there was another part of me that thought, 'Well, maybe they did.' But I wasn't going to stick around to find out. I called my mom and I told her that I needed money, that I needed to get out of there right then."

For the next five years, she says she tried to put her time with Lynn out of her mind. Then came the October morning when she read about the Sherman massacre. Until then, she said she had assumed that Lynn, Ches and the rest would have been arrested if they were guilty of the killings. For the rest of that Sunday, Pearl said she anguished over whether to come forward.

"Was my fear of Ches and Lynn bigger than my fear of not doing the right thing?" Pearl said. "I wanted to do the right thing.

but not at the expense of my children. I just had to know that I could protect them and do the right thing."

**Accusations in court**

Eleven years after signing her affidavit, Pearl, as Witness Number One, told the same story in an appellate hearing in federal court, where Bower was contending that he had not received a sufficient legal defense.

At that same hearing in Sherman, another defense witness testified that back in 1984, after a Narcotics Anonymous meeting, Pearl had told him about Lynn's participation in the murders. And a third witness said that about 5:30 on the evening of the massacre, she saw several men standing in front of the Tate hangar. There was also testimony from a man who said he had worked as a drug courier for Tate, one of the victims.

In the hearing, the men accused by Pearl were remembered by a former Oklahoma sheriff, Arnold Isenberg. At the time of the killings, Isenberg was a sheriff's deputy in southern Oklahoma, and recalled that the men were under investigation for manufacturing and selling methamphetamine. Each had a dangerous reputation and "went underground for a while" after the killings in Sherman, Isenberg said. Two years later, federal judge Richard Schell denied Bower's appeal, saying the testimony did not prove Bower's constitutional claim that his lawyer didn't adequately defend him

Bower's current lawyers, who took the case after his conviction, say authorities have only minimally investigated the alternative suspects. No state or federal investigator has contacted Pearl about her account. Current prosecutors still contend that the men who committed the murders is the one who will die next month.

The strength of the case against this man, the lies he told the FBI investigators," said Hackert, the Grayson County prosecutor. "The fact that he made phone calls setting up the meeting with one of the victims; that the meeting happened at the time of the murders and portions of the aircraft stolen from the crime scene found at his residence, as well as a tremendous amount of other circumstantial evidence and eyewitnesses. With the strength of all that ... the solid evidence that was there against him doesn't go away just because someone said something in an affidavit."

In her home last week, Pearl said she has reason to believe differently. If Lester Bower is executed next month, she said, "I would feel really sad for the state of Texas."

TIM MADRIGAM, 817-390-7544

A66

# Exhibit H

*(Download the WordPerfect format here.)*

Dinzel Earl NORMAN v. STATE of Arkansas

CR 95-361

\_\_\_ S.W.2d \_\_\_

Supreme Court of Arkansas

Opinion delivered October 7, 1996

1.   **Words & phrases -- "premises" defined.** -- The word "premises" is defined as "a specified piece or tract of land with the structures on it"; additionally, the term "premises," as used in search warrants, "includes land, buildings, and appurtenances thereto."

2.   **Motions -- motion to suppress -- standard of review.** -- In reviewing a trial judge's ruling on a motion to suppress, the appellate court makes an independent determination based upon the totality of the circumstances, viewing the evidence in the light most favorable to the appellee, and reverses only if the ruling is clearly against the preponderance of the evidence.

3.   **Search & seizure -- contents of search warrant -- requirements.** -- Requirements for the contents of search warrants are found in A.R.Cr.P. Rule 13.2(b), which provides in part that "[t]he warrant shall state, or describe with particularity ... the location and designation of the places to be searched"; A.R.Cr.P. Rule 16.2(e) provides in part that "[a] motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based wassubstantial, or if otherwise required by the Constitution of the United States or of this state."

4.   **Search & seizure -- search warrant -- highly technical attacks not favored -- tested in commonsense fashion.** -- Highly technical attacks on search warrants are not favored because such attacks would only serve to discourage police officers from obtaining them; such documents are normally drafted by nonlawyers in the haste of a criminal investigation and are to be tested in a commonsense and realistic fashion, and not with a grudging or negative attitude.

5.   **Search & seizure -- search warrant -- particularity requirement -- test for adequacy of description of place to be searched.** -- The requirement of particularity in describing the location and place to be searched is to avoid the risk of the wrong property being searched or seized; the test for determining the adequacy of the description of the place to be searched under a warrant is whether it enables the executing officer to locate and identify the premises with reasonable effort and whether there is any likelihood that another place might be mistakenly searched; the risk of misidentification is minimized when the same law-enforcement officer who appliesfor the warrant executes it.

6.   **Search & seizure -- special agent's explanation of discrepancy between search warrant and affidavit was reasonable -- face of warrant included "premises" -- search of outbuildings and land authorized.** -- Where the special agent who prepared both the affidavit and the search warrant stated that the reason he did not include the language "all buildings, trailers, outbuildings and vehicles," found in the affidavit, in the body of the search warrant was that he believed the affidavit was incorporated into

the warrant, the appellate court concluded that his explanation of the discrepancy between the search warrant and the affidavit was reasonable and that the search did not exceed that authorized by the circuit judge, who based his issuance of the warrant on the affidavit submitted by the agent; the court was also persuaded by the fact that the face of the warrant included the "premises" of appellant's property and that a common interpretation of the term, combined with the language found in the affidavit, was sufficient to authorize the search of the outbuildings and the land itself; the court affirmed the judgment of conviction.

Appeal from Newton Circuit Court, Fourteenth Judicial District; Robert McCorkindale, II, Judge; affirmed.

The Law Offices of Greenhaw & Greenhaw, by: John F. Greenhaw, for appellant.
Winston Bryant, Att'y Gen., by: Gil Dudley, Asst. Att'y Gen., for appellee.

### Donald L. Corbin, Justice.

Appellant, Dinzel Earl Norman, was convicted by a jury of conspiracy to manufacture methamphetamine and conspiracy to manufacture marijuana and was sentenced by the Newton County Circuit Court to a combined term of forty years in the Arkansas Department of Correction. Norman appeals the circuit court's judgment of conviction, and this court has jurisdiction of the appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2). The sole issue on appeal is whether the trial court erred in denying Norman's motion to suppress physical evidence recovered from his residence pursuant to a search warrant. We find no error and affirm.

In June 1993, Chesley Gordon, a confidential informant, contacted Investigator Lance King, of the Arkansas State Police. Gordon stated that he had made an arrangement with Norman to cook methamphetamine on Norman's property in Newton County, Arkansas. Subsequently, officers of the Arkansas State Police and the Drug Enforcement Agency directed Gordon to go to Norman's residence andbegin the process of cooking the methamphetamine and notify them after the process had begun so that a search warrant could be obtained for Norman's property. On June 25, 1993, Special Agent Steve Lowry of the Drug Enforcement Agency prepared an affidavit for search warrant on Norman's property and presented it to the circuit judge who found that reasonable cause existed and issued a search warrant. After the search warrant had been issued, Gordon notified the officers that Norman would be arriving back at his residence that night. As a result of that information, Special Agent Lowry went back to the same circuit judge and obtained a new search warrant containing a nighttime search provision. The search warrant was executed on Norman's property that night with the assistance of various local law enforcement officers. Officers seized numerous items of contraband including a clandestine methamphetamine lab found in a small camper trailer and sixty-five marijuana plants found growing on Norman's property.

Norman moved to suppress the admission of the methamphetamine lab and marijuana plants. During the suppression hearing, Norman's counsel argued that the trial court could not look beyond the face of the warrant itself to determine whether the officers' search exceeded the scope provided by the warrant. Counsel further asserted that because the warrant only authorized a search of the premises of the residence, evidence of the methamphetamine lab found in the small camper trailer should be excluded. With respect to the marijuana plants, counsel challenged the use of the evidence against him on the grounds that the land on which the plants weregrowing was not specifically described in the warrant. Alternatively, counsel argued that there was no evidence to show that the property on which they were located belonged to him. On that issue, the trial court ruled that if it was Norman's position that the land did not belong to him, then such search and resulting seizure of the items was not in violation of the Fourth Amendment based on the "open fields" doctrine.

On appeal, Norman argues that the evidence found in the small camper trailer as well as the marijuana plants should have been suppressed by the trial court because the scope of the search exceeded that provided for on the face of the search warrant. In support of his argument, Norman relies on Rule 13.3

A69

(c) of the Arkansas Rules of Criminal Procedure which provides in part that, "[t]he scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein."

The face of the search warrant identified the place to be searched as:

the person of Dinzel Norman and premises known and described as

A 20' x 24' Airstream trailer, silver in color, with the axle out from under it. Airstream has the tongue intact. There is a 10' addition facing the tongue on the left, with a window on each end. The residence near Wayton, Arkansas.

Norman submits that the description of the property on the face of the search warrant was specific as to the scope of the search authorized and that, because the warrant did notparticularly describe the small camper trailer, the shed, or the grounds of the property as places to be searched, any evidence found in those locations should have been suppressed. The State argues that any failure to list those places on the face of the search warrant was cured by their being described in the accompanying affidavit, which requests a search warrant for "the property, as well as all buildings, trailers, outbuildings and vehicles." In the alternative, the State argues that the areas of the shed and camper trailer were encompassed within the definition of "premises" as used on the face of the search warrant. The State relies on definitions found in legal dictionaries and treatises.

The State is correct in its assertion that the definition of the term "premises" includes both the land of the property and the buildings and structures thereon. Professor LaFave stated in his treatise on the Fourth Amendment:

A search made under authority of a search warrant may extend to the entire area covered by the warrant's description. For example, if the warrant authorizes search of a ranch, the entire acreage of the specified ranch may be searched. Similarly, if the warrant authorizes a search of "premises" at a certain described geographical location, buildings standing on that land may be searched. This means that if the place to be searched is identified by street number, the search is not limited to the dwelling house, but may also extend to the garage and other structures deemed to be within the curtilage and the yard within the curtilage.

Wayne R. LaFave, *Search and Seizure* § 4.10(a) (3d ed. 1996) (footnotes omitted).

Webster defines "premises" as "a specified piece or tract of land with the structures on it[.]" *Webster's Third New International Dictionary* 1789 (1981). Additionally, the term"premises," as used in search warrants, "includes land, buildings, and appurtenances thereto." *Black's Law Dictionary* 1181 (6th ed. 1990).

In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, and we reverse only if the ruling is clearly against the preponderance of the evidence. *State v. Mosley*, 313 Ark. 616, 856 S.W.2d 623 (1993) (citing *Illinois v. Gates*, 462 U.S. 213 (1983), and *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991)). We view the evidence in the light most favorable to the appellee, and we reverse only if the ruling is clearly against the preponderance of the evidence. *Beshears v. State*, 320 Ark. 573, 898 S.W.2d 49 (1995); *Mosley*, 313 Ark. 616, 856 S.W.2d 623.

Requirements for the contents of search warrants are found in Rule 13.2(b) of the Arkansas Rules of Criminal Procedure, which provides in part that, "[t]he warrant shall state, or describe with particularity . . the location and designation of the places to be searched[.]" Rule 16.2(e) provides in part that, "[a] motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state."

This court has previously held that highly technical attacks on search warrants are not favored, as such attacks would only serve to discourage police officers from obtaining them. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987). In *Heard v. State*, 272Ark. 140, 612 S.W.2d 312 (1981), this court concluded that, "[s]uch documents are normally drafted by nonlawyers in the haste of a criminal investigation and are to be tested in a commonsense and realistic fashion, not with a grudging or

negative attitude." *Id.* at 143, 612 S.W.2d at 315 (citing *Baxter v. State*, 262 Ark. 303, 556 S.W.2d 428 (1977)).

In support of our holding in *Watson*, we quoted the United States Supreme Court's language in *United States v. Ventresca*, 380 U.S. 102, 108 (1965):

These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Id.* at 367-68, 724 S.W.2d at 483.

This court has previously had occasion to pass upon cases similar to this one. In *Baxter*, 262 Ark. 303, 556 S.W.2d 428, this court upheld the validity of a search in spite of Baxter's argument that the property to be searched was not described with particularity on the face of the warrant. The search warrant described the place to be searched as "the house occupied by Faron Baxter." This court concluded that even though the language in the search warrant was vague, the affidavit attached to the warrant described the location with particularity, and thus, the search of Baxter's home was proper.

In *Beshears*, 320 Ark. 573, 898 S.W.2d 49, a case more factually similar to the one at hand, the appellant argued that because the search warrant obtained by the officers was limited to a search of his residence, the search of his business property was unlawful. The warrant itself only authorized officers to search Beshears's residence, although the affidavit used to obtain the warrant included "'all offices, shop buildings, grain bins, control rooms" and "other equipment on property known as the Beshears's property.'" *Id.* at 579, 898 S.W.2d at 52. Beshears argued that because these areas were omitted from the face of the search warrant, the search exceeded the authority granted by the warrant. This court affirmed the trial court's ruling, concluding that: We point out that the requirement of particularity of describing the location and place to be searched is to avoid the risk of the wrong property being searched or seized. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987). This court stated that the test for determining the adequacy of the description of the place to be searched under a warrant is whether it enables the executing officer to locate and identify the premises with reasonable effort and whether there is any likelihood that another place might be mistakenly searched. *Costner v. State*, 318 Ark. 806, 887 S.W.2d 533 (1994). The risk of misidentification is minimized when the same law enforcement officer who applies for the warrant executes it. *Id.* And in determining whether a particular description is sufficient under this test, courts must use common sense and not subject the description to hypercritical review. *Watson*, 291 Ark. 358, 724 S.W.2d 478.

*Id.* at 579-80, 898 S.W.2d at 52.

In the case at hand, Special Agent Lowry testified that he prepared both the affidavit and the search warrant and that he,along with other law enforcement officers, served the warrant and conducted the search of Norman's property. Lowry stated that the reason he did not include the language of "all buildings, trailers, outbuildings and vehicles," found in the affidavit, in the body of the search warrant was that he believed the affidavit was incorporated into the warrant. Lowry stated that the affidavit was submitted to the issuing judge along with the search warrant for the judge's consideration. Additionally, Lowry stated that although he prepared both the search warrant and the accompanying affidavit, he merely dictated the search warrant and an unknown employee of the Arkansas State Police typed it from the dictation. We conclude that Lowry's explanation of the discrepancy between the search warrant and the affidavit was reasonable and that the search did not exceed that authorized by the circuit judge

who based his issuance of the warrant on the affidavit submitted by the agent. We are also persuaded by the fact that the face of the warrant did include the "premises" of Norman's property, and that a common interpretation of that term combined with the language found in the affidavit was sufficient to authorize the search of the outbuildings and the land itself. We affirm the judgment of conviction.

CORBIN, J. - 5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANTHONY C. ROTH,**                                    )
    **on behalf of Lester L. Bower, Jr.,**           )
        Plaintiff,                              )   **Civil Action No. 08-00822 (ESH)**
    **v.**                                          )
**UNITED STATES DEPARTMENT OF JUSTICE,** )
        Defendant.                              )

## DECLARATION OF ANTHONY C. ROTH

I, Anthony C. Roth, declare as follows:

1. I am an adult United States citizen and a partner with Morgan, Lewis & Bockius LLP. My business address is 1111 Pennsylvania Avenue, N.W., Washington, D.C. 20004. I am admitted to practice law in the District of Columbia as well as in Michigan and am a member of this Court's bar. I have personal knowledge regarding the facts contained in this declaration.

2. I am one of the counsel to Lester L. Bower, Jr., who is a death row inmate in Texas. I have been one of Mr. Bower's Morgan Lewis lawyers since 1989 when Morgan Lewis began its pro bono representation of Mr. Bower. I also am the plaintiff in the above-captioned case, which I filed on behalf of Mr. Bower.

3. In 1989, my colleague, Grace Speights, sent the Federal Bureau of Investigation ("FBI") a Freedom of Information Act ("FOIA") request on behalf of Mr. Bower (hereinafter, the "1989 FOIA requests"). A copy of these request(s) are attached hereto as Exhibit 1.

4. In 1990, the FBI produced approximately 850 pages of responsive materials in response to the 1989 FOIA requests. Each document that the FBI produced in its 1990 FOIA response bears a reference number in the lower right hand corner of the document.

DB1/62755192.1

A73

5. I reviewed the FBI's 1990 FOIA response in 1990 and have reviewed it several times since then. Of the approximately 850 pages in the 1990 FOIA response, many pages of the production were so extensively redacted that it was impossible to ascertain what those documents concerned. The FBI's asserted reason for redacting information was noted in the margins beside the redactions.

6. With the responsive documents, the 1990 FOIA response included completed "Federal Bureau of Investigation FOIPA Deleted Page Information Sheets" (hereinafter, the "4-750 Forms"). I came to understand that when the FBI withheld an entire documents responsive to the 1989 FOIA request, it completed a 4-750 Forms listing the reference number of the documents being withheld, the number of pages in the documents, and the FOIA exemption that is the basis for the FBI's withholding. My review of the 4-750 Forms in the 1990 FOIA response revealed that the FBI was withholding in their entirety more than 1,000 pages of materials responsive to the 1989 FOIA requests.

7. In 1999, on behalf of Mr. Bower, I submitted FOIA requests to the same FBI offices that Ms. Speights has served with FOIA requests a decade earlier (hereinafter, the "1999 FOIA requests"). Copies of these FOIA requests are attached hereto as Exhibit 2.

8. In early 2000, the United States District Court for the Eastern District of Texas, in which Mr. Bower's federal habeas petition was then pending, granted Mr. Bower's request for an evidentiary hearing on his ineffective assistance of counsel claim. In April 2000, we sent the FBI a letter requesting an expedited response to the 1999 requests so that any additional materials beyond those produced in response to the 1989 FOIA requests could be used in the evidentiary hearing. We did not receive a response to this request prior to Mr. Bower's evidentiary hearing, and thus Mr. Bower was forced to conduct the evidentiary hearing, at which

DB1 62755192 1

2

**A74**

a former FBI agent and a federal prosecutor testified, with only the extensively-redacted 1990 FOIA response.

9. In 2001, the FBI responded to the 1999 FOIA requests (hereinafter, the "2001 FOIA response"). I reviewed the materials produced by the FBI in its 2001 FOIA response and compared them to the FBI's 1990 FOIA response. The 2001 FOIA response included approximately 1,500 pages of responsive materials. Even though the 1989 FOIA requests and the 1999 FOIA requests were essentially the same, the FBI's 2001 document production included many of the documents that the FBI previously had withheld from the 1990 FOIA response. I was able to determine this by comparing the reference numbers on the 4-750 Forms in the 1990 FOIA response with the same reference numbers on the documents in the 2001 FOIA response. The production of previously withheld documents largely accounts for the difference in the number of pages in the 1990 FOIA response (approximately 850 pages) and in the 2001 FOIA response (approximately 1,500 pages). Additionally, many of the significantly-redacted pages that had been produced in the 1990 FOIA response were produced in the 2001 FOIA response without any redactions or with significantly less redactions.

10. Even though the FBI released additional documents in 2001, it still withheld hundreds of pages of documents in their entirety and extensively redacted many documents that it produced.

11. Attached hereto as Exhibit 3 are true and accurate copies of certain documents released by the FBI in 1990. Morgan Lewis assigned the "FBI xxxxx" control numbers to these documents.

12. Attached hereto as Exhibit 4 are true and accurate copies of certain documents released by the FBI in 2001. Morgan Lewis assigned the "FBI xxxxx" control numbers to these documents.

13. In January 2008, I submitted FOIA requests to the same federal agencies that received the 1999 FOIA requests. After this litigation was filed, the FBI agreed to reprocess a subset of the records from the 2001 FOIA response and to reconsider its 2001 FOIA Response withholding decisions. On or about July 22, 2008, the FBI provided a copy of the reprocessed documents (hereinafter, the "July 2008 FOIA response"). The July 2008 FOIA response included four pages of documents that had been withheld from prior FOIA releases to me or Ms. Speights. Otherwise, the redactions and withholdings appeared to be the same as those in the 2001 FOIA response.

14. Attached hereto as Exhibit 5 are true and accurate copies of certain documents released by the FBI in the July 2008 FOIA response. Morgan Lewis assigned the "FBI xxxxx" control numbers to these documents.

15. Also as part of this litigation, the FBI reprocessed the entire January 2008 FOIA request, and released documents on or about October 10, 2008 (hereinafter, the "October 2008 FOIA response"). The FBI continued to withhold in their entirety approximately 400 non-duplicate pages of information. Although the October 2008 FOIA response included some documents that were previously withheld in response to prior FOIA requests, and also included some documents that were less redacted than in the previous FOIA responses, the 2008 disclosures largely tracked the 2001 FOIA response.

DB1/62755192.1                                   4

**A76**

16. Attached hereto as Exhibit 6 are true and accurate copies of certain documents

released by the FBI in the October 2008 FOIA response. Morgan Lewis assigned the "FBI

xxxxx" control numbers to these documents.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 3rd day of April, 2009, at Washington, D.C.

Anthony C. Roth

# Roth Declaration

# Exhibit 1

## MORGAN, LEWIS & BOCKIUS

ADELPHIA
L ANGELES
MIAMI
HARRISBURG

COUNSELORS AT LAW
1800 M STREET, N. W.
WASHINGTON, D. C. 20036
TELEPHONE:(202) 467-7000
CABLE ADDRESS: MORLEBOCK
TELEX: 89-627
TELEFAX:(202) 467-7176

WASHINGTON
NEW YORK
SAN DIEGO
LONDON

GRACE E. SPEIGHTS
DIAL DIRECT (202) 467-7189

August 29, 1989

Federal Bureau of Investigtion
Freedom of Information Officer
1801 N. Lamar
Suite 300
Dallas, TX   75202

ATTN:    Udo Specht

Dear Sir or Madam:

Pursuant the Freedom of Information Act, 5 U.S.C. § 552,
I hereby request any and all records in your files pertaining
to the following individuals or entities:

1.   Lester Leroy Bower, Jr.;

2.   Bob Tate or Bobby Glen Tate;

3.   Phillip Boyce Good;

4.   Ronald Howard Mayes;

5.   Jerry Mac Brown;

6.   Grayson County Sheriff's Department and
     anyone associated with it; and

7.   Jerry Buckner.

If for any reason you determine that some portions of
the requesed information are exempt from disclosure under the
FOIA, please delete such allegedly exempt material, inform me
of the basis of the claims of exemption, and furnish copies
of those portions of the document that are not exempt.    My
consent to such deletion at this time is designed to
facilitate your prompt response and in no way waives my right
to appeal any determination you may make considering the

MORGAN, LEWIS & BOCKIUS

Freedom of Information Officer                          Page 2
August 29, 1989

applicability of any FOIA exemptions to the requested
documents and information.

    I request that you provide me with exact copies or a
complete and accurate account of the information requested.
I agree to pay reasonable search and reproduction costs.

    If you have any questions about this request or require
further information, please contact me at 467-7189.

                              Sincerely,

                              Grace E. Speights

                              Grace E. Speights

### MORGAN, LEWIS & BOCKIUS

COUNSELORS AT LAW
1800 M STREET, N. W.
WASHINGTON, D. C. 20036
TELEPHONE:(202) 467-7000
CABLE ADDRESS: MORLEBOCK
TELEX:89-627
TELEFAX:(202) 467-7176

LADELPHIA
S ANGELES
MIAMI
HARRISBURG

WASHINGTON
NEW YORK
SAN DIEGO
LONDON

GRACE E. SPEIGHTS
DIAL DIRECT (202) 467-7189

August 18, 1989

Freedom of Information Officer
Federal Bureau of Investigation
9th Street & Pennsylvania Avenue, N.W.
Washington, D.C.   29535

Dear Sir or Madam:

Pursuant the Freedom of Information Act, 5 U.S.C. § 552,
I hereby request any and all records in your files pertaining
to the following individuals or entities:

1.   Lester Leroy Bower, Jr.;

2.   Bob Tate or Bobby Glen Tate;

3.   Phillip Boyce Good;

4.   Ronald Howard Mayes;

5.   Jerry Mac Brown;

6.   Grayson County Sheriff's Department and
     anyone associated with it; and

7.   Jerry Buckner.

If for any reason you determine that some portions of
the requesed information are exempt from disclosure under the
FOIA, please delete such allegedly exempt material, inform me
of the basis of the claims of exemption, and furnish copies
of those portions of the document that are not exempt.   My
consent to such deletion at this time is designed to
facilitate your prompt response and in no way waives my right
to appeal any determination you may make considering the
applicability of any FOIA exemptions to the requested
documents and information.

A81

MORGAN, LEWIS & BOCKIUS

Freedom of Information Officer                         Page 2
August 18, 1989


        I request that you provide me with exact copies or a
complete and accurate account of the information requested.
I agree to pay reasonable search and reproduction costs.

        If you have any questions about this request or require
further information, please contact me at 467-7189.


                              Sincerely,

                              Grace E. Speights

                              Grace E. Speights

# Roth Declaration

# Exhibit 2

1800 M Street, N W
Washington, D.C. 20036-5869
202-467-7000
Fax: 202-467-7176

Morgan, Lewis
& Bockius LLP
COUNSELORS AT LAW

**Anthony C. Roth**
202-467-7188

November 12, 1999

Freedom of Information Officer
Department of Justice
Federal Bureau of Investigation
J. Edgar Hoover Building
Room 6958
Washington, D.C. 20535

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I hereby request any and all
records in your files pertaining to the following individuals or entities:

1. Lester Leroy Bower. Jr.
   Date of Birth:     47
   Kansas City, MO;

Redacted per
Local Rule LCVR5(f)

2. Bob Tate or Bobby Glen Tate
   Date of Birth: 03/13/31
   Date of Death: 10/08/83;

3. Phillip Boyce Good
   Date of Birth: 10/09/53
   Date of Death: 10/08/83;

4. Ronald Howard Mayes
   Date of Birth: 02/04/46
   Date of Death: 10/08/83;

4A/137577 1

Philadelphia  Washington  New York  Los Angeles  Miami  Harrisburg  Pittsburgh  Princeton
              London  Brussels  Frankfurt  Tokyo  Singapore  Jakarta

A84

Morgan, Lewis
& Bockius ᴸᴸᴾ

Freedom of Information Officer
November 12, 1999
Page 2

> 5. Jerry Mac Brown
>    Date of Birth: 05/20/32
>    Date of Death: 10/08/83
>
> 6. Grayson County Sheriff's Department and anyone associated with
>    it;.
>
> 7. Jerry Buckner;
>
> 8. The investigation of the October 8, 1983 murders of Bobby (Bob)
>    Tate, Phillip Boyce Good, Ronald Howard Mayes, and Jerry Mac
>    Brown in Sherman, Texas;
>
> 9. Brett ("Bear") Leckie;
>
> 10. Chestley ("Ches") Galen Gordon        **Redacted per**
>     Social Security Number                **Local Rule LCVR5(f)**
>     D.O.B.    ₹954
>
> 11. Lynn Langford
>     Social Security Number            and
>
> 12. Robert ("Rocky") T. Ford
>     Social Security Number·

If for any reason you determine that some portions of the requested information are exempt
from disclosure under the FOIA, please delete such allegedly exempt material, inform me of
the basis of the claims of exemption, and furnish copies of those portions of the document that
are not exempt. My consent to such deletion at this time is designed to facilitate your prompt
response and in no way waives my right to appeal any determination you may make
considering the applicability of any FOIA exemptions to the requested documents and
information.

I request that you provide me with exact copies or a complete and accurate account of the
information requested. I agree to pay reasonable search and reproduction costs.

Morgan, Lewis
& Bockius LLP

Freedom of Information Officer
November 12, 1999
Page 3

If you have any questions about this request or require further information, please contact me
at 202-467-7188.

Sincerely,

Anthony C. Roth

ACR/jma

1800 M Street, N.W.

Washington, D.C. 20036-5869

202-467-7000

Fax: 202-467-7176

Morgan, Lewis
& Bockius LLP

COUNSELORS AT LAW

**Anthony C. Roth**
202-467-7188

November 12, 1999

Freedom of Information Officer
1 Grand Center
1800 Teague Drive
Suite 506
Sherman, TX 75090

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I hereby request any and all
records in your files pertaining to the following individuals or entities:

> 1. Lester Leroy Bower, Jr.   Redacted per
>    Date of Birth:   '47   Local Rule LCVR5(f)
>    Kansas City, MO;
>
> 2. Bob Tate or Bobby Glen Tate
>    Date of Birth: 03/13/31
>    Date of Death: 10/08/83;
>
> 3. Phillip Boyce Good
>    Date of Birth: 10/09/53
>    Date of Death: 10/08/83;
>
> 4. Ronald Howard Mayes
>    Date of Birth: 02/04/46
>    Date of Death: 10/08/83;

1-WA/1317575.1

Morgan, Lewis
& Bockius ᴸᴸᴾ

Freedom of Information Officer
November 12, 1999
Page 2

      5. Jerry Mac Brown
         Date of Birth: 05/20/32
         Date of Death: 10/08/83

      6. Grayson County Sheriff's Department and anyone associated with
         it;

      7. Jerry Buckner;

      8. The investigation of the October 8, 1983 murders of Bobby (Bob)
         Tate, Phillip Boyce Good, Ronald Howard Mayes, and Jerry Mac
         Brown in Sherman, Texas;

      9. Brett ("Bear") Leckie;

      10. Chestley ("Ches") Galen Gordon        Redacted per
          Social Security Number            Local Rule LCVR5(f)
          D.O.B. 3/6/1954

      11. Lynn Langford
          Social Security Number        and

      12. Robert ("Rocky") T. Ford
          Social Security Number

If for any reason you determine that some portions of the requested information are exempt
from disclosure under the FOIA, please delete such allegedly exempt material, inform me of
the basis of the claims of exemption, and furnish copies of those portions of the document that
are not exempt. My consent to such deletion at this time is designed to facilitate your prompt
response and in no way waives my right to appeal any determination you may make
considering the applicability of any FOIA exemptions to the requested documents and
information.

I request that you provide me with exact copies or a complete and accurate account of the
information requested. I agree to pay reasonable search and reproduction costs.

1-LA/1317575.1

A88

Morgan, Lewis
& Bockius LLP

Freedom of Information Officer
November 12, 1999
Page 3

If you have any questions about this request or require further information, please contact me
at 202-467-7188.

Sincerely,

Anthony C. Roth

Anthony C. Roth

ACR/jma

1-WA/1317575 1

1800 M Street, N.W.
Washington, D.C. 20036-5869
202-467-7000
Fax: 202-467-7176

Morgan, Lewis
& Bockius LLP
COUNSELORS AT LAW

**Anthony C. Roth**
202-467-7188

November 12, 1999

Freedom of Information Officer
Federal Bureau of Investigation
Room 300
1801 North Lamar
Dallas, TX  75202

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I hereby request any and all
records in your files pertaining to the following individuals or entities:

1. Lester Leroy Bower, Jr.
   Date of Birth:
   Kansas City, MO;

   Redacted per
   Local Rule LCVR5(f)

2. Bob Tate or Bobby Glen Tate
   Date of Birth:  03/13/31
   Date of Death:  10/08/83;

3. Phillip Boyce Good
   Date of Birth:  10/09/53
   Date of Death:  10/08/83;

4. Ronald Howard Mayes
   Date of Birth:  02/04/46
   Date of Death:  10/08/83;

1-WA 1317286.1

Philadelphia   Washington   New York   Los Angeles   Miami   Harrisburg   Pittsburgh   Princeton
London   Brussels   Frankfurt   Tokyo   Singapore   Jakarta

Morgan, Lewis
& Bockius LLP

Freedom of Information Officer
November 12, 1999
Page 2

5. Jerry Mac Brown
   Date of Birth: 05/20/32
   Date of Death: 10/08/83

6. Grayson County Sheriff's Department and anyone associated with
   it;

7. Jerry Buckner;

8. The investigation of the October 8, 1983 murders of Bobby (Bob)
   Tate, Phillip Boyce Good, Ronald Howard Mayes, and Jerry Mac
   Brown in Sherman, Texas;

9. Brett ("Bear") Leckie;

10. Chestley ("Ches") Galen Gordon              Redacted per
    Social Security Number                       Local Rule LCVR5(f)
    D.O.B. 3/6/1954

11. Lynn Langford
    Social Security Number              and

12. Robert ("Rocky") T. Ford
    Social Security Number

If for any reason you determine that some portions of the requested information are exempt
from disclosure under the FOIA, please delete such allegedly exempt material, inform me of
the basis of the claims of exemption, and furnish copies of those portions of the document that
are not exempt. My consent to such deletion at this time is designed to facilitate your prompt
response and in no way waives my right to appeal any determination you may make
considering the applicability of any FOIA exemptions to the requested documents and
information.

I request that you provide me with exact copies or a complete and accurate account of the
information requested. I agree to pay reasonable search and reproduction costs.

1-LA 1317286.1

A91

Morgan, Lewis
& Bockius ᴌᴌᴘ

Freedom of Information Officer
November 12, 1999
Page 3

If you have any questions about this request or require further information, please contact me at 202-467-7188.

Sincerely,

Anthony C. Roth

ACR/jma

1-◄ 131/286 1

A92

# Roth Declaration

# Exhibit 3

FD-36 (Rev. 5-22-78)

```
                                    FBI

TRANSMIT VIA:          PRECEDENCE:        CLASSIFICATION:
☐ Teletype             ☐ Immediate        ☐ TOP SECRET
☐ Facsimile            ☐ Priority         ☐ SECRET
☒ —AIRTEL—             ☐ Routine          ☐ CONFIDENTIAL
                                          ☐ UNCLAS E F T O
                                          ☐ UNCLAS
                                          Date ____12/12/83____
```

TO:     DIRECTOR, FBI

FROM:   SAC, DALLAS (179B-97) (P)

SUBJECT:  CHANGED
          GANGMURS;
          UNSUBS;
          JERRY MAC BROWN (DECEASED) - VICTIM;
          PHILLIP BOYCE GOOD (DECEASED) - VICTIM;
          RONALD HOWARD MAYES (DECEASED) - VICTIM;
          BOBBY GLEN TATE (DECEASED) - VICTIM
          ECT; CR; ITSMV

          OO:  DALLAS

          Title  has  been  changed  to  add  GANGMURS.   Title
previously  carried  as  "UNSUBS;  JERRY MAC  BROWN  (DECEASED)  -
VICTIM; ET AL; ETC; CR; ITSMV; OO:  DALLAS."

          Re  Dallas teletype to the Bureau dated  11/29/83,  and
Bureau telephone call to Sherman RA, 12/2/83.

          For  information  of  receiving offices  not  receiving
prior communication re captioned matter, the following background
information is being set forth:

          On 10/8/83,  victims Jerry Mac Brown,  white male, dob,
5/20/32;  Phillip Boyce Good,  white male,  dob  10/9/53;  Ronald
Howard Mayes, white male, dob 2/4/46; and, Bobby Glen Tate, white
male, dob 3/13/32, all ultralight plane enthusiast, were slained,
execution  style,  inside a makeshift airplane hangar located  on
the premises of the B & B Ranch owned by victim Tate.  This ranch

```
2 - Bureau              2 - New Orleans
2 - Albuquerque         4 - Oklahoma City
2 - Baltimore           3 - Phoenix
2 - Kansas City         2 - San Francisco
3 - Los Angeles         2 - Dallas
2 - New Haven
```

Index—
File—
Search—

b7C  (26)

b7E  (26)

1798-97-32

FBI 00090

Approved: _____   b7C   Transmitted _____   Per _____
                              (Number)    (Time)

A94

DL 179B-97

is located approximately five miles east of Sherman, Texas, Grayson County, Texas.

Examination of each of the victim's bodies determined that each victim was shot twice in the head.



b7D
b7E

Current investigation is being conducted regarding

b7C
b7D

Investigation has further determined that

Investigation has determined that

2

DL 179B-97



b7C
b7D

Investigation has further determined that

It should be pointed out that victim Mayes and Good
were each former policemen with the Sherman, Texas Police
Department.

b7C
b7D

Approximately one
month prior to the August 8, 1983 murders, victim Good was hired
as a Deputy Sheriff with the Grayson County Sheriff's Department,
Sherman, Texas.

3

FBI 00092

DL 179B-97

b7C
b7D  regarding.    Investigation   has failed to develop any    information

b7D
b7C

Bureau    Agents have been advised that

b7C
b7D

b7C
b7D

4

FBI 00093

A97

4-750 (Rev. 12-14-88)                    (

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIPA DELETED PAGE INFORMATION SHEET

Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☒ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☒ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☒ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to you or the subject of your request.

☐ Information pertained only to a third party.  Your name is listed in the title only.

☐ Documents originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld for the following reason(s): _____

_____

☐ For your information: _____

_____

☒ The following number is to be used for reference regarding these pages:

DL 179-97-32  page 5

XXXXXXXXXXXXXXXXXXXXXXX
X    DELETED PAGE(S)    X
XXXXXX                                      X NO DUPLICATION FEE X
XXXXXX                                      X    FOR THIS PAGE    X
XXXXXX                                      XXXXXXXXXXXXXXXXXXXXXXX
                                                                    FBI/DOJ

FBI 00094

A98

DL 1793-97



b7C
b7D

LEADS

Receiving offices are requested to identify[ ] search indices
rgarding[ ] contact local
law enforcement agencies [ ]

b7C
b7D

It is also requested that results of
investigation be reported on inserts or FD-302s.

ALBUQUERQUE

AT ALBUQUERQUE, NEW MEXICO, Will conduct investigation
as requested above,[ ]

b7C
b7D

6

FBI 00095

DL 179B-97

**ALBUQUERQUE**

    **AT GLEN BURNIE, MARYLAND.**  Will  conduct investigation
as  requested  above,

**KANSAS CITY**

    **AT KANSAS CITY, MISSOURI.**  Will conduct  investigation
as requested above,

**LOS ANGELES**

    **AT SANTA MONICA, CALIFORNIA.**  Will  conduct  investi-
gation as requested above,

    **AT SIMI VALLEY, CALIFORNIA.**  Will conduct investigation
as requested above,

**NEW HAVEN**

    **AT STRATFORD, CONNECTICUT.**  Will conduct investigation
as requested above,

**NEW ORLEANS**

    **AT LAKE CHARLES, LOUISIANA.**  Will conduct investigation
as requested above,

7

FBI 00096

A100

DL 179B-97

OKLAHOMA CITY

AT BETHANY, OKLAHOMA.    Will    conduct    investigation    as
requested above.

AT BRITTON, OKLAHOMA.

AT DURANT, OKLAHOMA.

AT KINGSTON, OKLAHOMA.

AT TULSA, OKLAHOMA.

AT OKLAHOMA CITY, OKLAHOMA.    Will    contact    logical
sources    in    the    State    of    Oklahoma    having    knowledge    of

PHOENIX

AT PHOENIX, ARIZONA.    (1)    Will conduct investigation
as requested above,

(2)    Will    contact

FBI 00097

8

[handwritten: akla city, called & said ... after researching, 3A ... said for akla city to ... disregard ... was so abused 12/21/83 ... bk]

A101

DL 179B-97

 

      AT MESA, ARIZONA.   Will contact local law   enforcement
and   sources   in   the   Mesa   area   in   an   effort   to   determine

 

SAN FRANCISCO

b7C
b7D

      AT SANTA ROSA, CALIFORNIA.   Will conduct investigation
as   requested above.

      ARMED AND DANGEROUS.

9*

FBI 00098

4-750 (Rev. 12-14-88)

XXXXXX
XXXXXX
XXXXXX

**F' ERAL BUREAU OF INVESTIGAT' N**
**FOIPA DELETED PAGE INFORMATION SHEET**

**3** Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|        Section 552        |                          |          Section 552a          |
|---------------------------|--------------------------|--------------------------------|
| ☐ (b)(1)                  | ☐ (b)(7)(A)              | ☐ (d)(5)                       |
| ☒ (b)(2)                  | ☐ (b)(7)(B)              | ☐ (j)(2)                       |
| ☐ (b)(3)                  | ☒ (b)(7)(C)              | ☐ (k)(1)                       |
| _____   | ☒ (b)(7)(D)              | ☐ (k)(2)                       |
| _____   | ☐ (b)(7)(E)              | ☐ (k)(3)                       |
| _____   | ☐ (b)(7)(F)              | ☐ (k)(4)                       |
| ☐ (b)(4)                  | ☐ (b)(8)                 | ☐ (k)(5)                       |
| ☐ (b)(5)                  | ☐ (b)(9)                 | ☐ (k)(6)                       |
| ☐ (b)(6)                  |                          | ☐ (k)(7)                       |

☐ Information pertained only to a third party with no reference to you or the subject of your request.

☐ Information pertained only to a third party. Your name is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld for the following reason(s): _____

_____

☐ For your information: _____

_____

☒ The following number is to be used for reference regarding these pages:
        DL 179 - 97 - 38 thru 40

XXXXXX
XXXXXX
XXXXXX

XXXXXXXXXXXXXXXXXXXXXXX
X   DELETED PAGE(S)   X
X NO DUPLICATION FEE X
X   FOR THIS PAGE     X
XXXXXXXXXXXXXXXXXXXXXXX
                              FBI/DOJ

*FBI* 00108

4-750 (Rev. 12-14-88)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA DELETED PAGE INFORMATION SHEET

_6_  Page(s) withheld entirely at this location in the file. One or more of the following
statements, where indicated, explain this deletion.

☒ Deletions were made pursuant to the exemptions indicated below with no segregable material
available for release to you.

|  | Section 552 |  |  | Section 552a |
|---|---|---|---|---|
| ☐ (b)(1) | | ☐ (b)(7)(A) | | ☐ (d)(5) |
| ☐ (b)(2) | | ☐ (b)(7)(B) | | ☐ (j)(2) |
| ☐ (b)(3) | | ☒ (b)(7)(C) | | ☐ (k)(1) |
| _____ | | ☒ (b)(7)(D) | | ☐ (k)(2) |
| _____ | | ☐ (b)(7)(E) | | ☐ (k)(3) |
| _____ | | ☐ (b)(7)(F) | | ☐ (k)(4) |
| ☐ (b)(4) | | ☐ (b)(8) | | ☐ (k)(5) |
| ☐ (b)(5) | | ☐ (b)(9) | | ☐ (k)(6) |
| ☐ (b)(6) | | | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to you or the subject of your
request.

☐ Information pertained only to a third party. Your name is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred
to that agency(ies) for review and direct response to you.

_____ Pages contain information furnished by another Government agency(ies). You will be
advised by the FBI as to the releasability of this information following our consultation
with the other agency(ies).

_____ Page(s) withheld for the following reason(s): _____

_____

☐ For your information: _____

_____

☒ The following number is to be used for reference regarding these pages:
        DL 179-97-159 and 160

XXXXXXXXXXXXXXXXXXXXXXX
X  DELETED PAGE(S)    X
XXXXXX                      X NO DUPLICATION FEE X
XXXXXX                      X    FOR THIS PAGE    X
XXXXXX                      XXXXXXXXXXXXXXXXXXXXXXX
                                              FBI/DOJ

FBI 00221

A104

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒ AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date  2/27/84

TO:        SAC, DALLAS (179B-97)

FROM:      SAC, BUTTE (179B-16) (RUC)

SUBJECT:   "GANGMURS";
           LESTER LEROY BOWER, JR.;
           JERRY MAC BROWN (DECEASED) -
           VICTIM;
           PHILLIP BOYCE GOOD (DECEASED) -
           VICTIM;
           RONALD HOWARD HAYES (DECEASED) -
           VICTIM;
           BOBBY GLEN TATE (DECEASED) -
           VICTIM;
           ECT; CR; ITSMV;
           HOBBS ACT
           OO:  Dallas

           Re Dallas teletype to the Bureau, dated 2/13/84.

[redacted]

b7C
b7D

[redacted]

2 - Dallas (AM)
1 - Butte
(3)   b7C

FBI 00301

179B-97-209

SEARCHED _____ INDEXED _____
SERIALIZED _____
Per _____

MAR 06 1984
b7C
FBI - DALLAS

Approved: _____  Transmitted _____
                           (Number)    (Time)

BT 179B-16



b7C
b7D

   Since no further investigation remains in the Butte
Division, this matter is being considered RUC'd.

   ARMED AND DANGEROUS.

FBI 00302

# Roth Declaration

# Exhibit 4

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☒ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☒ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☒ UNCLAS

Date ____10/25/83____   #0022

FM FBI DALLAS (62D-5174)

TO DIRECTOR, FBI PRIORITY   1020#

    ATTN: IDENTIFICATION DIVISION

FBI ATLANTA  PRIORITY 0325#

FBI NEW YORK  PRIORITY 0557 2/

FBI ST. LOUIS  PRIORITY 0345#

FBI PHOENIX  PRIORITY 0410#

BT

UNCLAS

UNSUB; JERRY MAC BROWN (DECEASED) - VICTIM; PHILLIP BOYCE GOOD

(DECEASED) - VICTIM; RONALD HOWARD MAYES (DECEASED) - VICTIM;

BOBBY GLEN TATE (DECEASED) - VICTIM; DOMESTIC POLICE COOPER-

ATION; OO: DALLAS

    RE DALLAS TELETYPE TO THE BUREAU, OCTOBER 17, 1983.

    FOR INFORMATION OFFICES NOT RECEIVING RE COMMUNICATION,

CAPTIONED VICTIMS ALL W/M, ALL ULTRALIGHT AIRCRAFT ENTHUSIASTS

WERE MURDERED SOMETIME BETWEEN THE HOURS OF 3;00 PM, AND 8:30

PM, OCTOBER 8, 1983, AT VICTIM TATE'S RANCH, THE B & B RANCH,

② - Dallas

FB:1v

(1)

Approved: _____  Transmitted _____  Per _____
                         (Number)      (Time)

Z Z 5 Z 0  E8 L90 9  DALLAS TEXAS
                     FBI

Serialize _____
Index _____
File _____
Search _____

FBI 00865

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date _____ |

PAGE TWO DE DL #0022 UNCLAS (62D-5174)

LOCATED APPROXIMATELY FIVE MILES EAST OF SHERMAN, TEXAS, IN

SPARCLY POPULATED AREA. VICTIMS GOOD AND MAYES WERE EACH FORMER

SHERMAN, TEXAS POLICE OFFICERS, AND VICTIM GOOD RECENTLY EM-

PLOYED AS DEPUTY SHERIFF, GRAYSON COUNTY SHERIFF'S DEPARTMENT.

ALL VICTIMS SHOT EXECUTION STYLE IN THE HEAD WITH .22 CALIBER

BULLET, MORE SPECIFICALLY DESCRIBED ████████████████ OF THE

DALLAS COUNTY CRIME LABORATORY, AS BEING A SUBSONIC .22 CALIBER

RIFLE HOLLOW POINT ALL LEAD BULLET, BRASS CASE WITH THE IN-

SCRIPTION ON THE BASE BEING THAT OF A SMALL CASE SCRIPT TYPE

LETTER F WITH TWO TEARDROP MARKINGS RUNNING AWAY FROM THE LETTER

F.   THIS PARTICULAR AMMO IS MANUFACTURED BY JULIO FIOCCHI, AN

ITALIAN BRAND AMMUNITION.

EXTENSIVE INVESTIGATION BEING CONDUCTED BY THE GRAYSON

COUNTY SHERIFF'S DEPT. AND THE TEXAS RANGERS, AND INFO DEVELOPED

IN THE CASE THAT AN UNKNOWN INDIVIDUAL CONTACTED VICTIM GOOD

FEW DAYS PRIOR TO MURDER AND DISCUSSED PURCHASING ONE OF GOOD'S

ULTRALIGHT AIRCRAFT.   GOOD INDICATED TO FAMILY MEMBER THAT CALLER

WAS A "BUYER FROM DALLAS", HOWEVER, TO DATE, EFFORTS TO IDENTIFY

THIS POTENTIAL BUYER HAVE MET WITH NEGATIVE RESULTS.   AT TIME OF

DISCOVERY OF MURDERS, IT WAS ALSO DETERMINED TATE'S EAGLE BRAND

Approved: _____  Transmitted _____  Per _____
                          (Number)    (Time)

FBI 00866

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date ____

PAGE FOUR DE DL #0022 UNCLAS (DL 62D-5174)

INFORMATION DEVELOPED INDICATES ▊▊▊▊▊▊▊▊

IT SHOULD BE POINTED OUT THAT VICTIM GOOD LIVED FOR A
PERIOD OF TIME IN THE PRESCOTT, ARIZONA, AREA AND WHILE THERE
RECEIVED FLIGHT TRAINING AS WELL AS WAS EMPLOYED BY SOME TYPE
OF SECURITY TYPE PRIVATE INVESTIGATIVE TYPE SERVICE. GOOD
RETURNED TO THE SHERMAN, TEXAS, AREA SOMETIME AROUND THE FIRST
PART OF 1983, AND SET UP HIS ULTRALIGHT BUSINESS.

REQUEST OF THE BUREAU - IDENTIFICATION DIVISION IS RE-
QUESTED TO REVIEW ANY RECORDS REGARDING ▊▊▊▊▊▊▊▊
▊▊▊▊▊▊▊▊ AND IF RECORD LOCATED
▊▊▊▊▊▊▊▊
FACSIMILE COPY TO THE DALLAS OFFICE.

ATLANTA AT NORCROSS, GEORGIA - CONTACT BINGHAM ARMS, LTD
▊▊▊▊▊ AND OBTAIN LIST OF CUSTOMERS

Approved: _____  Transmitted _____  Per _____
                       (Number)   (Time)

FBI 00868

FBI

| TRANSMIT VIA: | PRECEDENCE: | CLASSIFICATION: |
|---|---|---|
| ☐ Teletype | ☐ Immediate | ☐ TOP SECRET |
| ☐ Facsimile | ☐ Priority | ☐ SECRET |
| ☐ _____ | ☐ Routine | ☐ CONFIDENTIAL |
| | | ☐ UNCLAS E F T O |
| | | ☐ UNCLAS |
| | | Date |

PAGE SIX DE DL #0022 UNCLAS (DL 62D-5174)

██████████████████ PHOENIX ALSO ATTEMPT TO DEVELOP

DESCRIPTIVE DATA AND BACKGROUND CONCERNING ███████

██████████

- ST. LOUIS AT ST. LOUIS, MISSOURI - CONTACT THE U. S.

MILITARY RECORDS CENTER AND OBTAIN BACKGROUND INFORMATION

REGARDING ████████████████████████, AND PHILLIP

BOYCE GOOD, SSAN 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.

ARMED AND DANGEROUS

BT

#0022

NNNN

Approved: _____ Transmitted _____, Per _____
                               (Number)      (Time)

FBI 00870

bəlbnclbnɒ

DL 62D-5174
JFB/ear
1

     The following investigation was conducted by Special
Agent ██████████

     On October 11, 1983, ████████████ was contacted regarding
the murders of Jerry Mac Brown, Phillip Boyce Good, Ronald Howard
Mayes, and Bobby Glen Tate on the afternoon of October 8, 1983, at
an airplane hanger located on the B & B Ranch owned by Tate.
Source advised Tate ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Bob Tate (Deceased), ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

     Above information furnished to the Texas Rangers and
Grayson County Sheriff's Office, Sherman, Texas.

179B 97-9
620-5174 9

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED____
NOV 1 1983
FBI - DALLAS

FD-36 (Rev. 5-22-78)

```
                                    FBI

TRANSMIT VIA:          PRECEDENCE:           CLASSIFICATION:
☐ Teletype             ☐ Immediate           ☐ TOP SECRET
☐ Facsimile            ☐ Priority            ☐ SECRET
☒ ─ AIRTEL ─           ☐ Routine             ☐ CONFIDENTIAL
                                             ☐ UNCLAS E F T O
                                             ☐ UNCLAS

                                             Date ___12/12/83___
```

---

TO:      DIRECTOR, FBI

FROM:    SAC, DALLAS (179B-97) (P)

SUBJECT: CHANGED
         GANGHURS;
         UNSUBS;
         JERRY MAC BROWN (DECEASED) - VICTIM;
         PHILLIP BOYCE GOOD (DECEASED) - VICTIM;
         RONALD HOWARD MAYES (DECEASED) - VICTIM;
         BOBBY GLEN TATE (DECEASED) - VICTIM
         ECT; CR; ITSMV

         OO:  DALLAS

         Title has been changed to add GANGHURS. Title
previously carried as "UNSUBS; JERRY MAC BROWN (DECEASED) -
VICTIM; ET AL; ETC; CR; ITSMV; OO:  DALLAS."

         Re Dallas teletype to the Bureau dated 11/29/83, and
Bureau telephone call to Sherman RA, 12/2/83.

         For information of receiving offices not receiving
prior communication re captioned matter, the following background
information is being set forth:

         On 10/8/83, victims Jerry Mac Brown, white male, dob,
5/20/32; Phillip Boyce Good, white male, dob 10/9/53; Ronald
Howard Mayes, white male, dob 2/4/46; and, Bobby Glen Tate, white
male, dob 3/13/32, all ultralight plane enthusiast, were slained,
execution style, inside a makeshift airplane hangar located on
the premises of the B & B Ranch owned by victim Tate. This ranch

```
2 - Bureau                 2 - New Orleans
2 - Albuquerque            4 - Oklahoma City
2 - Baltimore              3 - Phoenix
2 - Kansas City            2 - San Francisco
3 - Los Angeles           (2)- Dallas
2 - New Haven              JFB/ear
     Index                  (26)               1798- 97-32
     File
     Search
```

Approved: _____    Transmitted _____    Per _____
                                        (Number)    (Time)

FBI 00924

Case 1:06-cv-00822-ESH    Document 17-2    Filed 04/03/09    Page 42 of 76

DL 179B-97

is located approximately five miles east of Sherman, Texas, Grayson County, Texas.

Examination of each of the victim's bodies determined that each victim was shot twice in the head with talion made julio fiocchi, .22 caliber subsonic all lead hollow point long rifle bullets. Ballistics experts at the Southwestern Forensic Laboratory in Dallas, Texas has advised that due to the markings on the recovered bullets, they are of the opinion that the bullets passed through a silence weapon. Eleven shell casings branding julio fiocchi markings were recovered at the crime scene. Current investigation is being conducted regarding the julio fiocchi ammunition, and attempts are being made to identify type of silencer and specific type of weapon from which bullets fired.

Victim ▓▓▓▓▓▓▓▓▓ Bobbie Tate, went to the B & B Ranch at approximately 3:30PM on 10/8/83 to visit ▓▓▓▓▓ victim Tate, who was working on a new home currently being built on the ranch. While at the ranch, ▓▓▓▓▓▓▓ went to the ultralight aircraft hangar and advised that at that time, there were two ultralight aircrafts located in the hangar. Sometime around 3:30 PM, ▓▓▓▓▓▓▓ ft the ranch and was told by ▓▓▓▓▓ victim Tate, that he would be home a short time later. ▓▓▓▓▓▓▓ noticed nothing unusual or suspicious at that time.

Investigation has further determined that victims Good and Brown reportedly were together on the afternoon of 10/8/83 at victim Good's residence. They left Good's residence and reportedly went to the ranch together, arriving there sometime around 4:00 PM.

Investigation has determined that victim Hayes, who resides a short distance from the ranch, and who can see the ranch from his residence, reportedly left his residence at around 5:00 PM on 10/8/83 and drove to the hangar in his personal owned vehicle.

▓▓▓▓▓▓▓▓▓▓▓ has advised that she went to the hangar around 6:30 PM on 10/8/83, and upon arriving at the hangar, observed three vehicles which she recognized as those vehicles belonged to the victims. No strange vehicles were observed. She further advised that she did not see any activity around the hangar and upon arriving at the hangar, she looked inside the hangar, however, due to it being dark inside, she was

2

FBI 00925



DL 179B-97

unable to see anything. She further advised that she left the ranch and returned to her residence. (It should be noted that at 6:30 PM on 10/8/83, approximately one hour of daylight remained.)

Investigation has further determined that ████ ████Bobbie, ████ ████ B & B Ranch███ ████████nd used a key to open the hangar door, and upon entering the hangar located the body of victim Mayes a short distance inside the front door to the hangar. They immediately left the hangar and proceeded to Sherman, Texas, where they contacted law enforcement authorities. Law officers from the Texas Department of Public Safety (TDPS) and Grayson County, Texas Sheriff's Department, proceeded to the B & B Ranch and upon entering the hangar, also observed victim Mayes' body. Further examination of the hangar located victims Brown, Good, and Tate located in the rear of the hangar covered with carpet. Upon arrival by the law enforcement officers, only one aircraft was located in the hangar and it was discovered that the "Double Eagle" ultralight aircraft belonging to Tate was missing. It should be pointed out that the aircraft left remaining in the hangar was a more expensive and better equipped aircraft then the aircraft which was missing.

It should be pointed out that victim Mayes and Good were each former policemen with the Sherman, Texas Police Department. After leaving the Sherman, Texas Police Department several years ago, victim Good moved ████ ████ to the Prescott, Arizona area. ████████████ ████████████currently reside████ Prescott, Arizona. Investigation has determined that prior to returning to Sherman, Texas, Phillip████████ Good resided in Mesa, Arizona, and possibly had telephone number ████████ While residing in Arizona, victim Good received flight training, also obtained a private investigator's license, and did some investigative type work for Tatt Investigations, Indian School Road, Phoenix, Arizona. Sometime around the first part of 1982, victim Good████ returned to the Sherman, Texas area and began ████████████████████ ████████████████Sherman, Texas. Good became involved in the promoting and selling of "Eagle" brand ultralight aircraft. Reportedly, through this ultralight business, he became associated with victims Tate, Brown and Mayes, and sold Tate and Brown each ultralight aircrafts. Victim Mayes did not fly ultralight aircrafts, however, he spent considerable time associating with the other three victims. Approximately one month prior to the August 8, 1983 murders, victim Good was hired as a Deputy Sheriff with the Grayson County Sheriff's Department, Sherman, Texas.

3

FBI 00926

DL 179B-97          bnc/bnD

Interviews conducted by the Texas Rangers of ▮▮▮▮▮
▮▮▮▮▮ has resulted in investigators ▮▮▮▮▮



Southwestern Bell Telephone Company and General
Telephone Company has each been contacted and telephone toll
records for Good's telephone, as well as victim Tate's telephone,
has been obtained for the period proceeding the murders and a
short period of time after the murders. Also, efforts are being
made to obtain reverse calls to Good and Tate ▮▮▮▮▮

Bureau Agents have been advised that investigation by
the Texas Rangers has determined that ▮▮▮▮▮



A review of telephone toll records from telephone
number ▮▮▮▮▮ listed to victim Good reflects that numerous
telephone calls have been placed to Prescott, Arizona, telephone
number ▮▮▮▮▮ and further these records reflect that on
▮▮▮▮▮ a thirteen minute phone call was placed to
▮▮▮▮▮ in Prescott, Arizona; on ▮▮▮▮▮
▮▮▮▮▮ was placed to the ▮▮▮▮▮ in Arizona,
and at ▮▮▮▮▮ was
placed to the ▮▮▮▮▮

4

FBI 00927

$bnc^{()}/b1b$

DL 179B-97

        Investigation conducted by the Texas Rangers has
developed information ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮

        Further investigation has determined that victim Good
met his wife, ▮▮▮▮ while serving in the U. S. Military
in Germany.  At that time, ▮▮▮▮▮ somewhere near the base where
Good was assigned.  Investigation has located ▮▮▮▮▮

▮▮▮▮▮

        Initially, during early interviews of ▮▮▮▮ in an effort
to possibly recall additional information regarding the "Dallas
buyer" and other information which might be beneficial to the
investigation. ▮▮▮▮ became somewhat reluctant and
uncooperative with investigators.  Approximately two days after
victim Good's funeral, ▮▮▮▮

▮▮▮▮ as not been interviewed by any law
enforcement officials.

        Further investigation has developed information that
victim Tate has been involved in illegal gambling activity
involving "cock fighting", and has also been involved in
narcotics trafficking, and because of bad debts incurred in this
illegal activity, victim Tate was the target of the killing and
the other three victims were merely victims of circumstances.
Investigation to date has developed no hard evidence to confirm
that Tate was involved in gambling or narcotics trafficking.
Investigation has determined that Tate had a well-known
reputation in the Sherman/Denison, Texas area as that of a
"womanizer", and had numerous female companions.  Also,
information has been developed that Tate was very much involved
in making photographs of nude women with whom he had relations.

5

A117

FBI 00928



DL 179B-97

A search of Tate's 40 foot houseboat located on Lake Texoma
shortly after the killings resulted in the discovery of several
photographs of unknown nude females.

A review of telephone toll calls obtained from victim
Good's telephone number,          and from victim Tate's
telephone,          reveals numerous long distance telephone
calls.   Several of these calls are to areas located outside the
State of Texas,  and numbers called in other states are being set
out under the lead section of this communication. (Investigation
to date has failed to identify the alleged prospective "Dallas
buyer" for the ultralight and,  therefore, investigators assigned
to this investigation since the inception are of the opinion that
the telephone calls,  if they in fact occurred,  may have been a
lure to get victim Good,  and possibly the other victims to the B
& B Ranch on Saturday afternoon,  10/8/83,  so that the hit could
be carried out.)

LEADS

Receiving offices are requested to identify subscribers
called from victims Good's and Tate's telephones,  search indices
regarding the subscribers to the telephone numbers,  contact local
law enforcement agencies in the areas where the subscribers
reside,  and thereafter interview each of the subscribers
regarding the purpose of the telephone calls from victim Good
and/or victim Tate.   It is also requested that results of
investigation be reported on inserts or FD-302s.

    ALBUQUERQUE

AT ALBUQUERQUE, NEW MEXICO.  Will conduct investigation
as requested above,  noting that on          a four
minute telephone call was placed from victim Good's telephone to
telephone number          Albuquerque, New Mexico.

6

FBI 00929

**bnc**

DL 179B-97

~~AT BALTIMORE~~ **OF** BALTIMORE

AT GLEN BURNIE, MARYLAND.    Will conduct investigation
as requested above, noting that on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a
telephone call was made from victim Good's telephone to telephone

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Glen Burnie, Maryland. ▮▮▮▮▮▮▮▮

KANSAS CITY

AT KANSAS CITY, MISSOURI.    Will conduct investigation
as requested above, noting that on ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮ a one minute telephone call was made from victim Good's
telephone to Kansas City telephone number ▮▮▮▮▮▮
(subscriber not identified).

LOS ANGELES

AT SANTA MONICA, CALIFORNIA.    Will conduct investi-
gation as requested above, noting that on ▮▮▮▮▮▮ a
five minute telephone call was placed from victim Good's
telephone to telephone number ▮▮▮▮▮▮ (subscriber not
known).

AT SIMI VALLEY, CALIFORNIA.    Will conduct investigation
as requested above, noting that on ▮▮▮▮▮▮ an eight
minute telephone call was made from victim Good's telephone to
telephone number ▮▮▮▮▮▮

NEW HAVEN

AT STRATFORD, CONNECTICUT.    Will conduct investigation
as requested above, noting that on ▮▮▮▮▮ a one
minute telephone call was made from victim Good's telephone to
telephone number ▮▮▮▮▮▮ (subscriber not identified).

▮▮▮▮▮▮▮▮ nine minute telephone call was
made from victim Good's telephone to telephone number ▮▮▮▮
▮▮▮ subscriber identified as ▮▮▮▮▮▮ Attorney, ▮▮▮▮
▮▮▮▮▮▮ Stratford, Connecticut.

NEW ORLEANS

AT LAKE CHARLES, LOUISIANA.    Will conduct investigation
as requested above, noting on ▮▮▮▮▮▮ a three minute
telephone call was made from victim Good's telephone to telephone
number ▮▮▮▮▮▮ subscriber ▮▮▮▮▮▮

7

FBI 00930

*bre*

DL 179B-97

investigation has determined that ▮▮▮▮▮ and

Louisiana area.)

## OKLAHOMA CITY

AT BETHANY, OKLAHOMA. Will conduct investigation as requested above, noting that on ▮▮▮▮ a one minute telephone call was placed at ▮▮▮▮ from victim Good's telephone to telephone number ▮▮▮▮ (subscriber not identified).

AT BRITTON, OKLAHOMA. On ▮▮▮▮ a one minute telephone call was placed at ▮▮▮▮ from victim Good's telephone to telephone number ▮▮▮▮ (subscriber not identified).

AT DURANT, OKLAHOMA. On ▮▮▮▮ a six minute telephone call was placed from victim Tate's telephone to telephone number ▮▮▮▮ (subscriber not identified).

AT KINGSTON, OKLAHOMA. On ▮▮▮▮, a one minute telephone call was placed to telephone number ▮▮▮▮ and at ▮▮▮▮ a six minute telephone call was placed to telephone number ▮▮▮▮ (subscribers not identified).

AT TULSA, OKLAHOMA. On ▮▮▮▮ a five minute telephone call was placed from victim Good's telephone to telephone number ▮▮▮▮ *Shared the ▮▮▮▮ AZ residence present AZ of*

AT OKLAHOMA CITY, OKLAHOMA. Will contact logical sources in the State of Oklahoma having knowledge of cock fighting activity in an effort to develop any information involving any of the captioned subjects, specifically victim Bobby Glen Tate, in illegal gambling activity involving cock fights.

## PHOENIX

AT PHOENIX, ARIZONA. (1) Will conduct investigation as requested above, noting on ▮▮▮▮ a four minute telephone call was made to ▮▮▮▮ (subscriber not identified).

(2) Will contact personnel, Uaupae College, and attempt to identify a ▮▮▮▮ . (For information of Phoenix, Sherman RA has been in telephonic contact with ▮▮▮▮ General Investigative Division,

8

*akla city, called & said this is not a Tulsa number, after suearching, SA ▮▮▮▮ said for akla city to disregard. ▮▮▮▮ was so advised 12/21/83 ▮▮▮▮*

A120



DL 179B-97

Phoenix Police Department, ████████████ regarding instant matter
and  he  has  commenced  conducting  investigation  and  it   is
recommended Agent handling Phoenix investigation contact Adams.)

AT MESA, ARIZONA.   Will contact local law  enforcement
and   sources  in  the  Mesa  area  in  an  effort  to  determine
background,  activities,  etc.,  of  Phillip█████████████  Good,
noting  that  prior  to  them  returning to Texas,  they  resided  in
Mesa and had telephone number█████████████

SAN FRANCISCO

AT SANTA ROSA, CALIFORNIA.   Will conduct investigation
as  requested above,  noting that on████████████████████  a  five
minute  telephone call was made from victim Good's  telephone  to
telephone number███████████.   At██████████████████  a  second
telephone call,  five minutes duration, was made to███████████
Subscriber  to above telephone████████████
████████████ Santa Rosa, California.

ARMED AND DANGEROUS.

9*

b2 | b7c | b7D

DL 179B-79
JFW/jm
1

On November 29, 1983 [redacted] provided Special Agent [redacted]
with the following information:

He attended the Dallas Gun Show on November 26, 1983 and
purchased three boxes (each containing 50 rounds per box) of Julio Fiocchi .22
caliber long-rifle sub-sonic ammunition from an [redacted]
[redacted] The source further advised that he is
and will provide it to Agent [redacted]

179B- 79 - 39

| SEARCHED_____ | INDEXED_____ |
| SERIALIZED_____ | FILED_____ |

DEC 15 1983

FBI - DALLAS

FBI 00957



PGO 206 0482033Z

PP HQ DL

DE PG

P 0482033Z FEB 84

FM PITTSBURGH (179A-174)(P)

TO DIRECTOR PRIORITY

DALLAS (179B-97) PRIORITY

BT

UNCLAS

ATTENTION:  FBI LABORATORY - FIREARMS DIVISION

PHILLIP BOYCE GOOD (DECEASED) - VICTIM; RONALD HOWARD MAYES

(DECEASED) - VICTIM; BOBBY GLEN TATE (DECEASED) - VICTIM; ECT; CR;

ITSMV; HOBBS ACT; OO:  DALLAS

     RE DALLAS TELETYPE TO FBIHQ, DATED FEBRUARY 13, 198 4

_____ TELEPHONE NUM-

BER _____ WAS INTERVIEWED FEBRUARY 16, 198⁻, AND ADVISED

HE IS GUN COLLECTOR AND CLASS THREE DEALER AND TITLE II MANUFACTURER

OF FIREARMS PROPERLY REGISTERED WITH THE ALCOHOL TOBACCO FIREARMS

(ATF).

     _____ HE PURCHASED 15 BOXES OF .22 CALIBER, HOLLOW POINT

*b7C*

ALL ASONIC JULIO FIOCCHI (ITALIAN MADE BULLETS) _____



FBI 01182

PAGE TWO                        PG 179A-174                    UNCLAS

█████████████████████████ PURCHASED THIS AMMO █████████████
█████ AFTER HE████████████ HAD SEEN IT ADVERTISED IN EITHER "THE
SHOTGUN NEWS" OR "FFL NEWS." ███████████████████ HE IS A
DEALER AND HE IS INTERESTED IN ALL TYPSE OF GUNS AND AMMO AND FOR THAT
REASON AS WELL HE MAY HAVE PURCHASED THESE .22 CALIBER BULLETS.
COULD NOT FIND INVOICE AND COULD NOT REMEMBER THE EXACT PRICE THAT
HE PAID.

███████████████ HE HAS DONE MUCH BUSINESS WITH ████████████
█████ BINGHAM LIMITED ARMS, 1775-C WILWAT DRIVE, NORCROSS, GEORGIA,

███████████████████ BINGHAM LIMITED ARMS IS A REGISTERED DEALER,
FEDERAL FIREARMS LICENSE NUMBER 1-58-267-08-81-11762, WHO DEALS IN
MANY DIFFERENT FIREARMS, BUT SEEMS TO SPECIALIZE IN ITALIAN MADE
FIREARMS AND AMMUNITION.

████████████████ ONLY ADVANTAGE OF JULIO FIOCCHI .22 CALIBER AMMO
WAS THAT IT WAS QUIETER THAN REGULAR .22 CALIBER BULLETS, ESPECIALLY
IF SHOT THROUGH A RIFLE. ████████████ FIRED SEVERAL ROUNDS OF DIFFERENT
TYPE .22 CALIBER BULLETS, INCLUDING JULIO FIOCCHI TO DEMONSTRATE
WHAT HE MEANT.

PAGE THREE                    PG 179A-174                    UNCLAS

b7C                    ████████████ HE DID NOT RECOGNIZE NAMES OF SUBJECT OR

VICTIMS.

                ████████████ TWO JULIO FIOCCHI .22 CALIBER BULLETS WHICH

WILL BE FORWARDED TO FBI LAB AS REQUESTED.  FD-302 TO FOLLOW.

BT

#

FBI 01184

36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☒  AIRTEL

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date  2/27/84

TO:      SAC, DALLAS (179B-97)

FROM:    SAC, BUTTE (179B-16) (RUC)

SUBJECT: "GANGMURS";
         LESTER LEROY BOWER, JR.;
         JERRY MAC BROWN (DECEASED) -
         VICTIM;
         PHILLIP BOYCE GOOD (DECEASED) -
         VICTIM;
         RONALD HOWARD HAYES (DECEASED) -
         VICTIM;
         BOBBY GLEN TATE (DECEASED) -
         VICTIM;
         ECT; CR; ITSMV;
         HOBBS ACT
         OO:  Dallas

         Re Dallas teletype to the Bureau, dated 2/13/84.

         On 2/21/84, ███████████████████████████████
███████ Billings, Montana; ████████████████████████ Bob's Lock and
Safe Company, 2041 Grand Avenue, Billings, Montana, advised that
he did, in fact, purchase three boxes of Julio Fiocchi .22 caliber
asonic ammunition from the Bingham Arms Company. ████████ advised
that he also purchased ten boxes of Julio Fiocchi asonic .22
caliber ammunition from Euclid Sales Company, located at 1145
Euclid Avenue Northeast, Atlanta, Georgia ████████ advised that
he learned of this ammunition through an advertisement in "The
Shotgun News" magazine and that he has a Federal Firearms License
which allows him to purchase the ammunition wholesale.

         ████████ advised that two of the three boxes purchased
from Bingham Arms Limited, he in turn sold and that the rest of the
ammunition, including the ten boxes from Euclid Sales Company, he

2 - Dallas (AM)
1 - Butte
EJL/mjp
(3)

1798-97-309

Approved: _____  Transmitted _____  Per _____
                            (Number)    (Time)

FBI-DALLAS
MAR 0 0 1984

SEARCHED ___
SERIALIZED ___

BT 179B-16

b7F   and his wife shot up themselves          advised that he purchased
the ammunition for the purpose of teaching his wife how to shoot.
He advised that this ammunition is supposed to be very quiet and
this was the reason that he bought it, because his wife does not
like the loud noise associated with shooting.

b7C             was unable to furnish any of the above-
described ammunition to the interviewing Agent.

        Since no further investigation remains in the Butte
Division, this matter is being considered RUC'd.

        ARMED AND DANGEROUS.

FBI 01289

# Roth Declaration

# Exhibit 5

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☒ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☒ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☒ UNCLAS
Date — 10/25/83 — #0022

FM FBI DALLAS (62D-5174)

TO DIRECTOR, FBI  PRIORITY  *1020p*

     ATTN: IDENTIFICATION DIVISION

FBI ATLANTA  PRIORITY  *0325p*

FBI NEW YORK  PRIORITY  *0555p*

FBI ST. LOUIS  PRIORITY  *0345p*

FBI PHOENIX  PRIORITY  *0400p*

BT

UNCLAS

UNSUB; JERRY MAC BROWN (DECEASED) - VICTIM; PHILLIP BOYCE GOOD

(DECEASED) - VICTIM; RONALD HOWARD MAYES (DECEASED) - VICTIM;

BOBBY GLEN TATE (DECEASED) - VICTIM; DOMESTIC POLICE COOPER-

ATION; OO: DALLAS

     RE DALLAS TELETYPE TO THE BUREAU, OCTOBER 17, 1983.

     FOR INFORMATION OFFICES NOT RECEIVING RE COMMUNICATION,

CAPTIONED VICTIMS ALL W/M, ALL ULTRALIGHT AIRCRAFT ENTHUSIASTS

WERE MURDERED SOMETIME BETWEEN THE HOURS OF 3:00 PM, AND 8:30

PM, OCTOBER 8, 1983, AT VICTIM TATE'S RANCH, THE B & B RANCH,

1 - Dallas
JFB:lv
(1)

*179B-91-4*

*62D-5174-4*

Approved: _____  Transmitted _____  Per _____
                                        (Number)    (Time)

Serialize _____
Index _____
File _____
Search _____

FBI 02808

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE TWO DE DL #0022 UNCLAS (62D-5174)

LOCATED APPROXIMATELY FIVE MILES EAST OF SHERMAN, TEXAS, IN

SPARCLY POPULATED AREA. VICTIMS GOOD AND MAYES WERE EACH FORMER

SHERMAN, TEXAS POLICE OFFICERS, AND VICTIM GOOD RECENTLY EM-

PLOYED AS DEPUTY SHERIFF, GRAYSON COUNTY SHERIFF'S DEPARTMENT.

ALL VICTIMS SHOT EXECUTION STYLE IN THE HEAD WITH .22 CALIBER

BULLET, MORE SPECIFICALLY DESCRIBED BY LARRY FLETCHER OF THE

DALLAS COUNTY CRIME LABORATORY, AS BEING A SUBSONIC .22 CALIBER

RIFLE HOLLOW POINT ALL LEAD BULLET, BRASS CASE WITH THE IN-

SCRIPTION ON THE BASE BEING THAT OF A SMALL CASE SCRIPT TYPE

LETTER F WITH TWO TEARDROP MARKINGS RUNNING AWAY FROM THE LETTER

F.   THIS PARTICULAR AMMO IS MANUFACTURED BY JULIO FIOCCHI, AN

ITALIAN BRAND AMMUNITION.

    EXTENSIVE INVESTIGATION BEING CONDUCTED BY THE GRAYSON

COUNTY SHERIFF'S DEPT. AND THE TEXAS RANGERS, AND INFO DEVELOPED

IN THE CASE THAT

b7D

AT TIME OF

DISCOVERY OF MURDERS, IT WAS ALSO DETERMINED TATE'S EAGLE BRAND

Approved: _____   Transmitted _____   Per _____
                                        (Number)      (Time)

FBI 02809

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE THREE DE DL #0022 UNCLAS (62D-5174)

ULTRALIGHT AIRCRAFT MISSING FROM HANGER.

ON OCTOBER 23, 1983, [                    ] SUPRA, ADVISED CON-

TACT WITH BINGHAM ARMS, LTD, LOCATED NORCROSS, GEORGIA, DETER-

MINED THAT COMPANY RECEIVED SHIPMENT OF ABOVE DESCRIBED AMMUN-

ITION FROM IGI, DOMINO CORPORATION, NEW YORK CITY, AND SUB-

SEQUENTLY SOLD AMMUNITION TO EUCLID AVENUE SALES, LOCATED

IN ATLANTA, GEORGIA, TELEPHONE # 404/525-2801.  INVESTIGATION

HAS DETERMINED THAT [                              ]

IGI, DOMINO CORP., 200 MADISON AVE., NEW YORK CITY, TELEPHONE

[              ] IS MAJOR IMPORTER OF THE JULIO FIOCCHI AMMUNITION.

[        ] TELEPHONICALLY CONTACTED BUREAU AGENT, SHERMAN RA,

ON OCTOBER 25, 1983, [                                    ]

[                              ] THE JULIO FIOCCHI

AMMUNITION, AND STATED [        ]

[                              ] THE AMMUNITION.

ON OCTOBER 25, 1983, [              ] TEXAS RANGER, ADVISED

INVESTIGATION HAS DEVELOPED INFORMATION WHICH WOULD MAKE VICTIM

[                                                      ]

[        ] DRIVER'S LICENSE [      ] SSAN [        ] WITH ADDRESS

b6
b7C
b7D

b6
b7C
b7D

Approved: _____ Transmitted _____ Per _____
                                       (Number)   (Time)

FBI 02810

A131

FD-36 (Rev. 8-26-82)

● FBI ●

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O  •
☐ UNCLAS
Date _____

PAGE FOUR DE DL #0022 UNCLAS (DL 62D-5174)

[                                        ] TELEPHONE #

[                        ] AS A SUSPECT INSTANT MATTER.

INFORMATION DEVELOPED INDICATES THAT [        ] NAME NOT

KNOWN AT THIS TIME, MAY HAVE HAD SOME [        ]

[                                        ]

REPORTEDLY [        ]

AT THE TIME [        ]

CURRENTLY BE EMPLOYED AT SOME TYPE OF [        ] IN THE

[        ] AREA AS [        ] OR POSSIBLY [        ]

     IT SHOULD BE POINTED OUT THAT VICTIM GOOD LIVED FOR A

PERIOD OF TIME IN THE PRESCOTT, ARIZONA, AREA AND WHILE THERE

RECEIVED FLIGHT TRAINING AS WELL AS WAS EMPLOYED BY SOME TYPE

OF SECURITY TYPE PRIVATE INVESTIGATIVE TYPE SERVICE.  GOOD

RETURNED TO THE SHERMAN, TEXAS, AREA SOMETIME AROUND THE FIRST

PART OF 1983, AND SET UP HIS ULTRALIGHT BUSINESS.

     REQUEST OF THE BUREAU - IDENTIFICATION DIVISION IS RE-

QUESTED TO REVIEW ANY RECORDS REGARDING [        ] DOB

[        ] SSAN [        ], AND IF RECORD LOCATED

FACSIMILE COPY TO THE DALLAS OFFICE.

     ATLANTA AT NORCROSS, GEORGIA - CONTACT BINGHAM ARMS, LTD

[        ] PHONETIC), AND OBTAIN LIST OF CUSTOMERS

b6
b7C
b7D

b6
b7C

Approved: _____ Transmitted _____ Per _____
                        (Number)    (Time)
                                      b6
                                      b7C

FBI 02811

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE FIVE DE DL #0022 UNCLAS (DL 62D-5174)

TO WHOM THAT COMPANY SOLD THE SUBSONIC .22 CALIBER JULIO FIOCCHI

ANNUMITION.

    AT ATLANTA GEORGIA – WILL CONTACT EUCLID AVENUE SALES, INC.,

TELEPHONE [                    ] AND OBTAIN LIST OF CUSTOMERS TO WHOM

THAT COMPANY SHIPPED THE SUBSONIC .22 CALIBER JULIO FIOCCHI

AMMUNITION.

    NEW YORK AT NEW YORK CITY – WILL CONTACT [              ]

DBA IGT, DOMINO CORP., [                ]   TELEPHONE # [        ]

AND OBTAIN LIST OF CUSTOMERS TO WHOM THAT COMPANY SHIPPED THE

SUBSONIC .22 CALIBER JULIO FIOCCHI AMMUNITION, AND ALSO OBTAIN

ANY BACKGROUND INFORMATION REGARDING THE AMMUNITION AND NAMES

OF OTHER INDIVIDUALS OR COMPANIES DISTRIBUTING THIS AMMUNITION.

    PHOENIX AT PRESCOTT, ARIZONA – WILL CONDUCT CREDIT AND

CRIMINAL CHECKS AND CONTACT LOGICAL INFORMANTS IN EFFORT TO

DEVELOP BACKGROUND INFORMATION REGARDING [                ]

VICTIM PHILLIP GOOD, NOTING THAT [              ] RESIDES IN

THE PRESCOTT AREA AND GOOD LIVED THERE PRIOR TO MOVING TO

SHERMAN, TEXAS. IT SHOULD BE POINTED OUT THAT TWO DAYS AFTER

THE BURIAL OF GOOD, [                                    ]

b6
b7C

b6
b7C

b6
b7C

Approved: _____ Transmitted _____ Per _____
                                        (Number)    (Time)

FBI 02812

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE SIX DE DL #0022 UNCLAS (DL 62D-5174)

[                    ] PHOENIX ALSO ATTEMPT TO DEVELOP

DESCRIPTIVE DATA AND BACKGROUND CONCERNING [          ] NAME

UNKNOWN.

b6
b7C

　ST. LOUIS AT ST. LOUIS, MISSOURI - CONTACT THE U. S.

MILITARY RECORDS CENTER AND OBTAIN BACKGROUND INFORMATION

REGARDING [                              ] AND PHILLIP

BOYCE GOOD, SSAN 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.

ARMED AND DANGEROUS

BT

#0022

NNNN

Approved: _____   Transmitted _____   Per _____
                                              (Number)      (Time)

FBI 02813

DL 179B-79
JFW/jm
1

b2
b7D
b6
b7C

On November 29, 1983, _____ provided Special Agent _____
_____ with the following information:

He attended the Dallas Gun Show on November 26, 1983 and purchased three boxes (each containing 50 rounds per box) of Julio Fiocchi .22 caliber long-rifle sub-sonic ammunition from an _____ The source further advised that he is attempting to obtain _____ and will provide it to Agent _____

b6
b7C
b7D

FBI 02891



179B-79-39

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

DEC 15 1983

FBI - DALLAS

b6
b7C

# Roth Declaration

# Exhibit 6

FD-468 (Rev. 1-15-80)

UNITED STATES GOVERNMENT

*Memorandum*

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION

TO      : Director, FBI                              DATE:    9/27/84

                                    ATT.: Research-Correspondence/Tours Section
FROM  : SAC, DALLAS (179B-97) (C)          Public Affairs Office

SUBJECT: CORRESPONDENCE MATTERS
RECOMMENDATION FOR LETTER FROM DIRECTOR

This form may be utilized where applicable in conjunction with Bureau letter
to Albany and all offices dated 11-7-73 captioned "Correspondence Matters."

| Name | Rank (if applicable) |
|---|---|
| RONALD J. SIEVERT | AUSA |

| Residence Address (include Zip Code) | |
|---|---|
| Tyler, Texas, 75701 | |

| Name of Agency | Name of Head of Agency |
|---|---|
| United States Attorney's Office | Robert J. Wortham |

Address of Agency (include Zip Code)

P.O. Box 2034, Tyler, Texas, 75710

BASIS FOR RECOMMENDATION: (Amplify under "Remarks.")

☐ Promotion (Indicate from _____ to _____)

☐ Serious illness (Indicate where confined; if hospital, how long confinement will be.)

☐ Death (Indicate next of kin, widow, if any, and children, if any.)

☐ Death in family (Indicate relationship.)

☐ Editorial or feature article (Indicate whether complimentary or derogatory; also
                                indicate editor, or newspaperman, to be written to,
                                with address and Zip Code.)

☒ Appreciation for assistance in Bureau case. Identify case by caption under
   "Remarks."

☐ Other _____

REMARKS: (Set forth below a clear, concise, justification for recommendation. Be
          specific, omit generalities. If applicable, include Bureau file number.)

GANGMUR;
LESTER LEROY BOWER, JR.;
JERRY MAC BROWN (DECEASED) - VICTIM;
PHILLIP BOYCE GOOD (DECEASED) - VICTIM;          FBI 03483
RONALD HOWARD MAYES (DECEASED) - VICTIM;
BOBBY GLEN TATE (DECEASED) - VICTIM;
EXTORTIONATE CREDIT TRANSACTION;
CIVIL RIGHTS; INTERSTATE TRANSPORTATION
OF STOLEN MOTOR VEHICLE; HOBBS ACT
OO:  DALLAS (179B-97)

2 - Bureau
(2) - Dallas     Serialize
MFK/dhi   Index
(4)       File
          Search

Enc.

179B-97-324

DL 179B-97

     RONALD J. SIEVERT is an Assistant United States Attorney (AUSA) in the Eastern District of Texas (EDT), Tyler, Texas, and in connection with captioned matter was designated as Special Prosecutor by the State of Texas to handle the murder prosecution of LESTER LEROY BOWER, JR. in the State District Court, 15th District, Grayson County, Texas, Judge R.C. VAUGHN, Presiding. AUSA SIEVERT has been with the UNITED STATES ATTORNEY'S OFFICE, EDT, since 1983 and previously served as Chief Criminal Prosecutor in Jefferson County, Texas between 1978-1983.

     The trial of BOWER arose out of a murder investigation involving the execution style slayings of four people in Sherman, Texas on October 8, 1983. The crime received widespread publicity and when in December, 1983, the local authorities reached an impasse in their investigation, they requested assistance from the FEDERAL BUREAU OF INVESTIGATION (FBI). After consultation with AUSA SIEVERT, it was decided that the FBI could assist the local authorities in their investigation under several theories, including Extortionate Credit Transactions, Civil Rights, Interstate Transportation of a Stolen Motor Vehicle, and the Hobbs Act, and in December, 1983, the FBI entered the case.

     Throughout the investigation, which culminated in the trial of BOWER in April, 1984, SIEVERT made himself available to the FBI, local police and prosecutors for advise and counsel. Because of his background as a state prosecutor in Texas, the Grayson County Attorney had him designated as a Special Prosecutor to assist his office in the trial of this case. It was because of SIEVERT's trial experience, scholarship and advocacy that various items of evidence discounted by the Grayson County Attorney as not admissible were effectively introduced into evidence, such as the oral admissions of BOWER to FBI Agents. SIEVERT handled all Federal witnesses at the trial, which comprised over 50% of the testimony at trial, including SAs from the FBI Laboratory, and spent numerous hours with the Federal witnesses in pre-trial preparation. Following the trial, the presiding Judge indicated to SIEVERT that "the testimony of the FBI investigators was very thorough and very impressive. They were great witnesses".

     Because of his effectiveness in the courtroom, SIEVERT was also asked to argue the punishment phase of the trial, as the State sought and received the death sentence.

     SIEVERT is a highly skilled and tireless prosecutor whose sense of purpose and mission contributed significantly to the successful outcome of the investigation and prosecution of BOWER.

2

FBI 03484

DL 179B-97

RECOMMENDATION:

It is requested that an appropriate letter from the Director, FBI, be sent to AUSA SIEVERT commending him for his outstanding and unique skills as an advocate, his tireless efforts and commendable trial performance in this matter.

3*

FBI 03485

A139



October 25, 1984

PERSONAL

Mr. Ronald J. Sievert
Assistant United States Attorney
Eastern District of Texas
Post Office Box 2034
Tyler, Texas , 75710.

Dear Mr. Sievert:

My FBI colleagues in Dallas have conveyed to me
the vital role you played during the investigation and sub-
sequent prosecution of Lester Leroy Bower, Jr., and I wanted
to congratulate you on your perseverance and professionalism.

Although the trial of Bower arose out of a multiple
murder investigation, you discovered several areas in which
Federal violations had occurred which brought the FBI into
the case in December, 1983. Throughout this investigation,
you made yourself available to the FBI, local police and
prosecutors for advice and counsel. Your performance in the
courtroom was skillful and certainly merits our highest
recognition. You can certainly be proud of your many contri-
butions to this case and I know my associates join me in
wishing you continued success.

Sincerely yours,

William H. Webster
Director

1 - Dallas (179B-97)
Reurlet 9/27/84.

179B-97-37
SEARCHED_____INDEXED_____
SERIALIZED___FILED_____
OCT 7 1984
FBI — DALLAS

FBI 03488

A140

DL 62D-5174
JFB/ear
1
                                                                    b6
                                                                    b7C

         The following investigation was conducted by Special
Agent [                    ]
                                                                    b2
                                                                    b7D
         On October 11, 1983, [                    ] was contacted regarding    b6
the murders of Jerry Mac Brown, Phillip Boyce Good, Ronald Howard        b7C
Mayes, and Bobby Glen Tate on the afternoon of October 8, 1983, at
an airplane hanger located on the B & B Ranch owned by Tate.
Source advised Tate has [                    ]
He resides in a [
                                                                    ]

                                                                    b6
         [                              ] Bob Tate (Deceased), has    b7C
had some dealings with [          ] and that in the past, [        ]    b7D
[                                    ] has further stated [    ]
[      ] was involved in "some stuff", [                          ]
[            ] stated for two to three weeks [                    ] his
father stated he felt someone was following him and because of this,
had started carrying a gun. [        ] stated that even though the
landing strip at the B & B Ranch was built for the ultralights,
"big planes" had also landed there.

                                                                    b2
         On October 14, 1983, [                              ]        b6
has talked about a female named [        ] and source feels [    ]    b7C
might possibly [                    ] Source stated [            ]    b7D
lives in a [                    ] Texas.

         On October 24, 1983, source advised [        ] has
stated that on the day [
[                    ] he started to go to [            ] but because
of a "funny feeling" did not go. [        ] talked about having
[                                                                ]
                                                                    b6
                                                                    b7C
                                                                    b7D
         Above information furnished to the Texas Rangers and
Grayson County Sheriff's Office, Sherman, Texas.

                              *179B-97-9*
                              *62D-5174-9*

                              SEARCHED_____INDEXED_____
                              SERIALIZED_____FILED_____
                              NOV 1 1983
                              FBI - DALLAS

                    FBI 04402

A141



DL 179B-79
JFW/jm
1

    b2
    b7D
    b6
    b7C

    On November 29, 1983, _____ provided Special Agent _____ with the following information:

    He attended the Dallas Gun Show on November 26, 1983 and purchased three boxes (each containing 50 rounds per box) of Julio Fiocchi .22 caliber long-rifle sub-sonic ammunition from an ammunition collector known as _____ The source further advised that he is attempting to obtain _____ phone number and will provide it to Agent _____ when the phone number is obtained.

    b6
    b7C
    b7D

**FBI 04491**



179B-79-39

SEARCHED_____ INDEXED_____
SERIALIZED_____ FILED_____

DEC 15 1983

FBI-DALLAS

b6
b7C

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☒ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☒ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☒ UNCLAS

Date _____ 10/25/83 ___   #0022

FM FBI DALLAS (62D-5174)

TO DIRECTOR, FBI   PRIORITY   1020¢

ATTN: IDENTIFICATION DIVISION

FBI ATLANTA   PRIORITY   0325¢

FBI NEW YORK   PRIORITY   0552¢

FBI ST. LOUIS   PRIORITY   0345¢

FBI PHOENIX   PRIORITY   0920¢

BT

UNCLAS

UNSUB; JERRY MAC BROWN (DECEASED) - VICTIM; PHILLIP BOYCE GOOD

(DECEASED) - VICTIM; RONALD HOWARD MAYES (DECEASED) - VICTIM;

BOBBY GLEN TATE (DECEASED) - VICTIM; DOMESTIC POLICE COOPER-

ATION; OO: DALLAS

RE DALLAS TELETYPE TO THE BUREAU, OCTOBER 17, 1983.

FOR INFORMATION OFFICES NOT RECEIVING RE COMMUNICATION,

CAPTIONED VICTIMS ALL W/M, ALL ULTRALIGHT AIRCRAFT ENTHUSIASTS

WERE MURDERED SOMETIME BETWEEN THE HOURS OF 3:00 PM, AND 8:30

PM, OCTOBER 8, 1983, AT VICTIM TATE'S RANCH, THE B & B RANCH,

179B-97-4
62D-5174-4

(1) - Dallas
FRB:lv

Approved: _____   Transmitted _____ (Number)   Per _____
                                                    (Time)

275 20 £8 100 9

DALLAS TEXAS
FBI

Serialize
Index
File
Search

FBI 04370

A143

FD-36 (Rev. 8-26-82)

● FBI ●

TRANSMIT VIA:
□ Teletype
□ Facsimile
□ _____

PRECEDENCE:
□ Immediate
□ Priority
□ Routine

CLASSIFICATION:
□ TOP SECRET
□ SECRET
□ CONFIDENTIAL
□ UNCLAS E F T O
□ UNCLAS
Date _____

PAGE TWO DE DL #0022 UNCLAS (62D-5174)

LOCATED APPROXIMATELY FIVE MILES EAST OF SHERMAN, TEXAS, IN
SPARCLY POPULATED AREA, VICTIMS GOOD AND MAYES WERE EACH FORMER
SHERMAN, TEXAS POLICE OFFICERS, AND VICTIM GOOD RECENTLY EM-
PLOYED AS DEPUTY SHERIFF, GRAYSON COUNTY SHERIFF'S DEPARTMENT.
ALL VICTIMS SHOT EXECUTION STYLE IN THE HEAD WITH .22 CALIBER
BULLET, MORE SPECIFICALLY DESCRIBED BY [                    ] OF THE
DALLAS COUNTY CRIME LABORATORY, AS BEING A SUBSONIC .22 CALIBER
RIFLE HOLLOW POINT ALL LEAD BULLET, BRASS CASE WITH THE IN-
SCRIPTION ON THE BASE BEING THAT OF A SMALL CASE SCRIPT TYPE
LETTER F WITH TWO TEARDROP MARKINGS RUNNING AWAY FROM THE LETTER.
F.   THIS PARTICULAR AMMO IS MANUFACTURED BY JULIO FIOCCHI, AN
ITALIAN BRAND AMMUNITION.

EXTENSIVE INVESTIGATION BEING CONDUCTED BY THE GRAYSON
COUNTY SHERIFF'S DEPT. AND THE TEXAS RANGERS, AND INFO DEVELOPED
IN THE CASE THAT AN UNKNOWN INDIVIDUAL CONTACTED VICTIM GOOD
FEW DAYS PRIOR TO MURDER AND DISCUSSED PURCHASING ONE OF GOOD'S
ULTRALIGHT AIRCRAFT.  GOOD INDICATED TO FAMILY MEMBER THAT CALLER
WAS A "BUYER FROM DALLAS", HOWEVER, TO DATE, EFFORTS TO IDENTIFY
THIS POTENTIAL BUYER HAVE MET WITH NEGATIVE RESULTS.  AT TIME OF
DISCOVERY OF MURDERS, IT WAS ALSO DETERMINED TATE'S EAGLE BRAND

b6
b7C

Approved: _____ Transmitted _____ Per _____
                          (Number)   (Time)

FBI 04371

FD-36 (Rev. 8-26-82)

● FBI ●

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE THREE DE DL #0022 UNCLAS (62D-5174)

ULTRALIGHT AIRCRAFT MISSING FROM HANGER.

ON OCTOBER 23, 1983, [          ] SUPRA, ADVISED CON-

TACT WITH BINGHAM ARMS, LTD, LOCATED NORCROSS, GEORGIA, DETER-

MINED THAT COMPANY RECEIVED SHIPMENT OF ABOVE DESCRIBED AMMUN-

ITION FROM IGI, DOMINO CORPORATION, NEW YORK CITY, AND SUB-

SEQUENTLY SOLD AMMUNITION TO EUCLID AVENUE SALES, LOCATED

IN ATLANTA, GEORGIA, TELEPHONE # 404/525-2801.  INVESTIGATION

HAS DETERMINED THAT [                                        ]

IGI, DOMINO CORP., 200 MADISON AVE., NEW YORK CITY, TELEPHONE

# 212 [          ] IS MAJOR IMPORTER OF THE JULIO FIOCCHI AMMUNITION.

[          ] TELEPHONICALLY CONTACTED BUREAU AGENT, SHERMAN RA,

ON OCTOBER 25, 1983, AND HE PLEDGED FULL COOPERATION IN ID-

ENTIFING ALL CUSTOMERS TO WHOM HE HAS SHIPPED THE JULIO FIOCCHI

AMMUNITION, AND STATED HE WOULD IMMEDIATELY BEGIN SEARCHING

HIS RECORDS TO IDENTIFY CUSTOMERS RECEIVING THE AMMUNITION.

ON OCTOBER 25, 1983, [          ] TEXAS RANGER, ADVISED

INVESTIGATION HAS DEVELOPED INFORMATION WHICH WOULD MAKE VICTIM

[                                        ] DOB [          ]

[          ] DRIVER'S LICENSE [          ] SSAN [          ] WITH ADDRESS

b6
b7C
b7D

b6
b7C
b7D

Approved: _____ Transmitted _____ Per _____
                                          (Number)   (Time)

FBI 04372

FD-36 (Rev. 8-26-82)

● FBI ●

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE FOUR DE DL #0022 UNCLAS (DL 62D-5174)

TELEPHONE #

AS A SUSPECT INSTANT MATTER.

INFORMATION DEVELOPED INDICATES THAT [        ] NAME NOT

KNOWN AT THIS TIME, MAY HAVE HAD SOME

IS

b6
b7C
b7D

REPORTEDLY

AT THE TIME [                    ] MAY

CURRENTLY BE EMPLOYED AT SOME TYPE OF [        ] IN THE

[        ] AREA AS [        ] OR POSSIBLY [        ]

    IT SHOULD BE POINTED OUT THAT VICTIM GOOD LIVED FOR A

PERIOD OF TIME IN THE PRESCOTT, ARIZONA, AREA AND WHILE THERE

RECEIVED FLIGHT TRAINING AS WELL AS WAS EMPLOYED BY SOME TYPE

OF SECURITY TYPE PRIVATE INVESTIGATIVE TYPE SERVICE.  GOOD

RETURNED TO THE SHERMAN, TEXAS, AREA SOMETIME AROUND THE FIRST

PART OF 1983, AND SET UP HIS ULTRALIGHT BUSINESS.

    REQUEST OF THE BUREAU – IDENTIFICATION DIVISION IS RE-

QUESTED TO REVIEW ANY RECORDS REGARDING [        ] DOB

[        ] SSAN [        ], AND IF RECORD LOCATED

FACSIMILE COPY TO THE DALLAS OFFICE.

    ATLANTA AT NORCROSS, GEORGIA – CONTACT BINGHAM ARMS, LTD

b6
b7C

PHONETIC), AND OBTAIN LIST OF CUSTOMERS

Approved: _____ Transmitted _____ Per _____
                                    (Number)    (Time)

b6
b7C

FBI 04373

A146

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE FIVE DE DL #0022 UNCLAS (DL 62D-5174)

TO WHOM THAT COMPANY SOLD THE SUBSONIC .22 CALIBER JULIO FIOCCHI

ANNUMITION.

AT ATLANTA GEORGIA – WILL CONTACT EUCLID AVENUE SALES, INC.,

TELEPHONE [          ] AND OBTAIN LIST OF CUSTOMERS TO WHOM

THAT COMPANY SHIPPED THE SUBSONIC .22 CALIBER JULIO FIOCCHI

AMMUNITION.

NEW YORK AT NEW YORK CITY – WILL CONTACT [          ]

DBA IGI, DOMINO CORP., 200 MADISON AVE., TELEPHONE # 212 [          ]

AND OBTAIN LIST OF CUSTOMERS TO WHOM THAT COMPANY SHIPPED THE

SUBSONIC .22 CALIBER JULIO FIOCCHI AMMUNITION, AND ALSO OBTAIN

ANY BACKGROUND INFORMATION REGARDING THE AMMUNITION AND NAMES

OF OTHER INDIVIDUALS OR COMPANIES DISTRIBUTING THIS AMMUNITION.

PHOENIX AT PRESCOTT, ARIZONA – WILL CONDUCT CREDIT AND

CRIMINAL CHECKS AND CONTACT LOGICAL INFORMANTS IN EFFORT TO

DEVELOP BACKGROUND INFORMATION REGARDING [          ] AND

VICTIM PHILLIP GOOD, NOTING THAT [          ] RESIDES IN

THE PRESCOTT AREA AND GOOD LIVED THERE PRIOR TO MOVING TO

SHERMAN, TEXAS. IT SHOULD BE POINTED OUT THAT TWO DAYS AFTER

THE BURIAL OF GOOD, [          ]

b6
b7C

b6
b7C

b6
b7C

Approved: _____ Transmitted _____ Per _____
                                        (Number)      (Time)

FBI 04374

FD-36 (Rev. 8-26-82)

FBI

TRANSMIT VIA:
☐ Teletype
☐ Facsimile
☐ _____

PRECEDENCE:
☐ Immediate
☐ Priority
☐ Routine

CLASSIFICATION:
☐ TOP SECRET
☐ SECRET
☐ CONFIDENTIAL
☐ UNCLAS E F T O
☐ UNCLAS
Date _____

PAGE SIX DE DL #0022 UNCLAS (DL 62D-5174)

PHOENIX ALSO ATTEMPT TO DEVELOP

DESCRIPTIVE DATA AND BACKGROUND CONCERNING [          ] NAME

UNKNOWN.

b6
b7c

        ST. LOUIS AT ST. LOUIS, MISSOURI – CONTACT THE U. S.

MILITARY RECORDS CENTER AND OBTAIN BACKGROUND INFORMATION

REGARDING [          ]   SSAN [          ], AND PHILLIP

BOYCE GOOD, SSAN 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.

                ARMED AND DANGEROUS

    BT

    #0022

    NNNN

Approved: _____ Transmitted _____ Per _____
                                    (Number)    (Time)

FBI 04375

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ANTHONY C. ROTH,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Civil Action No. 08-822 (ESH)** |
|  | ) |
| **UNITED STATES DEPARTMENT** | ) |
| **OF JUSTICE,** | ) |
|  | ) |
| **Defendant.** | ) |
|  | ) |

### MEMORANDUM OPINION

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff Anthony Roth challenges the response of the Federal Bureau of Investigation ("FBI") to his request for records on behalf of his client, Lester Leroy Bower, Jr. Having produced numerous documents to Mr. Roth, the FBI now moves for summary judgment as to those documents which it has withheld in part or in their entirety [Dkt. No. 15]. The issues before the Court are: 1) whether the FBI properly invoked various exemptions under FOIA to withhold and redact certain responsive documents; and 2) whether the FBI properly refused to process certain of Mr. Roth's requests regarding third parties. Upon consideration of the parties' submissions and the entire record, including the Court's *in camera* review of the documents at issue, the Court will grant in part and deny in part the FBI's motion for summary judgment.

## BACKGROUND

Mr. Roth is an attorney representing Mr. Bower, who was convicted in April 1984 of four murders committed in Texas in 1983 and is on death row. (Compl. ¶¶ 4, 6.) The FOIA requests at issue[1] were made on January 3, 2008, and sought information related to the murders and subsequent investigation.[2] (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. and In Support of Cross Mot. for a More Particularized *Vaughn* Index or *In Camera* Review of Withheld and Redacted Documents ["Pl.'s Opp."] at 7.)

One of Mr. Roth's January 3, 2008 requests sought documents relating to persons who have been identified by witnesses as having committed the 1983 murders, and the other called for documents containing information about the FBI investigation that led to Mr. Bower's arrest, conviction, and sentencing. (Pl.'s Opp. at 4, 7.) Mr. Roth also served a FOIA request on the Executive Office for United States Attorneys ("EOUSA"), seeking documents related to the investigation of Mr. Bower. (Pl.'s Opp at 7.)

The FBI responded to Mr. Roth's first January 2008 FOIA request, concerning individuals identified by witnesses as having committed the 1983 murders, by stating that the request could not be processed without proof of death of or a privacy waiver from the named

---

[1] Several FOIA requests were submitted to the FBI by Mr. Roth and another member of his firm prior to January 2008. Mr. Roth's complaint specifically challenges only the responses of the FBI to his January 2008 FOIA requests. (Compl. ¶¶ 12–31; June 12, 2008 Status Rep. at 5.)

[2] Specifically, the first request sought information pertaining to: 1) Jerry Buckner; 2) Brett ("Bear") Leckie; 3) Chestley ("Ches") Galen Gordon (Social Security Number xxx-xx-3406; Date of Birth xx/xx/54; 4) Lynn Langford (Social Security Number xxx-xx-0758); and 5) Robert ("Rocky") T. Ford (Social Security Number xxx-xx-9361). (Decl. of David M. Hardy ["Hardy Decl."] ¶ 8.) The second request called for documents regarding the following topics: 1) FBI Field Office File DL 179B-97, Volume I, Serials 1-40; 2) FBI Field Office File DL 179B-97, Volume II, Serials 41-111; 3) FBI Field Office File DL 179B-97, Volume III, Serials 112-199; 4) FBI Field Office File DL 179B-97, Volume IV, Serials 200-305; 5) FBI Field Office File DL 179B-97, Volume V, Serials 306-__; 6) FBI Field Office File DL 179B-97, Volume Number 1A; 7) FBI Field Office File DL 179B-97, Volume 1B; 8) FBI Headquarters File HQ 163-18573; 9) FBI File DL 62D-5174; and 10) FBI File 95-259626. (Id. ¶ 9.)

2

individuals. (June 12, 2008 Status Rep. at 6.) Subsequently, Mr. Roth provided the FBI with proof of death of one of the individuals, Mr. Leckie, and the FBI processed the request as to him. (Aug. 14, 2009 Joint Status Rep. at 7.) Mr. Roth has since narrowed his request to documents relating to only three of the remaining individuals: Ford, Langford, and Gordon. (*Id.*) The FBI has conducted death searches for each of these individuals, and it appears that all are alive or may be presumed to be alive. (*Id.* at 8.) The FBI therefore refused to process any searches for documents concerning these individuals, citing their privacy interests. (Second Decl. of David M. Hardy ["Second Hardy Decl."] ¶¶ 22-26.) Count I of Mr. Roth's complaint alleges that the FBI has improperly refused to process this request. (Compl. ¶¶ 32-35.)

In response to Mr. Roth's second January 2008 FOIA request, which sought documents regarding the FBI investigation of the 1983 murders, the FBI agreed to conduct a search for responsive documents but had not released any such documents at the time Mr. Roth filed his complaint. (Pl.'s Opp. at 8; June 12, 2008 Status Rep. at 8.) After a meeting between the parties and status conferences with the Court, the parties agreed that the FBI would reprocess all of the records pertaining to FBI Files HQ 163-18573, DL 179B-97, and DL 62D-5174. (Pl.'s Opp. at 9; Compl. ¶¶ 36-39.) In October 2008, the FBI released to Mr. Roth 1,370 pages of documents (many in redacted form) from the 1,948 pages which had been reviewed. (Hardy Decl. ¶ 34 n.7; Pl.'s Opp. at 9-10.) Mr. Roth then requested the FBI to provide a *Vaughn* index for any documents the agency had withheld in their entirety, as well as for 19 additional documents that the FBI had previously produced. (Hardy Decl. ¶35.) The FBI provided Mr. Roth with a list of withheld material and corresponding descriptions in the declaration of David M. Hardy of the FBI. (Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. ["Def.'s Mem."] at 4; Pl.'s Opp. at 14-15.) At the same time, the FBI filed for summary judgment, arguing that it had properly

3

A151

redacted and withheld information pursuant to various Privacy Act and FOIA exemptions and
that all reasonably segregable, non-exempt material had been released. (*Id.* at 11-32; 44.)

After the filing of the FBI's motion for summary judgment and subsequent briefing by
both parties, the FBI released an additional 179 pages of responsive documents, as well as four
pages of sample documents representative of another 92 pages. (Aug. 14, 2009 Joint Status Rep.
at 1.) Following a series of meetings between the parties and status conferences with the Court,
the parties narrowed the current dispute to: 1) 40 pages of responsive documents withheld by the
FBI in their entirety; 2) redactions on two pages of documents released by the FBI to Mr. Roth
on August 10, 2009; and 3) redactions on 24 pages of documents previously released to Mr.
Roth. (*Id.* at 1.) Mr. Roth requested an *in camera* review by the Court to ensure that the FBI has
properly redacted or withheld information pursuant to FOIA. (*Id.* at 1.) On August 19, 2009,
this Court ordered the FBI to produce the documents still at issue for *in camera* review.[3]

Having now reviewed the 66 documents produced by the FBI, the Court finds that, with
minor exceptions, the FBI has properly withheld the documents under FOIA. The Court further
finds that the FBI has properly invoked FOIA Exemptions 6 and 7(C) in refusing to conduct
searches for documents pertaining to third parties without proof of death or privacy waivers.
Therefore, the Court grants the FBI's motion for summary judgment in part.

---

[3] Mr. Roth's third January 2008 FOIA request to the EOUSA discussed in Count III of the
complaint, was not addressed in the parties' briefs and, according to their status report, is no
longer at issue. (Aug. 14, 2008 Joint Status Rep. at 1; *see also* Pl.'s Opp. at 35.)

4

**A152**

## ANALYSIS

### I.    FOIA: General Principles and Standard of Review

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 890813 (1965)). Thus, federal agencies must make their records promptly available to any person who makes a proper request for them unless the agency establishes that the information is appropriately withheld under one or more of the nine exemptions set forth in the statute. *See* 5 U.S.C. § 552(a)-(b). The nine exemptions are exclusive and should be narrowly construed. *Rose*, 425 U.S. at 361. When a challenge is made to an agency's decision to withhold information, the "burden is on the agency to sustain its action," and the district court is instructed to "determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). Even if some of the requested records contain exempt information, "the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't. of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552(b)).

"At the same time, of course, it must be recognized that FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government has in keeping certain information private, whether to protect particular individuals or the national interest as a whole." *Am. Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179, 186-87 (D.D.C. 2006). "As such, the exemptions must be given 'meaningful reach and application,'" *id.* at 187 (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)), as they "represent[] the congressional determination of the

5

**A153**

types of information that the Executive Branch must have the option to keep confidential, if it so chooses." *Rose*, 425 U.S. at 361.

    "FOIA cases appropriately may be decided on motions for summary judgment." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In deciding whether information has been properly withheld under FOIA exemptions, the Court may rely on affidavits or declarations from the agency. *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Alternatively or in addition to such affidavits, the reviewing court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B). But "whether the Court relies on affidavits or declarations, an *in camera* review of the documents, or . . . both, an agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements.'" *Bigwood*, 484 F. Supp. 2d at 73 (second alteration in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

    In the instant case, the FBI has claimed FOIA Exemptions 2, 6, 7(C), and 7(D) in declining to produce part or all of the 66 documents at issue and in refusing to confirm or deny the existence of documents containing information about third parties Ford, Langford, and Gordon.

## II.    Exemption 2

    Exemption 2 of FOIA excepts from disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The exemption "applies to material 'used for predominantly internal purposes.'" *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051,

1073 (D.C. Cir. 1981)). "If the threshold test of predominant internality is met, an agency may

withhold the material 'by proving that either [1] disclosure may risk circumvention of agency

regulation, or [2] the material relates to trivial administrative matters of no genuine public

interest.'" *Id.* (quoting *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990)).

"Predominantly internal documents the disclosure of which would risk circumvention of agency

statutes and regulations are protected by the so-called 'high 2' exemption[, and] predominantly

internal documents that deal with trivial administrative matters fall under the 'low 2'

exemption." *Id.*

  The FBI has invoked Exemption 2 with respect to four documents, all of which were

reviewed *in camera*.[4]  Based on its review of these documents, the Court finds that the material

withheld under Exemption 2 relates to the internal practices of the FBI, specifically the use of

confidential source symbol numbers. (Hardy Decl. at 17.) Mr. Roth has not asserted any

specific challenge to the information withheld under Exemption 2,[5] and the Court is convinced

that such information is administrative in nature and is of no genuine public interest. *See Lesar

v. U.S. Dep't of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980); *Branch v. FBI*, 658 F. Supp.

204, 208 (D.D.C. 1987) ("There is no question that [source symbols and file numbers are] trivial

and may be withheld as a matter of law under Exemption 2."). The FBI has therefore met its

burden of establishing the applicability of Exemption 2 with respect to these documents.

---

[4] The Court reviewed documents Roth/Bower 76, 108, 112, and 457, each of which contained
information withheld under Exemption 2. (Def.'s Mem. at 17.)

[5] Mr. Roth earlier challenged certain information related to polygraphs that the FBI at one time
withheld in part under Exemption 2. (Pl.'s Opp. at 18; Pl.'s Reply Mem. In Support of Cross
Mot. For a More Particularized *Vaughn* Index or *In Camera* Review of Withheld and Redacted
Documents at 6.) This dispute is no longer before the Court.

## III.    Exemptions 6 and 7(C)

Exemption 6 permits withholding of "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure "records or information compiled

for law enforcement purposes but only to the extent that the production of such law enforcement

records or information . . . could reasonably be expected to constitute an unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(7)(C). In order to evaluate the propriety of withholding

information based on privacy concerns, "the court must balance the privacy interests involved

against the public interest in disclosure." *Safecard Servs., Inc.,* 926 F.2d at 1205; *see also Lesar*,

636 F.2d at 486 n.80 (a court must "balance the conflicting interests and values involved" when

reviewing Exemptions 6 and 7(C)).

The FBI has invoked Exemptions 6 and 7(C) to justify the withholding of 40 documents

in their entirety and the redacting of an additional 26 pages of documents, all of which were

reviewed *in camera.*[6] The agency asserts that these documents contain the names and

---

[6] The Court reviewed documents Roth/Bower 118, 30-31, 781, 1072-1074, 1080, 1088, 1097-
1109, 1111-1114, 1117, 1119-1120, 1123, 1134-1135, 1137-1138, 1493-1494, 1496-1497, 1538-
1539, 883, 1275, 46-47, 76, 108, 92-93, 98-101, 477-478, 111-113, 128, 129-130, 205-207, 254,
256, and 457, each of which contained information withheld under Exemptions 6 and 7(C).
(Def.'s Mem. at 27-33.) In all cases in which the FBI asserted Exemption 6, it also asserted
Exemption 7(C). (*Id.*) Exemption 7(C)'s privacy language is "broader than the comparable
language in Exemption 6 . . . ." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the
Press*, 489 U.S. 749, 756 (1989). As such, "the standard for evaluating a threatened invasion of
privacy interests resulting from the disclosure of records compiled for law enforcement purposes
is somewhat broader than the standard applicable to personnel, medical, and similar files." *Id.*
The FBI asserts that all of the documents currently at issue relate to a 1983 murder case in which
the FBI assisted local authorities with the investigation. (Def.'s Mem. at 25.) The Court agrees
that these documents were compiled for law enforcement purposes. As such, the Court assessed
the FBI's claims with respect to these documents under Exemption 7(C), since material not
protected by Exemption 7(C) would similarly fall outside of the more limited protection
provided by Exemption 6.

8

**A156**

identifying information of local law enforcement employees;[7] third parties merely mentioned in

FBI records;[8] state, local, and non-FBI federal government personnel;[9] third parties of

investigative interest;[10] third parties who provided information to the FBI;[11] and commercial

institution personnel.[12] The FBI bears the burden of establishing that the balance between any

private interest in withholding this information on the one hand and the public interest in

disclosure of that information on the other tips in favor of privacy, thereby justifying the

withholding of the requested material under the asserted exemptions. 5 U.S.C. § 552(a)(4)(B). It

is Mr. Roth's burden to support his claim that the public interest will be served by the disclosure

of the specific information being withheld. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 234

(D.C. Cir. 1987).

Despite its stated goal of agency disclosure, Congress "underst[ood] that disclosure of

records containing personal details about private citizens can infringe significant privacy

---

[7] The FBI asserts that such information is redacted from documents Roth/Bower 46, 97-98, 108, 111-113, 206, and 254. (Def.'s Mem. at 27.)

[8] The FBI asserts that such information is redacted from documents Roth/Bower 47, 93, 108, 112, 128, 130, 205-207, 256, 457, and 477-478. (Def.'s Mem. at 28-29.)

[9] The FBI asserts that such information is redacted from document Roth/Bower 46. (Def.'s Mem. at 29.)

[10] The FBI asserts that such information is redacted from documents Roth/Bower 30-31, 46-49, 91-93, 98-101, 108, 111-113, 128-130, and 206-207. It also asserts that such information necessitates the complete withholding of documents Roth/Bower 781, 1072-1074, 1080, 1088, 1097-1109, 1111-1114, 1117, 1119-1120, 1123, 1134-1135, 1137, 1138, 1493-1494, 1496-1497, and 1538-1539. (Def.'s Mem. at 29-30.)

[11] The FBI asserts that such information is redacted from documents Roth/Bower 76, 92, 98-99, 108, 111-113, 129, 254, 256, 457, 477, and 1275. It also asserts that such information necessitates the complete withholding of document Roth/Bower 1538. (Def.'s Mem. at 31-32.)

[12] The FBI asserts that such information is redacted from documents Roth/Bower 46-47, 457, and 883. (Def.'s Mem. at 32-33.)

9

interests." *Reporters Comm.*, 489 U.S.at 766. Further, "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," and the "privacy interests of the persons mentioned in [] investigatory files do not necessarily diminish with the passage of time." *Branch*, 658 F. Supp. at 209. Thus, "Exemption 7(C) 'affords broad[] privacy rights to suspects, witnesses, and investigators.'" *Safecard Servs., Inc.*, 926 F.2d at 1205 (quoting *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)). "Absent exceptional circumstances, the balance [under Exemption 7(C)] categorically favors withholding the names and addresses of third parties." *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). Accordingly, there is a significant privacy interest in the names and identifying information of parties contained in the FBI files at issue.

Exemption 7(C) requires a FOIA requester to "show that the public interest sought to be advanced [by disclosure] is a significant one, an interest more specific than having the information for its own sake." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Also, a requester must show that the information sought is "likely to advance that interest," or the invasion of privacy is unwarranted. *Id.* "[T]he only relevant 'public interest in disclosure' to be weighed" by the Court is "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *Reporter's Comm.*, 489 U.S. at 775).

Mr. Roth suggests the FBI failed to produce "material and exculpatory information" about the murders for which Mr. Bower was convicted and contends that disclosure of information contained in the withheld and redacted files would serve the public interest "in knowing whether the U.S. Attorney's Office and the FBI ignored exculpatory evidence in an

10

**A158**

attempt to obtain a conviction and a sentence of death." (Pl.'s Opp. at 28.) Essentially, Mr. Roth

alleges that the FBI did not disclose exculpatory evidence that he believes should have been

produced at Mr. Bower's trial under *Brady v. Maryland*, 373 U.S. 83 (1963). But it is well-

established that the FBI is not "required by FOIA to forego a statutory exemption for a document

in its possession because the document has been identified as possibly exculpatory," as

"[j]udicial process is available, both pre-trial and post-trial, for these purposes." *Johnson v. U.S.*

*Dep't of Justice*, 758 F. Supp. 2, 5 (D.C. Cir. 1991). And, Mr. Bower's personal interest in

obtaining potentially exculpatory documents in order to attack his conviction "does not count in

the calculation of public interest." *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated*

*and remanded on other grounds,* 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir.

2004); *see also Engelking v. DEA*, 119 F.3d 980, 980-81 (D.C. Cir. 1997); *Johnson*, 758 F. Supp.

at 5; *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000).

As to Mr. Roth's assertion that there is a public interest in uncovering alleged

wrongdoing by the FBI in failing to disclose possibly exculpatory information, he has not

presented sufficient evidence for the Court to question the FBI's performance of its duties.

"[U]nless there is compelling evidence that the agency denying the FOIA request is engaged in

illegal activity, and access to the names of private individuals appearing in the agency's law

enforcement files is necessary in order to confirm or refute that evidence, there is no reason to

believe that the incremental public interest in such information would ever be significant."

*Safecard Servs.*, 926 F.2d at 1205-06. Mr. Roth's allegation that 25 years ago the FBI failed to

produce what he and Mr. Bower now believe is exculpatory material, based on evidence they

have developed since the trial, is inadequate. "[W]here there is a privacy interest protected by

Exemption 7(C) and the public interest being asserted is to show that responsible officials acted

11

negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. Moreover, even assuming *arguendo* that the records requested by Mr. Roth would reveal that the FBI improperly failed to disclose exculpatory documents to Mr. Bower, "exposing a single garden-variety act of misconduct would not serve FOIA's purpose of showing 'what the Government is up to.'" *Oguaju*, 288 F.3d at 451 (quoting *Reporters Comm.*, 489 U.S. at 780). Mr. Roth's claim that the FBI withheld exculpatory material falls short of the compelling evidence needed to counterbalance the privacy interests at issue.

Several documents withheld under Exemptions 6 and 7(C) merit further discussion. The FBI withheld in their entirety surveillance photographs[13] of third-party individuals on the grounds that the photographs included names of and/or identifying information about third parties of investigative interest. (Def.'s Mem. at 29-30.) Having reviewed the copies of these photographs, the Court is unable to discern any identifying information in the copies of the following documents: Roth/Bower 1073-1074, 1080, 1088, 1098, 1099, 1100, 1106, 1108, 1111, 1113, 1114, 1117, 1119, 1120, 1123, 1134, 1135, and 1137. The Court recognizes that the lack of identifying details in the copies of the photographs which have been provided may be due to poor photocopying, and that the actual photographs may contain such information. If so, the photographs were properly withheld. If the copies reviewed by the Court are in fact accurate reflections of the photographs as they exist in the FBI's files, the Court finds that no privacy interest is protected by withholding them, and the FBI must produce these 19 photographs to plaintiff within 20 days of entry of this Order.

---

[13] These documents are Roth/Bower 1072-1074, 1080, 1088, 1097-1109, 1111-1114, 1117, 1119-1120, 1123, 1134-1135, 1137, and 1138.

12

A160

The FBI also produced a redacted version of Roth/Bower 205, asserting that the redacted material contains names and/or information that would identify third parties. (Def.'s Mem. at 28-29.) The second paragraph of this page has been almost entirely redacted. Similarly, the FBI redacted almost all of the first full paragraph of Roth/Bower 206, claiming it contains material that identifies local law enforcement and third parties. (Def.'s Mem. at 27-30). The Court finds that in both paragraphs, there is non-exempt, segregable information, the disclosure of which could not "reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This material should be produced. Accordingly, the Court orders the FBI to provide Mr. Roth with revised versions of Roth/Bower 205 and 206, redacting only those portions identified by the Court in the accompanying *In Camera* Order to Defendant, within 20 days of entry of this Order.

Other than the copied photographs which the Court has identified and the portions of Roth/Bower 205-206 which have been discussed above, Mr. Roth has not demonstrated how the disclosure of names and other identifying information would serve the public interest, and the Court's *in camera* review of the information withheld by the FBI under Exemptions 6 and 7(C) indicates no such interest. The Court also confirms that, with the exception of Roth/Bower 205-206, the FBI has produced all segregable, non-exempt information. 5 U.S.C. § 552(b). Thus, the FBI has met its burden of establishing the applicability of Exemptions 6 and 7(C) with respect to these documents.

## IV.    Exemption 7(D)

Exemption 7(D) permits the withholding or redacting of law enforcement records where disclosure "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the

13

**A161**

course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "A threshold question presented by a claim under Exemption 7(D) is whether the documents were gathered for law enforcement purposes," *Hall v. U.S. Dep't of Justice*, 26 F. Supp. 2d 78, 80 (D.D.C. 1998), which the Court has found to be true as to all documents at issue here, as they were assembled by the FBI in the course of a criminal investigation. (Def.'s Mem. at 25.)

Under Exemption 7(D), the pertinent question is "whether the particular source spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993). As such, the Court must determine whether the sources named or providing withheld material were in fact confidential. "[A] source is confidential within the meaning of Exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Id.* (internal quotation omitted). A source is not presumed confidential merely because of his or her cooperation with a federal law enforcement agency, and the FBI must point to more "narrowly defined circumstances" that support an inference of confidentiality. *Id.*; *see also Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) (*Landano* requires a "particularized justification" of implied confidentiality). Circumstances that may indicate implied confidentiality include whether the informant was paid, the informant's relationship with the agency, the character of the crime at issue, and the source's relationship to the crime. *Landano*, 508 U.S. at 179.

The FBI has invoked Exemption 7(D) with respect to the redactions on 16 pages of documents. The agency states that these documents contain information provided by and/or

14

**A162**

identifying data concerning local law enforcement agencies;[14] third parties under an "implied" assurance of confidentiality;[15] confidential source symbol numbers;[16] source symbol numbered informants;[17] and third parties under an "express" assurance of confidentiality.[18] (Def.'s Mem. at 38-42.) After reviewing these documents,[19] the Court is satisfied that the majority of the material withheld under Exemption 7(D) was provided to the FBI pursuant to express assurances of confidentiality or under circumstances strongly implying that an assurance of confidentiality was understood.

Only one document in this group merits further discussion. Document Roth/Bower 112 contains material protected by Exemptions 2, 6, 7(C), and 7(D). Specifically, the FBI has redacted most of the second paragraph on the grounds that it contains material provided by a source who was expressly promised confidentiality. (Def.'s Mem. at 41-42.) However, after reviewing the document and the preceding page, the Court is unable to determine what, if any, material in this part of the document came from such a source. While any names and/or other identifying information protected by Exemptions 6 and 7(C) are properly withheld, the Court finds that the document contains other, segregable material that should be produced. The Court orders the FBI to provide Mr. Roth with a revised version of Roth/Bower 112, redacting only

---

[14] These documents are Roth/Bower 206-207. (Def.'s Mem. at 39.)

[15] These documents are Roth/Bower 206-207, 254, and 256. (Def.'s Mem. at 40.)

[16] These documents are Roth/Bower 76, 108, 112, and 457. (Def.'s Mem. at 41.)

[17] These documents are Roth/Bower 76, 108, and 457. (Def.'s Mem. at 41.)

[18] These documents are Roth/Bower 98-99, 111-113, 129, and 477. (Def.'s Mem. at 42.)

[19] These documents are Roth/Bower 76, 98-99, 108, 111-113, 129, 206-207, 254, 256, 457, and 477. (Def.'s Mem. at 39-42.)

15

A163

those portions identified by the Court in the accompanying *In Camera* Order for Defendant
within 20 days of entry of this Order.

## V. Requests for Searches of Third Parties

The final issue before the Court concerns Mr. Roth's FOIA request for documents
relating to three third parties: Messrs. Ford, Langford, and Gordon. The FBI argues that such
documents and the fact of their existence in FBI investigative files are protected from disclosure
by the Privacy Act[20] and under Exemptions 6 and 7(C). (Reply and Opp. to Pl.'s Cross Mot.
["Def.'s Reply"] at 28.) The agency has thus "glomarized" Mr. Roth's third party request by
refusing to confirm or deny the existence of responsive records to protect the privacy interests of
the named individuals. (Def.'s Reply at 31.) Because Mr. Roth has not obtained privacy waivers
from Messrs. Ford, Langford, and Gordon, and because it may be presumed that each of these
individuals is still alive, the Court agrees that information about them, including the existence of
their names in FBI criminal investigative files, is protected from disclosure.

Mr. Roth contends that the FBI's "Glomar" response is improper because the government
should not categorically deny a FOIA request unless confirming or denying the existence of the
records sought would associate the individual named in the request with criminal activity. (Pl.'s
Opp. at 36.) But confirming the existence of records relating to Messrs. Ford, Langford, and
Gordon in FBI files would do just that. The FBI states that any information responsive to Mr.
Roth's request is reasonably likely to be contained in criminal investigative files of the FBI's

---

[20] The Privacy Act prohibits an agency from disclosing "any record which is contained in a
system of records by any means of communication to any person, or to another agency, except
pursuant to a written request by, or with the prior written consent of, the individual to whom the
record pertains," unless the record falls within one of 12 listed exemptions. 5 U.S.C. § 552a(b).
One of the exemptions includes the necessary disclosure of records under FOIA, which requires
the Court to determine whether the requested documents fall within one or more of the FOIA
exemptions, as the FBI argues they do. (Def.'s Reply at 29-30.)

16

Central Records System, and that no other record system within the FBI would reasonably contain information about these individuals. (Second Hardy Decl. ¶ 24; Hardy Decl. ¶¶ 37-42.) Mr. Roth has provided no evidence or argument that the FBI's position is incorrect. Indeed, Mr. Roth asserts that these parties have been identified by witnesses as having committed the 1983 murders and refers to them as the "real perpetrators." (Pl.'s Opp. at 7.) To the extent that Mr. Roth believes information about Messrs. Ford, Langford, and Gordon exists, he believes it to be part of criminal investigative files. For the FBI to confirm that it maintains records relating to these individuals would thus associate them with criminal activity.

As for the privacy interests at stake, "persons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *King*, 830 F.2d at 233). "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Id.* (internal quotation omitted). It is irrelevant that 25 years have passed since the 1983 murders and investigation, as the passage of time does not necessarily diminish privacy interests. *Branch*, 658 F. Supp. at 209. Mr. Roth has presented no evidence or change in circumstance to suggest that Mr. Ford, Mr. Langford, and Mr. Gordon have less of an interest in keeping their possible involvement in FBI investigations private now than they would have had in 1983.

Mr. Roth contends that Messrs. Ford, Langford, and Gordon have a diminished privacy interest in the fact that their names may have been mentioned in FBI investigative files because these individuals have long criminal histories. (Pl.'s Opp. at 37.) The Court disagrees. That these individuals may have been convicted of other offenses does not negate their interest in

17

**A165**

keeping their involvement, if any, in the investigation of different crimes secret. Their privacy

interest in personal information that is not publicly available does not disappear because other

information is publicly available. *See Reporter's Comm.*, 489 U.S. at 764 (acknowledging

privacy interest in confidential criminal "rap sheet" even where information contained in

document could be found in public records).

Even if Mr. Roth is correct and the privacy interests of Mr. Ford, Mr. Langford, and Mr.

Gordon are diminished, their interests must still be weighed against the public interest in

releasing documents responsive to Mr. Roth's request. For the reasons discussed above, the

Court finds that there is no public interest in the release of these documents, if they exist. Mr.

Roth seeks documents concerning these third parties because he believes that they are the "real

killers" of the victims in the 1983 murders, not Mr. Bower, and he is seeking to overturn Mr.

Bower's conviction. But Mr. Roth's and Mr. Bower's personal stake in the records does not

establish a public interest, *Oguaju*, 288 F.3d at 450, and Mr. Roth has provided no evidence that

the disclosure of documents concerning Messrs. Ford, Langford, and Gordon will "contribut[e]

significantly to public understanding of the operations or activities of the government," *FLRA*,

510 U.S at 495 (quoting *Reporters Comm.*, 489 U.S. at 775). The purpose of FOIA "is not

fostered by disclosure of information about private citizens that is accumulated in various

governmental files but that reveals little or nothing about an agency's own conduct." *Reporter's

Comm.*, 489 U.S. at 773. As such, the FBI properly refused to search for documents relating to

Messrs. Ford, Langford, and Gordon absent privacy waivers or proof of death.

## CONCLUSION

Based on its *in camera* review of 66 documents, the briefs of the parties, the FBI's

*Vaughn* index, and the declarations from Mr. Hardy, the Court will grant the FBI's motion for

18

summary judgment with the exception of documents Roth/Bower 112 and 205-206, which the

FBI must produce to Mr. Roth as set forth in the accompanying *In Camera* Order to Defendant,

and documents Roth/Bower 1073-1074, 1080, 1088, 1098, 1099, 1100, 1106, 1108, 1111, 1113,

1114, 1117, 1119, 1120, 1123, 1134, 1135, and 1137, which the FBI must produce to Mr. Roth if

the agency's photographs contain no more detail than is in the copies provided to the Court. A

separate Order and an *In Camera* Order to Defendant accompany the Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   September 23, 2009

19

**A167**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANTHONY C. ROTH,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-822 (ESH)** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the FBI's motion for summary judgment [Dkt. 15] is **GRANTED IN**

**PART** and **DENIED IN PART**; and it is

**FURTHER ORDERED** that within 20 days of the date of this Order, the FBI must

produce portions of documents Roth/Bower 112, 205, and 206 to Plaintiff Anthony Roth as

described in the accompanying *In Camera* Order to Defendant; and it is

**FURTHER ORDERED** that within 20 days of the date of this Order, the FBI must

produce documents Roth/Bower 1073-1074, 1080, 1088, 1098, 1099, 1100, 1106, 1108, 1111,

1113, 1114, 1117, 1119, 1120, 1123, 1134, 1135, and 1137 to Mr. Roth if the copies of these

documents reviewed by the Court are accurate reflections of the photographs as they exist in the

FBI's files.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: September 23, 2009

## U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:08-cv-00822-ESH

ROTH v. UNITED STATES DEPARTMENT OF JUSTICE
Assigned to: Judge Ellen S. Huvelle
Case in other court: U. S. Court of Appeals - DC Circuit, 09-05428
Cause: 05:552 Freedom of Information Act

Date Filed: 05/12/2008
Date Terminated: 09/24/2009
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 10/06/2009 | | MINUTE ORDER finding as moot 30 defendant's Motion for Reconsideration. Upon in camera review of the surveillance photographs submitted by defendant, the Court finds that the photographs contain identifying information and thus are appropriately withheld by defendant for the reasons discussed in the Court's September 23, 2009, memorandum opinion. Signed by Judge Ellen S. Huvelle on 10/06/09. (lcesh1) (Entered: 10/06/2009) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/23/2010 10:40:12 | | | |
| **PACER Login:** | ml0900 | **Client Code:** | 70071-097002-0001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cv-00822-ESH Start date: 10/6/2009 End date: 10/6/2009 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |